# UNITED STATES DISTRICT COURT
## for the
### Eastern District of New York

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 07 2022 ★
BROOKLYN OFFICE

CV 22-0766

RECEIVED
FEB 07 2022
PRO SE OFFICE

Case No. _____

**KOMITEE, J.**

Joshua Adam Schulte,

    Plaintiff,

v.

Warden of Metropolitan Detention Center (MDC),

    Defendant.

# NEW COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Prisoner Complaint)

Clerk of Court
Theodore Roosevelt United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

# Table of Contents

I. The Parties to This Complaint ................................................................. 3

   A. The Plaintiff ........................................................................................ 3

   B. The Defendant ................................................................................... 3

II. Basis for Jurisdiction ................................................................................. 3

III. Prisoner Status ......................................................................................... 3

IV. Statement of Claim and Requested Relief ............................................. 3

   A. Basic Information ................................................................................ 3

   B. Relief from unconstitutional conditions of confinement ................... 4

      1. Torture imposed that directly impacts the criminal case ............ 4

      2. Other arbitrary punishment imposed that directly impacts the case ....... 8

      3. Arbitrary denial of any and all entertainment as a form of punishment 12

      4. Petty torments imposed arbitrarily ............................................. 14

V. Exhaustion of Administrative Remedies Administrative Procedures ... 17

VI. Previous Lawsuits .................................................................................. 17

VII. Certification and Closing ...................................................................... 17

I. **The Parties to This Complaint**

    A. **The Plaintiff**

Joshua Adam Schulte

# 79471-054

Metropolitan Detention Center (MDC)

P.O. Box 329002

Brooklyn, NY 11232

    B. **The Defendant**

    The current Warden of the MDC

II. **Basis for Jurisdiction**

Joshua Adam Schulte brings a petition for writ of habeas corpus under 28 U.S.C. § 2241, which, in the Second Circuit, allows for injunctive relief for unconstitutional prison conditions. See *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008); see also *Ilina v. Zickefoose*, 591 F. Supp. 2d 145, 146-149 (D. Conn. 2008) (describing 2241 as a "broad remedy available to federal prisoners challenging the conditions of their confinement").

III. **Prisoner Status**

Pretrial detainee awaiting trial in the Southern District of New York. See *United States v. Schulte*, 17-CR-548 (JMF)

IV. **Statement of Claim and Requested Relief**

    A. **Basic Information**

- Facility: SAMs Unit K-84 at MDC Brooklyn
- From October 26, 2021 to present day

- Request permanent injunctive relief from unconstitutional conditions of confinement
- Current conditions of confinement violate First, Fourth, Fifth, Sixth, and Eighth Amendments

**B.    Relief from unconstitutional conditions of confinement**

The MDC modified a general population unit at the MDC, unit K-84, to create a concentration camp designed to torment and torture all SAMs inmates—those the government accuses of crimes against itself, loathes above all else, and desires nothing less than to impose indefinite, infinite punishment.

### 1.    Torture imposed that directly impacts the criminal case

The following torture is not only arbitrary punishment, but it is cruel and unusual punishment that directly destroys Mr. Schulte's ability to engage in his criminal case.

#### *a) Sleep Deprivation*

The MDC spent taxpayer dollars to modify the general population unit to install blazing torture lights that are on 24/7. These bright lights prevent sleep, and are arbitrarily imposed to inflict torture as there is no legitimate governmental objective to 24/7 bright lights. While the MCC also imposed this torture, it was abruptly ended under Warden M. Licon-Vitale after multiple hunger strikes. Additionally, the MDC does not impose this torture upon general population. Since the SAMs do not even remotely suggest 24/7 torture lights, and since the government outlines no legitimate governmental objective to install them, particularly as related to the SAMs national security objective, their use clearly violates the Due Process Clause of the Fifth Amendment as well as the

4

cruel and unusual clause of the Eighth Amendment—they are imposed arbitrarily, without due process, and subject SAMs inmates to cruel and unusual punishment—sleep deprivation. The Court should order the MDC to remove the torture lights forthwith.

Additionally, although the government arbitrarily installed two 24/7 cameras in the torture cages, they force the COs to do 5 times as many rounds as they do in general population. So, at night the CO comes by every ten minutes, opens the cage's door's small, rectangular window-lid to peer into the cage with a bright flashlight and then slams the metal-on-metal window-lid shut. So, every ten minutes there is a loud bang. This is absurd. General population does not have this problem as there are no window-lids on the cells. MCC solved this problem by installing rubber padding on the window-lids to muffle and prevent the noise; MDC refuses to install the cheap, rubber padding. There is absolutely no reason that MDC officers need to make more rounds at night than they do with general population. And most critically, there is absolutely no reason they should bang the doors loudly as they do their rounds. The MDC's imposition of constant COs banging on the doors at night plainly violates the Fifth and Eighth Amendments—they are imposed arbitrarily, without due process, and subject SAMs inmates to cruel and unusual punishment—sleep deprivation. The Court should order the MDC to set regular nightly round schedules *equal with general population*, and to install rubber padding on the cage's door's window-lid *as existed at MCC* to prevent loud banging throughout the night.

### *b) Starvation*

The MDC is deliberately starving SAMs inmates. They do no receive 3 regular meals per day. Many days they do not get breakfast and some days there is no lunch and/or dinner. For example, on Saturday, November 6, 2021, Mr. Schulte received neither breakfast nor dinner; and for lunch he received a piece of bread. On Wednesday, November 10, 2021, he did not receive lunch. This starvation continued throughout November and December, including most recently, December 19, 2021, December 23, 2021, and January 1, 2021; it occurs every weekend and many weekdays. When they do feed Mr. Schulte, his food is served in different trays than general population, in significantly less portions, and roughly 10% of the food he received at MCC. The MDC also deliberately spreads out the time between meals from about 4.5 hours in general population to 7 hours—not feeding dinner until 8 or 9 PM. And finally, they routinely give wrong trays—"no flesh" or other special food trays that are inedible. **Mr. Schulte is hungry day and night.** *He is literally starving.* This is unconscionable. There is no legitimate governmental objective in starvation. Accordingly, the Court should find the MDC's deliberate starvation of Mr. Schulte barbaric, cruel and unusual punishment; the Court should order the MDC to feed Mr. Schulte three times per day like general population and at the same times they feed general population, which is 7AM, 11AM, and 5PM. The Court should also order the MDC to provide the same exact food served general population in the same exact trays and the exact same amount. The Court should also order the MDC to provide two trays, or double portions, as was provided at MCC since general population has the opportunity to obtain seconds. Finally, this Court should order the MDC to record the date and time when they feed for review to ensure compliance.

### c) *Exposure to the extreme cold*

The MDC does not provide heat in the torture cages, but rather blasts the A/C all day long. This same torture was imposed at MCC—while the MCC provided heat to the general population, water *literally* froze in the SAMs torture cages. COs *literally* wore multiple ski jackets and heavy winter gear while SAMs inmates froze to death. The MDC appears to have inherited this torture tactic, although it has not reached this same extreme (yet). When the SAMs inmates were first taken to MDC, they were placed in the SHU, which was properly heated. Now that they are in the special concentration camp designed to torture them, there is heat supplied out on the unit and in the visitation rooms and the law library, but no heat provided in the torture cages—just the constant cold air. For example, most recently the entire holiday weekend, from Friday, December 31 through Sunday, January 2, 2022, the MDC blasted the A/C at maximum 24/7. Although Mr. Schulte literally wears every single garment given to him, including two sets of thermals, sweats, two sets of socks, two sets of clothing, and two sets of heavy blankets, Mr. Schulte is literally freezing cold—rolled up in fetal position and freezing all day and night. There is no legitimate governmental objective to freezing people all winter. Accordingly, the Court should find that 24/7 exposure to the extreme cold is barbaric, cruel and unusual punishment; the Court should order the MDC to heat the torture cages and install thermometers that record the temperature electronically, and can be retrieved and reviewed by the Court to ensure compliance.

### d) *Constant sound played through speakers*

The MDC installed speakers right outside all the SAMs torture cages, and now blasts loud sounds 24/7. The only thing MDC is missing now is a gas chamber

7

before it is formally recognized as an officially Nazi concentration camp. There are just no words to describe how inhumane and barbaric this is. Since there is no legitimate governmental objective to installing torture speakers that blast loud sounds 24/7, it is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment; it is also cruel and unusual punishment in violation of the Eighth Amendment. The Court should order the MDC to cease and desist playing loud sounds through the speakers to torture SAMs inmates, forthwith.

### 2. Other arbitrary punishment imposed that directly impacts the case

The following punishment, though it does not rise to the level of the former category that violates human rights and constitutes cruel and unusual punishment, is still imposed arbitrarily in violation of the Due Process Clause of the Fifth Amendment, and still directly impacts Mr. Schulte's ability to effectively work on his case.

#### a) *MDC permits only one hour of law library and discovery access per day*

Out of the 24 hours per day that Mr. Schulte is tortured *each and every day* of his life in the SAMs concentration camp, the MDC only allows him access to the law library for caselaw review and discovery access once for one hour. General population has unlimited access to discovery and the law library. Since Mr. Schulte attends SCIF twice each week, in which he is not permitted law library review on return to MDC, he is limited to 3 total hours every seven days (168 hours). 3 hours of 168. Mr. Schulte can sacrifice his recreation hour for an additional hour—for a total of 6 hours of 168. There is no legitimate

governmental objective to restricting law library access. Accordingly, the arbitrary restriction imposed upon Mr. Schulte that is not imposed upon general population is arbitrary punishment. The Court should order Mr. Schulte provided with the law library access through his laptop for equal access as general population.

### b)  *MDC removed light switches from the cells so the lights cannot be toggled*

The MDC does not explain how SAMs compels them to remove light switches from the torture cages. MDC general population has access to light switches to toggle lights at their leisure. Mr. Schulte's SAMs were imposed for national security reasons—is the MDC saying that national security compels them to remove light switches from his torture cage? Since there is no legitimate governmental objective to removing light switches, it is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to return the light switches to the SAMs torture cages forthwith.

### c)  *The MDC replaced comfortable chairs with a short concrete "stool"*

The MDC removed the general population-issued plastic chairs from the torture cages so Mr. Schulte cannot sit down. He has nowhere to work on his case except the floor, which is difficult when he needs a desk to type or write. There is no legitimate governmental objective in removing chairs and imposing uncomfortable miniature concrete stools that do not reach the table and do not have a back. Accordingly, the removal of cheap, plastic chairs from the SAMs

concentration camp is arbitrary punishment; the Court should order the MDC to return the plastic chairs so Mr. Schulte can sit and productively work on his case.

### d) *The MDC installed two 24/7 cameras equipped with night vision*

The MDC does not explain at all the necessity of installing two cameras equipped with night vision for 24/7 audio and video surveillance. This type of monitoring is absolutely absurd, completely unnecessary, and in direct violation of multiple civil rights—SAMs do not even remotely suggest such a radical civil rights violation. In addition to violating the Due Process Clause of the Fifth Amendment for arbitrariness, it also constitutes a particularly invasive continual search in violation of the Fourth Amendment, violates the Sixth Amendment for infringement upon the right to a complete defense as the government is able to see everything Mr. Schulte does and says as he works on his case, and violates the Ninth Amendment right to privacy when he uses the toilet and shower. No other pretrial detainees are subjected to this type of monitoring nor has any court ever declared such a thing Constitutional. Accordingly, the Court should order the MDC to remove all cameras and cease and desist all audio and video recording within the SAMs concentration camp immediately.

### e) *The MDC imposes commissary restrictions*

The MDC restricts commissary as a form of punishment. AW Plourde explained that the MDC cannot provide SAMs inmates with equal commissary since they must be punished for SAMs. The MDC therefore severely restricts the SAMs commissary, particularly sweets and snacks, and arbitrarily restricts commissary from weekly like in general population to every other week. This

10

directly impacts Mr. Schulte's case by restricting his ability to purchase stamps to mail necessary documents to the courts and standby counsel; and in fact, thus far _the commissary refuses to sell him stamps thereby crippling his right of access to the courts._ He currently has no stamps, which may force him to file another emergency motion in this Court, based on the right of access to the courts and his inability to represent himself, if the Court does not order relief now. There is no legitimate governmental objective for this arbitrary punishment. The Court should order the MDC to offer equal commissary at equal times as the general population.

### f) *The MDC arbitrarily imposes solitary confinement*

The MDC arbitrarily imposes solitary confinement upon SAMs inmates. SAMs do not require solitary confinement. Since the MDC is using a converted regular unit to house SAMs inmates, it is designed for them to move about freely. There is no reason the MDC cannot treat its SAMs unit as it does for other special housing units, where they are free to move about in the regular unit but otherwise segregated from the rest of the prison—as they do for snitches and other control units. Accordingly, indefinite solitary confinement is overkill. Since there is no legitimate governmental objective to solitary confinement as opposed to unit segregation, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to end solitary confinement and convert its SAMs unit into a regular, segregated control unit.

### 3. Arbitrary denial of any and all entertainment as a form of punishment

The MDC arbitrarily denies any and all forms of entertainment for SAMs inmates. While this may not directly affect Mr. Schulte's case, it does indirectly, because he cannot relax and unwind. Mr. Schulte's only escape from his case is to _literally_ sit and twiddle his thumbs. Basic forms of entertainment are necessary to maintain the façade that Mr. Schulte's torture is not punishment—and indeed, Mr. Schulte merely requests the same forms of entertainment provided to general population.

#### a) The MDC does not provide televisions in the cells; all other sentenced control units in the BOP are given televisions.

There is no legitimate governmental objective to denying pretrial detainees access to television. General population has access to 20+ hours of television viewing. AW Plourde explained that since SAMs inmates are pretrial inmates at a detention center, they are not entitled to a television—they must first plead guilty and be sent to a federal penitentiary to be eligible for televisions... which sounds like government logic. So, the government deliberately punishes SAMs inmates to coerce them to plead guilty with promises of improved confinement conditions like access to television. There is no legitimate governmental objective to denying SAMs inmates access to televisions provided to general population. The Court should order the MDC to provide televisions in the SAMs concentration camps.

#### b) The MDC bans all SAMs inmates from its library

There is no legitimate governmental objective to denying pretrial detainees access to the institution's library. If the MDC desires to prevent SAMs inmates

12

from utilizing the general population library then it must either provide them with eReaders with access to New York City's public libraries (easiest and cheapest option) or build and maintain a *separate, but equal* library for their use. The Court should order the MDC to provide access to a library.

### c) *The MDC arbitrarily restricts social call minutes*

The MDC arbitrarily restricts SAMs phone minutes by 90% from 300 to 30; 30 minutes is arbitrarily chosen. There is no legitimate governmental objective to reducing phone minutes by 90%. The Court should order the MDC to grant SAMs inmates equal phone minutes as general population.

### d) *The MDC arbitrarily restricts social visits*

The MDC does not respond to the arbitrary denial to in-person contact visits with multiple people at once. Since there is no legitimate governmental objective to the denial of full-contact social visits with multiple people at once, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to provide SAMs inmates with full-contact social visits with multiple individuals simultaneously, as it does for general population, forthwith.

### e) *The MDC removed the basketball goal from the recreation yard*

This is a hilarious form of punishment according to district judge Furman, as he made jest of it at the December 20, 2021 pretrial conference. Every recreation yard at MDC has a basketball court and goal; however, the MDC literally spent taxpayer dollars to deliberately and arbitrarily remove the basketball goal for all SAMs inmates. The point of this is to show the ruthlessness of MDC—they literally

have nothing better to do than to think up arbitrary punishments and impose them through taxpayer dollars. Think of it—someone had to think, how else can we maximize punishment of the SAMs inmates? They then look outside—Eureka! What if we take down the basketball goal so they have nothing to do for recreation except to walk around? Yet, instead of shocking Judge Furman with the tenacity of MDC's efforts to torture, it is hilarious to him. Ha-ha, no basketball goal for you, who cares? The point is, it is arbitrary, it is unnecessary, it is a waste of taxpayer dollars, and it is ruthless. The Court should order the MDC to replace the basketball goal and balls.

### f) *The MDC arbitrarily shackles Mr. Schulte for all movement*

For any and all movements within the MDC, they must cuff his feet, place a belly chain around him, and handcuff him; all that's missing is the Hannibal Lector mask. There is no legitimate governmental objective to treating Mr. Schulte as a violent prisoner when he has never been accused of violence. The Court should order the MDC to treat Mr. Schulte as a normal, general population inmate when moved around the prison.

### 4. Petty torments imposed arbitrarily

The following issues are merely petty torments imposed arbitrarily. The liberal use of taxpayer dollars to make life as difficult as possible in the MDC SAMs concentration camp is truly astonishing.

### a) *MDC replaced normal sinks using dials with push-dials*

The MDC does not even respond to the necessity of replacing the normal general population sinks with special torture sinks that require you to hold down

14

a dial to dispense water; how does making it impossible to wash your hands necessary to safeguard the national security? Since there is no legitimate governmental objective to replacing normal sinks with impossible-to-use sinks, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to revert its sinks to the normal general population sinks within 30 days.

### b) *MDC replaced normal porcelain toilets with seat-less toilets*

The MDC does not even respond to the necessity of replacing the normal general population toilets with special seat-less stainless steel toilets; how does removing a toilet seat safeguard the national security? Since there is no legitimate governmental objective to replacing normal toilets with seat-less stainless steel toilets, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to revert its toilets to the normal general population toilets within 30 days.

### c) *MDC replaced normal showers using dials with a single timer-button*

The MDC does not even respond to the necessity of replacing the normal general population showers with special single timer-button showers with no temperature control; how does denying access to hot showers safeguard the national security? Since there is no legitimate governmental objective to replacing normal showers with single timer-button showers with no temperature control, this action is done arbitrarily in violation of the Due Process Clause of the Fifth

Amendment. The Court should order the MDC to revert its sinks to the normal general population sinks within 30 days.

### d) *The MDC blocks the outside view*

The MDC does not even respond to the necessity of blocking out the windows that are normally unobstructed in general population; how does obstructing the windows safeguard the national security? Since there is no legitimate governmental objective to obstructing the windows, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. The Court should order the MDC to revert its windows to the normal general population windows within 30 days.

### e) *The MDC removed lockers so commissary and clothes must be stored on the floor.*

The MDC does not even respond to the necessity of removing lockers provided to general population and forcing floor storage; how does removing locker storage safeguard the national security? Since there is no legitimate governmental objective to removing the lockers, this action is done arbitrarily in violation of the Due Process Clause of the Fifth Amendment. This Court should order the MDC to return the lockers to the SAMs torture cages within 30 days.

***

These 21 issues are completely unrelated to SAMs; SAMs does not impose these restrictions. Since general population at the MDC and all pretrial BOP detainees are granted the same treatment and "amenities" sought here, this Court should grant the requested relief to revert the arbitrarily imposed torment. Otherwise, the judiciary greenlights the BOP and executive branch to torture whomsoever it

pleases in violation of the very foundations of a Republic. Is this inmate charged with crimes against the government? Yes? Then bring him to the concentration camp in New York City and torture him.

## V. Exhaustion of Administrative Remedies Administrative Procedures

Grievances were initially filed on October 26, 2021, and continue to be filed daily. To date, over fifty BP-8s have been filed with the MDC; only 5 have been returned with BP-9 forms. Of those, none have been answered. Accordingly, all available administrative remedies have been exhausted.

## VI. Previous Lawsuits

Mr. Schulte has filed multiple civil law suits. One was administratively closed pending resolution of the criminal proceedings. Joshua Adam Schulte v. Attorney General of the United States, et al., 19-CV-3346. S.D.N.Y. The others remain active. None have been dismissed based on the "three strikes rule."

## VII. Certification and Closing

Under Federal Rule of Civil Procedure 11, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

As a pro se litigant, I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Dated: New York, New York
January 21, 2022

Respectfully submitted,

Joshua Adam Schulte
Slave #79471054
Metropolitan Detention Center (MDC)
P.O. Box 329002
Brooklyn, NY 11232

Josh Schulte #79471054
MDC Brooklyn
P.O. Box 329002
Brooklyn, NY 11232

ATTN: New Prisoner Complaint for Civil Rights; Clerk of Court
Theodore Roosevelt United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201



