UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JOSHUA ADAM SCHULTE,

                              Plaintiff,                Civil Action
                                                  No. 22-CV-766

              - against -
                                                 (Komitee, J.)

WARDEN OF METROPOLITAN DETENTION
CENTER (MDC),

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**MEMORANDUM OF LAW IN RESPONSE TO THE ORDER TO SHOW CAUSE AND
IN OPPOSITION TO THE PETITION FOR A WRIT OF HABEAS CORPUS**

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 1201

March 25, 2022

DAVID A. COOPER
Assistant United States Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORTIES ............................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

        A.      Factual Background ...................................................................................2

                1.   Petitioner's Criminal Case and the Charges Against Him .................. 2

                2.   Special Administrative Measures Imposed ......................................... 3

                3.   SAMs Litigation in Petitioner's Criminal Matter ............................... 5

                4.   Petitioner's Ongoing Complaints About Conditions of Confinement
                     That Were Previously Rejected in the Criminal Matter ...................... 6

        B.      The Current Petition Reasserting the Petitioner's Complaints about SAMs
              Conditions of Confinement..........................................................................7

LEGAL STANDARD......................................................................................................... 7

ARGUMENT .................................................................................................................... 8

    I.      PETITIONER FAILED TO EXHAUST ADMINISTRATIVE REMEDIES ........ 8

    II      THE HABEAS PETITION ALSO FAILS ON THE MERITS .............................. 8

        A.      The Group I Claims Cannot Form the Basis of a Conditions of
              Confinement Claim..................................................................................14

        B.      The Group II Claims Cannot Form the Basis of a Conditions of
              Confinement Claim..................................................................................14

        C.      The Group III Claims Cannot Form the Basis of a Conditions of
              Confinement Claim..................................................................................16

CONCLUSION................................................................................................................. 18

# TABLE OF AUTHORTIES

<u>Cases</u>

*Adams v. United States*, 372 F.3d 132 (2d Cir. 2004)....................................................... 7

*Agosto v. Hufford*, No. 13 Civ. 4082 (VEC) (SN), 2014 WL 2217908 (S.D.N.Y May 8, 2014), *report and recommendation adopted*, 2014 WL 2217925 (S.D.N.Y. May 29, 2014)............... 8

*Amaker v. Goord*, No. 98 Civ. 3634 (JGK), 2002 WL 523371 (S.D.N.Y. Mar. 29, 2002).......... 14

*Banks v. United States*, No. 10-CV-6613 (GBD), 2011 WL 4100454 (S.D.N.Y. Sept. 15, 2011) 9, 10

*Barker v. Fugazzi*, 18 F. App'x 663 (9th Cir. 2001)...................................................... 17

*Bowens v. BOP*, No. 12 Civ. 5591 (PKC), 2013 WL 3038439 (S.D.N.Y. June 18, 2013) ........... 9

*Brown v. McElroy*, 160 F. Supp. 2d 699 (S.D.N.Y. 2001) ............................................. 15

*Carmona v. BOP*, 243 F.3d 629 (2d Cir. 2001)....................................................... 8, 9

*Chambers v. United States*, 106 F.3d 472 (2d Cir. 1997)............................................. 8

*Chapdelaine v. Keller*, No. 95-CV-1126 RSP/GLS, 1998 WL 357350 (N.D.N.Y. Apr. 16, 1998) .................................................................................................................... 12

*Farmer v. Brennan*, 511 U.S. 825 (1994).............................................................. 12, 13

*Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, No. 18-00453 HG-RT, 2019 WL 922232 (D. Haw. Feb. 25, 2019) ......................................................................................... 17

*Flores v. TDCJ Transitorial Planning Dep't S. Region Inst. Div.*, No. 2:14-CV-283, 2015 WL 10436114 (S.D. Tex. Nov. 17, 2015)............................................................................. 14

*George v. Morrison-Warden*, No. 06 Civ. 3188 (SAS), 2007 WL 1686321 (S.D.N.Y. June 11, 2007) ............................................................................................................... 10

*Green v. Ferrell*, 801 F.2d 765 (5th Cir. 1986) ....................................................... 14

*Helling v. McKinney*, 509 U.S. 25 (1993)............................................................... 13

*Hernandez v. Lindsay*, No. 08-CV-1495, 2011 WL 3163078 (E.D.N.Y. July 22, 2011) (Feuerstein, J.)..................................................................................................... 8

*Ho-Shing v. Budd*, 771 F. App'x 79 (2d Cir. 2019) (summary order).......................... 8

*Hudson v. McMillian*, 503 U.S. 1 (1992)................................................................. 12

*Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533 (S.D.N.Y. 2005) ................................................ 12

*Jiminian v. Nash*, 245 F.3d 144 (2d Cir. 2001)................................................................................ 8

*Jones v. Goord*, 435 F. Supp. 2d 221 (S.D.N.Y. 2006) ..................................................... 12, 13, 14

*Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996) ............................................................................... 17

*Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006)................................................................................... 7

*Licausi v. Griffin*, 460 F. Supp. 3d 242 (E.D.N.Y. 2020) (Brown, J.)............................................ 8

*Lockwood v. BOP*, No. 13 Civ. 8104 (ALC), 2015 WL 4461597 (S.D.N.Y. July 21, 2015)....... 11

*Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir. 1994) ....................................................................... 15

*Macklin v. Mercer Cnty. Superior Courthouse*, No. 10-5591 (MLC), 2012 WL 6005774 (D.N.J. Nov. 29, 2012) ............................................................................................................................. 17

*Newman v. Vance*, No. 20-CV-1416 (LLS), 2020 WL 1330763 (S.D.N.Y. Mar. 20, 2020) . 8

*Ouchie v. Ross*, No. 1:07-CV-0091 (MAT), 2013 WL 593996 (W.D.N.Y. Feb. 15, 2013)......... 15

*Rhodes v. Chapman*, 452 U.S. 337 (1981)..................................................................................... 12

*Rosenberg v. Pliler*, No. 21-CV-5321, 2021 WL 6014938 (S.D.N.Y. Dec. 20, 2021) ............. 8, 9

*South v. Licon-Vitale*, No. 19-CV-1763 (VLB), 2020 WL 3064320 (D. Conn. June 9, 2020) 9, 10, 11

*Stewart v. Schiro*, No. 13-CV-3613, 2015 WL 1854198 (E.D.N.Y. Apr. 22, 2015) (Garaufis, J.) ...................................................................................................................................................... 11

*Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631 (2d Cir. 2016)....................................................... 8

*Thompson v. Choinski*, 525 F.3d 205 (2d Cir. 2008)................................................................... 7, 8

*Triestman v. BOP*, 470 F.3d 471 (2d Cir. 2006) ............................................................................ 8

*United States v. El-Hage*, 213 F.3d 74 (2d Cir. 2000)................................................................. 16

*United States v. Hashmi*, 621 F. Supp. 2d 76 (S.D.N.Y. 2008)................................................... 16

*United States v. Mohamed*, 103 F. Supp. 3d 281 (E.D.N.Y. 2015) (Kuntz, J.) ........................... 16

*United States v. Schulte*, No. 17 Cr. 548, 2021 WL 4733022 (S.D.N.Y. Oct. 6, 2021) ....... 6, 7, 16

*Wilson v. Seiter*, 501 U.S. 294 (1991)............................................................................... 12, 13, 14

**Statutes**

18 U.S.C. § 1001 ............................................................................................... 5

28 U.S.C. § 2241 ..................................................................................... 1, 7, 8, 9

28 U.S.C. § 2255 ............................................................................................... 7

**Regulations**

28 C.F.R. § 501.2(a) .......................................................................................... 3

28 C.F.R. § 501.2(c) .......................................................................................... 3

28 C.F.R. § 542.10(a) ........................................................................................ 9

28 C.F.R. § 542.13(a) ........................................................................................ 9

28 C.F.R. § 542.14 ............................................................................................. 9

28 C.F.R. § 542.15 ........................................................................................... 10

28 C.F.R. § 542.18 ........................................................................................... 10

28 C.F.R. Part 542, Subpart B .......................................................................... 9

## PRELIMINARY STATEMENT

*Pro se* Petitioner Joshua Adam Schulte ("Petitioner"), an inmate in the custody of the Federal Bureau of Prisons ("BOP"), filed this habeas corpus petition ("Petition") pursuant to 28 U.S.C. § 2241 against Respondent Warden of Metropolitan Detention Center Brooklyn ("Respondent"). Petitioner is currently incarcerated at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn" or "MDC") and is the subject of Special Administrative Measures ("SAMs") which have been imposed on him. (*See* Petition, ECF No. 1.) Petitioner challenges the conditions of his confinement at MDC Brooklyn, which are largely the result of the SAMs placed on him by the Attorney General and subsequently upheld by the Judge in the Southern District of New York that is presiding over his criminal case. Petitioner previously challenged and sought to remove the SAMs in his criminal case and the Court rejected Petitioner's applications. Petitioner now seeks a second bite at the proverbial apple in the Eastern District of New York.

The Court has ordered Respondent to show cause regarding why a writ of habeas corpus should not be issued. (*See* Feb. 16, 2022 Minute Entry.) As demonstrated below, the Petition should be denied. As an initial matter, this Court should not disturb or second-guess the Attorney General and the Honorable Paul A. Crotty's decision to impose SAMs on Petitioner during his detention at the MDC. In addition, there are other reasons that merit dismissal of this habeas corpus petition. First, Petitioner has failed to exhaust his administrative remedies, which is a prerequisite to filing a habeas corpus petition in the Second Circuit. Second, Petitioner has failed to state a claim under the Eighth Amendment regarding the conditions of his confinement. Accordingly, this Court should deny the Petition.

<u>**STATEMENT OF FACTS**</u>

**A.     Factual Background**

**1.   Petitioner's Criminal Case and the Charges Against Him**

On August 24, 2017, Petitioner was arrested on child pornography charges. (*See* Compl., *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Aug. 23, 2017), ECF No. 1, and Aug. 24, 2017 Minute Entry.) Initially, Petitioner was ordered detained pending trial (*see* Order, *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Aug. 24, 2017), ECF No. 5), but on September 13, 2017, the Court bailed Petitioner with strict conditions, including a prohibition on possessing or using a computer, computer network, or the Internet without express authorization from Pretrial Services (*see* Order, *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Sept. 14, 2017), ECF No. 8). On January 8, 2018, the Court determined that Petitioner violated his bail conditions by using the Internet without authorization and was a danger to the community, and therefore, ordered his detention. (*See* Transcript, *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Aug. 23, 2017), ECF No. 29, at 16:9-17.).

On June 18, 2018, the Government superseded the indictment to add charges stemming from Petitioner's theft of national defense information from the Central Intelligence Agency ("CIA") and subsequent transmission of that information to Wikileaks. (*See* Superseding Indictment, *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. June 18, 2018), ECF No. 47). Then, on October 31, 2018, the Government superseded the indictment again to charge Petitioner with: (i) violating the protective order entered in the criminal case by leaking a search warrant to *The New York Times* and *The Washington Post* and encouraging his family members to disseminate the search warrants (the "Contempt Count"); and (ii) smuggling contraband cell phones into the

MCC to leak additional classified information to a reporter (the "MCC Leak Count"). (Second Superseding Indictment, *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Oct. 31, 2018), ECF No. 68.)

### 2. Special Administrative Measures Imposed

The Attorney General has the authority to instruct BOP to:

> implement special administrative measures that are reasonably necessary to prevent disclosure of classified information upon written certification to the Attorney General by the head of a member agency of the United States intelligence community that the unauthorized disclosure of such information would pose a threat to the national security and that there is a danger that the inmate will disclose such information.

28 C.F.R. § 501.2(a). SAMs may be imposed for a maximum of one year and may then be successively renewed, or re-imposed, in increments of up to one year. *Id.* § 501.2(c).

Following the Government's discovery of the conduct that led to the MCC Leak Count and the Contempt Count, the U.S. Attorney's Office—in coordination with the Federal Bureau of Investigation ("FBI") and the Department of Justice's Counterintelligence and Export Control Section of the National Security Division—requested the imposition of SAMs. (*See* Mot. to Vacate SAMs, *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. May 10, 2019), ECF No. 92 at 124-140 ("SAMs Directive").) On or about October 26, 2018, the Attorney General issued a written memorandum directing the Bureau of Prisons ("BOP") to implement the SAMs. (SAMs Directive.). The memorandum stated that the Director of the CIA had certified "that the implementation of [SAMs] is reasonably necessary to prevent disclosure of classified information by [Petitioner], and that the disclosure of such information would pose a threat to national security." (SAMs Directive, at 1).

The SAMs limit Petitioner's contacts and communications with others because such communications could result in the unauthorized disclosure of classified information. Except as allowed by the SAMs, Petitioner is barred from "having contact (including passing or receiving any oral, written or recorded communications) with any other inmate, visitor, attorney, or anyone else . . . that could reasonably foreseeably result in [Petitioner] communicating (sending or receiving) information that could circumvent the SAMs' intent of significantly limiting [Petitioner's] ability to communicate (send or receive) classified information." (SAMs Directive, ¶ 1(c)). The SAMs prohibit Petitioner from being housed or communicating with another inmate. (*See* SAMs Directive, ¶ 6). They also:

- delegate to the BOP, United States Marshals Service ("USMS"), and relevant detention facility (currently, the MDC), the determination as to whether Petitioner's attorney-client visits may be contact or non-contact, (SAMs Directive, ¶ 2(b));

- prohibit Petitioner from having telephone calls with anyone other than his legal team and family members, permit the FBI to monitor and/or record Petitioner's non-legal telephone calls, and delegate to the USMS, BOP, and detention facility the quantity and duration of Petitioner's calls, with a minimum of one call per month, (SAMs Directive, ¶ 3);

- permit non-legal visits only with Petitioner's immediate family members, require such visits to be non-contact, and permit for the USMS, BOP, detention facility, FBI, and CIA to monitor such visits, (SAMs Directive, ¶ 3);

- require that Petitioner's incoming and outgoing mail be analyzed by the government, (*see* SAMs Directive, ¶ 3(g)(iii)-(iv)); and

- prohibit Petitioner from communicating with the news media, (SAMs Directive, ¶ 4), engaging in group prayer with other inmates, (SAMs Directive, ¶ 5), and having access to news publications or books that could be determined "to facilitate criminal activity or be detrimental to national security, the security, good order, or discipline of the institution or the protection of the public," (SAMs Directive, at ¶¶ 8(a), 9).

### 3. SAMs Litigation in Petitioner's Criminal Matter

On May 10, 2019, Petitioner moved to vacate the SAMs on the grounds that they are an unconstitutional punishment and not reasonably necessary to prevent the disclosure of classified information. (*See* Mot. to Vacate SAMs, *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. May 10, 2019), ECF No. 92.) The Government opposed the motion. (*See* Mem. in Opp., *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. June 17, 2019), ECF No. 96.) On August 14, 2019, Judge Crotty denied Petitioner's motion except modified the SAMs in two limited respects: first, to permit precleared non-attorney members of Petitioner's legal team to disclose his communications for the sole purpose of preparing his defense, following consultation with and authorization by Petitioner's cleared attorneys; and second, to permit Petitioner monitored contacts (calls, visits, and mail) with non-immediate family members. (*See* Order, *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Aug. 14, 2019), ECF No. 127.) In largely upholding the SAMs, the Court noted that "[t]he SAMs are undoubtedly restrictive, but generally they are reasonably necessary to avoid further disclosure of classified information." (Order, *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Aug. 14, 2019), ECF No. 127, at 8).

In February and March 2020, the Government tried Petitioner on the second superseding indictment. On March 9, 2020, the jury returned a verdict finding Petitioner guilty on the Contempt Count as well as on a count of making false statements to the FBI, in violation of 18 U.S.C. § 1001 (the "False Statement Count"). (Mar. 9, 2020 Minute Entry, *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Mar. 9, 2020), ECF No. 351.) The jury did not reach a verdict on the remaining eight counts, and the Court declared a mistrial on those eight counts. (*See id*.). Petitioner has yet to be sentenced on the Contempt Count and False Statement Count. (*See* Mem. & Order, *United*

*States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Sept. 29, 2021), ECF No. 519 (denying Petitioner's motion to schedule sentencing on the convicted counts prior to his trial on the remaining counts)).

On June 24, 2021, Petitioner filed a second motion to vacate the SAMs. (*See* Letter Mot., *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. June 24, 2021), ECF No. 474.) The Government opposed the motion, and on October 6, 2021, Judge Crotty denied that motion and found that the imposition of SAMs was still warranted. *See United States v. Schulte*, No. 17 Cr. 548, 2021 WL 4733022 (S.D.N.Y. Oct. 6, 2021).[1]

### 4. Petitioner's Ongoing Complaints About Conditions of Confinement That Were Previously Rejected in the Criminal Matter

Petitioner also recently complained about the conditions of his confinement at MDC Brooklyn in his pending criminal matter. On November 13, 2021, Petitioner raised complaints regarding his stay at MDC Brooklyn in a letter to the Court, many of which are repeated in his Petition. (*See* Letter Mot., *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Nov. 13, 2021), ECF No. 590). On November 29, 2021, the United States responded to that letter, and noted that "the majority of [Petitioner's] complaints relate to the fact that he is not treated the same as inmates in general population, which is not a function of [Petitioner] being unfairly punished, but rather of the [SAMs] that the Court has held as not a form of punishment but rather as security measures reasonably related to legitimate penological objectives." *See* (*See* Letter, *United States v. Schulte*,

---

[1] The jury was unable to reach a unanimous verdict as to the remaining counts and, as a result, Judge Crotty granted the defendant's motion for a mistrial as to those counts. (Mar. 9, 2020 Minute Entry, *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Mar. 9, 2020), ECF No. 351.) On June 8, 2020, the United States obtained a third superseding indictment which included nine counts addressing Petitioner's: (a) theft and transmission of classified information; (b) destruction of log files and forensic data on CIA computer systems; (c) obstruction of the investigation into the WikiLeaks disclosures; and (d) transmission and attempted transmission of national defense information while in BOP custody. (Third Superseding Indictment, *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. June 24, 2021), ECF No. 405.)

No. 17 Cr. 548 (S.D.N.Y. Nov. 29, 2021), ECF No. 617 (citing *United States v. Schulte*, No. 17 Cr. 548, 2021 WL 4733022 (S.D.N.Y. Oct. 6, 2021)).) The United States also submitted a declaration from Unit Manager Norman Reid at MDC Brooklyn, which addressed the substance of many of Petitioner's complaints about his confinement. *See* (Decl. of Norman Reid dated Nov. 24, 2021 ("Reid Decl."), *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Nov. 29, 2021), ECF No. 627-1.) The Court took no further action with respect to Petitioner's repeated complaints about the conditions of his confinement that were previously rejected by the Court.

**B.    The Current Petition Reasserting the Petitioner's Complaints about SAMs Conditions of Confinement**

On February 7, 2022, Petitioner filed the instant action and styled it as a habeas corpus petition pursuant to 28 U.S.C. § 2241. *See* ECF No. 1. Petitioner alleged that his "[c]urrent conditions of confinement violate [the] First, Fourth, Fifth, Sixth, and Eighth Amendments." *See* Petition, at 4. However, construed liberally, the complaints contained in the Petition, which are summarized in greater detail below, all appear to raise claims under the Eighth Amendment alone and center primarily on the limitations imposed on an inmate with SAMs.

## LEGAL STANDARD

A habeas corpus petition under 28 U.S.C. § 2241 is appropriate where a federal prisoner challenges the execution of his sentence. *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) ("This court has long interpreted § 2241 is appropriate where a federal prisoner challenges the execution of his sentence . . . ."); *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) ("This distinction between sentence validity and sentence execution is grounded in the plain language of the more specific statute, § 2255, which does not recognize challenges to the manner of carrying out a prisoner's sentence."); *Adams v. United States*, 372 F.3d 132, 135 (2d Cir. 2004); *Hernandez*

*v. Lindsay*, No. 08-CV-1495, 2011 WL 3163078, at *3 (E.D.N.Y. July 22, 2011) (Feuerstein, J.). The execution of a federal sentence includes "the administration of parole, computation of sentence, prison disciplinary actions, prison transfers, and type of detention and prison conditions." *Chambers v. United States*, 106 F.3d 472, 474-75 (2d Cir. 1997); *see also Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001); *Thompson*, 525 F.3d at 209.

Accordingly, courts must liberally construe a *pro se* petition to raise the strongest arguments it suggests. *Licausi v. Griffin*, 460 F. Supp. 3d 242, 260 (E.D.N.Y. 2020) (Brown, J.) (citing *Triestman v. BOP*, 470 F.3d 471, 472 (2d Cir. 2006)); *see also Newman v. Vance*, No. 20-CV-1416 (LLS), 2020 WL 1330763, at *1 (S.D.N.Y. Mar. 20, 2020) (citing *Triestman*, 470 F.3d at 474-75). Although courts "accord filings from *pro se* litigants a high degree of solicitude, even a litigant representing himself is obliged to set out identifiable arguments in his principal brief." *Ho-Shing v. Budd*, 771 F. App'x 79, 80 (2d Cir. 2019) (summary order) (quoting *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 632–33 (2d Cir. 2016)).

## ARGUMENT

## I.    PETITIONER FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

"Federal Prisoners are required to exhaust administrative remedies before seeking habeas relief pursuant to 28 U.S.C. § 2241." *See Rosenberg v. Pliler*, No. 21-CV-5321, 2021 WL 6014938, at *2 (S.D.N.Y. Dec. 20, 2021) (citing *Carmona v. BOP*, 243 F.3d 629, 634 (2d Cir. 2001)); *see also Agosto v. Hufford*, No. 13 Civ. 4082 (VEC) (SN), 2014 WL 2217908, at *3 (S.D.N.Y May 8, 2014), *report and recommendation adopted*, 2014 WL 2217925 (S.D.N.Y. May 29, 2014) ("A prisoner may seek relief under § 2241 'once administrative remedies are exhausted.' "); *Bowens v. BOP*, No. 12 Civ. 5591 (PKC), 2013 WL 3038439, at *3 (S.D.N.Y. June

18, 2013) (citing *Carmona*, 243 F.3d at 634) ("Before filing a petition pursuant to 28 U.S.C. § 2241, an inmate must first exhaust administrative appeals.").

The rationale of the administrative exhaustion requirement is as follows: "Administrative exhaustion 'could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds.' " *Bowen*, 2013 WL 3038439, at *3 (citing *Carmona*, 243 F.3d at 634). The failure to exhaust is excused only if the prisoner comes forward with evidence of "cause for his dereliction and consequent prejudice," and "only then if cause-and-prejudice evidence outweighs the interests in judicial economy and accuracy behind the administrative exhaustion requirement." *Id.* (citing *Carmona*, 243 F.3d at 633-34). Cause and prejudice may be established with evidence of "legitimate circumstances beyond the prisoner's control [that] preclude him from fully pursuing his administrative remedies . . . ." *Id.* (citing *Carmona*, 243 F.3d at 634).

"To exhaust administrative remedies, federal inmates must comply with BOP's Administrative Remedy Program, a four-step process for inmates who 'seek formal review of an issue relating to any aspect of his/her own confinement.' " *Rosenberg*, 2021 WL 6014938, at *2 (citing 28 C.F.R. § 542.10(a)); *see also South v. Licon-Vitale*, No. 19-CV-1763 (VLB), 2020 WL 3064320, at *1 (D. Conn. June 9, 2020) (citing 28 C.F.R. Part 542, Subpart B). First, the petitioner must attempt informal resolution by presenting a BP-8 form. *South*, 2020 WL 3064320, at *1 (citing 28 C.F.R. § 542.13(a); *Banks v. United States*, No. 10-CV-6613 (GBD), 2011 WL 4100454, at *10 (S.D.N.Y. Sept. 15, 2011)). Second, if the matter is not resolved informally, the prisoner must submit a formal written Administrative Remedy Request to the warden using a BP-9 form. *Id.* (citing 28 C.F.R. § 542.14; *Banks*, 2011 WL 4100454, at *10). Third, if the formal

complaint is denied, an inmate may submit an appeal to the requisite BOP Regional Director using a BP-10 form. *Id.* (citing 28 C.F.R. § 542.15; *Banks*, 2011 WL 4100434, at *10)). Fourth, an adverse decision from a Regional Director may be appealed to the BOP General Counsel's Office on form BP-11. *Id.* "An administrative appeal is considered finally exhausted when it has been considered by the BOP General Counsel's Office in the BOP Central Office." *Id.*

Petitioner is aware of the BOP Administrative Remedy Program because he has submitted eight grievances since being transferred to MDC (and fifty-five total during his time in BOP custody). *See* Declaration of John Wallace Decl. dated March 25, 2022 (attached hereto), ¶ 6. Indeed, in his Petition, he sets forth that "[t]o date, over fifty BP-8s have been filed with the MDC; only 5 have been returned with BP-9 forms. Of those, none have been answered. Accordingly, all available administrative remedies have been exhausted." (*See* Pet., ECF No. 1, at 17.)

By Petitioner's own admission, he failed to exhaust his administrative remedies. An alleged non-response has no bearing on whether Petitioner could proceed to the next step, because BOP regulations allowed Petitioner to deem the perceived non-response as a denial and proceed to the next stage of the grievance process. *See* 28 C.F.R. § 542.18; *George v. Morrison-Warden*, No. 06 Civ. 3188 (SAS), 2007 WL 1686321, at *3 (S.D.N.Y. June 11, 2007) ("In his opposition papers, [the plaintiff] attempts to justify his failure to meet the exhaustion requirement on the ground that he was stone-walled in his attempts to utilize the [Administrative Remedy Program], and that in light of the Warden's failure to respond to his BP-9 submission, he could not be expected to pursue this issue. It is well-settled, however, that *even when an inmate files a grievance and receives no response*, he must nevertheless properly exhaust all appeals before his grievance is considered exhausted.") (internal quotation marks and footnotes omitted) (emphasis in original); *see also*

*Lockwood v. BOP*, No. 13 Civ. 8104 (ALC), 2015 WL 4461597, at *3 (S.D.N.Y. July 21, 2015) ("The failure of the BOP to address a BP-8 is a failure to resolve the issues raised therein, and an inmate must then submit a BP-9, or 'Administrative Remedy Request,' to the warden, Therefore, [plaintiff's] admission that he abandoned the administrative grievance process because he never received a response to his BP-8s is fatal to his claims under *Bivens*.") (internal citations omitted).

Therefore, because Petitioner has not exhausted administrative remedies, this Petition is premature and should be dismissed. *See South*, 2020 WL 3064320, at *1 ("An administrative appeal is considered finally exhausted when it has been considered by the BOP General Counsel's Office in the BOP Central Office.").

## II.    THE HABEAS PETITION ALSO FAILS ON THE MERITS

Petitioner asserts a variety of constitutional claims regarding the conditions of his confinement. (*See generally* Pet., ECF No. 1.) Although he styles these claims as violations of the First, Fourth, Fifth, Sixth, and Eighths Amendments, the substance of each claim is an Eighth Amendment challenge to a condition of confinement. For the reasons set forth below, Petitioner has not pled a viable conditions of confinement claim, and his Petition should be dismissed on this basis as well.

Although charges are still pending against Petitioner from the Third Superseding Indictment, Petitioner was convicted on the Contempt and False Statement Counts. Accordingly, the Eighth Amendment applies because Petitioner has been convicted (even though he has not yet been sentenced). *See Stewart v. Schiro*, No. 13-CV-3613, 2015 WL 1854198, at *11 (E.D.N.Y. Apr. 22, 2015) (Garaufis, J.) ("The critical juncture is conviction, either after trial or, as here, by plea, at which point the state acquires the power to punish and the Eighth Amendment is

implicated." (citations omitted)); *Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533, 539 (S.D.N.Y. 2005) ("Consequently, plaintiff's excessive force claim, which arose after he was convicted but before he was sentenced, is to be analyzed under the Eighth Amendment."). All of Petitioner's constitutional claims in the instant case concerning the conditions of his confinement at the MDC are thus subject to an Eighth Amendment analysis.

The Eighth Amendment imposes duties on prison officials, who must provide "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted). However, "[t]he Eighth Amendment "does not mandate comfortable prisons,' " *see Chapdelaine v. Keller*, No. 95-CV-1126 RSP/GLS, 1998 WL 357350, at *5 (N.D.N.Y. Apr. 16, 1998) (quoting *Farmer*, 511 U.S. at 832), nor does it "guarantee prisoners freedom from any and all sorts of unsavory environs." *Jones v. Goord*, 435 F. Supp. 2d 221, 234 (S.D.N.Y. 2006). "The Constitution draws a line between conditions that are harsh, and conditions that are 'cruel and unusual' within the meaning of the Eighth Amendment." *Id.* Indeed, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). If the conditions complained of are merely "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

To determine whether conditions of confinement comport with these constitutional requirements, courts apply a two-part test. First, under the objective prong of the inquiry, "a deprivation violates the Constitution only if it is sufficiently serious." *Jones*, 435 F. Supp. 2d at 234 (quoting *Farmer*, 511 U.S. at 834). A deprivation is considered "sufficiently serious" if it leads

to the "specific deprivation of a single human need." *Id.* at 235 (quoting *Wilson*, 501 U.S. at 298). Second, under the subjective prong of the inquiry, "a constitutional violation exists only if the defendants have a 'sufficiently culpable state of mind." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Specifically, the subjective component of the test requires that an official "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer*, 511 U.S. at 837.

In the instant case, Petitioner has complained of numerous conditions he has allegedly experienced while incarcerated at the MDC as a SAMs inmate, including the following (which Respondent has separated into three groups):

### Group I

- an uncomfortable concrete stool in his cell (*See* Pet., ECF No. 1, at 9-10);
- lack of television access (*See* Pet., ECF No. 1, at 12);
- constant surveillance (*See* Pet., ECF No. 1, at 4-5, 10);
- lack of toggle switches for the lights in his cell (*See* Pet., ECF No. 1, at 9-10);
- lack of adequate recreational facilities (*See* Pet., ECF No. 1, at 13);
- lack of a window view and lockers in his cell (*See* Pet., ECF No. 1, at 16);
- restrictions on his commissary account (*See* Pet., ECF No. 1, at 10-11); and
- amenities (to wit, a sink, a toilet, and a shower) that are inconvenient to use (*See* Pet., ECF No. 1, at 14-16).

### Group II

- disruption of sleep by bright lights, as well as frequent officer rounds (*See* Pet., ECF No. 1, at 4-5);
- installation of speakers that have been installed near his cell which emit loud noises (*See* Pet., ECF No. 1, at 7-8);
- interruption of a three-meal-a-day schedule (*See* Pet., ECF No. 1, at 6); and
- exposure to "extreme" cold (*See* Pet., ECF No. 1, at 7).

### Group III

- solitary confinement (*See* Pet., ECF No. 1, at 11);

- limited access to discovery and the law library (*See* Pet., ECF No. 1, at 8, 12-13);
- restricted access to social telephone calls and social visits (*See* Pet., ECF No. 1, at 13); and
- shackling when moved from his cell to another location within MDC (*See* Pet., ECF No. 1, at 14).

Even if Plaintiff *had* exhausted administrative remedies regarding any of these claims – which, as discussed above, he has not – they would all still be ripe for dismissal for failure to allege facts would sustain constitutional violations.

## A.     The Group I Claims Cannot Form the Basis of a Conditions of Confinement Claim

With respect to these complaints, the Constitution "does not recognize a general amorphous 'conditions of confinement' claim." *Jones*, 435 F. Supp. 2d at 236 (quoting *Wilson*, 501 U.S. at 305). To state a claim, Petitioner must show how the combined effects of the alleged conditions experienced led to the deprivation of a "single, identifiable human need such as food, warmth or exercise." *Id.* In the instant case, Petitioner wholly failed "to point to any specific human need affected by the conditions" of his confinement with respect to the complaints in Group I. *See id.* Instead, Petitioner has "simply str[u]ng together a list of undesirable conditions" and attempts to argue that each constitutes an unconstitutional condition of confinement. *See id.* Simply put, Petitioner has no actionable claim under the Eighth Amendment arising out of these complaints.

## B.     The Group II Claims Cannot Form the Basis of a Conditions of Confinement Claim

As an initial matter, the alleged deprivations alleged in Group II do not rise to a level of constitutional significance. *See, e.g.*, *Flores v. TDCJ Transitorial Planning Dep't S. Region Inst. Div.*, No. 2:14-CV-283, 2015 WL 10436114, at *2 (S.D. Tex. Nov. 17, 2015) ("[T]wo meals a day may be constitutionally adequate on even a regular, permanent basis, let alone only two days a week.") (citing *Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986)); *Amaker v. Goord*, No. 98 Civ. 3634 (JGK), 2002 WL 523371, at *8 (S.D.N.Y. Mar. 29, 2002) (recognizing that only lighting

"so inadequate . . . that [it] caused or aggravated any objectively serious medical conditions," could constitute a constitutional violation); *Ouchie v. Ross*, No. 1:07-CV-0091 (MAT), 2013 WL 593996, at *11 (W.D.N.Y. Feb. 15, 2013) (holding that claims of bright lighting or constant illumination in cells were insufficient to show an Eighth Amendment violation absent resulting harm) (collecting cases); *see also Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) ("Subjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather than injure the prisoner does not demonstrate a disregard for the prisoner's welfare."); *Brown v. McElroy*, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001) (allegations that a prisoner's room was "extremely cold and that he was without clean linens for the bed, toiletries, and clean clothing" deemed not sufficiently serious to state a claim of unconstitutional conditions of confinement).

Moreover, many of Petitioner's allegations regarding Group II are not true, or at best, exaggerated. With respect to lighting conditions, MDC Unit Manager Reid affirmed that "th[e] main light can be turned on from 6AM to 10PM, to provide lighting for breakfast and morning activities," and that once the main light is turned off, "a dim, smaller low wattage bulb remains on . . . [which] helps with clear visual for video monitoring in the cell" and also assists correctional staff in making their nightly rounds. *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Nov. 29, 2021), ECF No. 627-1, ¶ 5. Petitioner also receives three meals a day. *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Nov. 29, 2021), ECF No. 627-1, ¶ 6. The temperature is also "targeted to be set at 76 degrees Fahrenheit in the cooling season and 68 degrees Fahrenheit in the heating season per BOP Program Statement 4200.12, Facilities Operation Manual." *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y. Nov. 29, 2021), ECF No. 627-1, ¶ 7.

15

**C.     The Group III Claims Cannot Form the Basis of a Conditions of Confinement Claim**

The Petitioner's allegations associated with Group III are permissible in light of Petitioner's SAMs restrictions. As Judge Crotty noted when he denied Petitioner's second motion to vacate the SAMs, Petitioner's isolation from other inmates that results from his SAMs status is a necessary measure in light of Petitioner's prior conduct. *See United States v. Schulte*, No. 17 Cr. 548, 2021 WL 4733022, at *2 (S.D.N.Y. Oct. 6, 2021) ("Pursuant to the SAMs, [Petitioner]] has been held in solitary confinement for a long period . . . . Still, the Court repeats its 2019 holding that these measures, although hard, are reasonably related to legitimate penological objectives so long as [Petitioner] is facing trial for substantial espionage charges, handling and reviewing sensitive classified material in discovery as he prepares his *pro se* defense, and continuing his troubling pattern of disrespect for the Court's protective orders and other directives regarding classified information.").

Other courts have also upheld the limitations posed on SAMs inmates. *See, e.g.*, *United States v. El-Hage*, 213 F.3d 74, 82 (2d Cir. 2000) ("The alternative to [defendant's] current confinement conditions appears to be his confinement as part of the general prison population. Because his dangerousness arises out of the information he might communicate to others, it was reasonable for the government to find that alternative unacceptable."); *United States v. Mohamed*, 103 F. Supp. 3d 281, 288 (E.D.N.Y. 2015) (Kuntz, J.) (upholding imposition of SAMs, and observing that confinement in a Special Housing Unit was rationally connected to preventing an inmate from "coordinating violent attacks" and "sending coded communications to co-conspirators outside the prison"); *United States v. Hashmi*, 621 F. Supp. 2d 76, 87 (S.D.N.Y. 2008) ("The Acting Attorney General requested that the BOP implement the measures because of the risk that

[defendant's] communications could result in death or serious bodily injury to other persons. The restrictions imposed are a rational means toward that legitimate penological objective.").

Additionally, the use of restraints to move inmates from place to place has frequently been found to be an acceptable measure for those who pose security risks. *See, e.g.*, *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (affirming dismissal claim concerning shackling and handcuffing of inmate who posed a security concern where the inmate "[did] not allege cruel conduct causing discomfort beyond that inherent from movement in restraints"); *Barker v. Fugazzi*, 18 F. App'x 663, 665 (9th Cir. 2001) ("Prison officials may place inmates in restrains while moving them from place to place."); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, No. 18-00453 HG-RT, 2019 WL 922232, at *6 (D. Haw. Feb. 25, 2019) (dismissing conditions of confinement claim raised by inmate who was accused of "unidentified misconduct" and "was required to wear ankle and wrist restraints for one hour daily while out of the cell for exercise"); *Macklin v. Mercer Cnty. Superior Courthouse*, No. 10-5591 (MLC), 2012 WL 6005774, at *3 n.3 (D.N.J. Nov. 29, 2012) (noting that "shackling has consistently been approved as a security practice) (collecting cases).

Finally, Petitioner's remaining complaints concern his limited access to the law library and discovery in his criminal matter, and limited social visits all of which stem directly from the SAMs. To be clear, Petitioner has access to his discovery and social calls and visits, albeit in a more limited manner than a general population inmate. As MDC Unit Manager Reid affirmed: "MDC Brooklyn has a law library to be shared between the inmates in the general population. Due to [Petitioner's] special administrative measures, [Petitioner] is prevented [from] shar[ing] the same general area with the general population. [Petitioner's] special administrative measures also restrict[] [his] phone calls and social visits." *United States v. Schulte*, No. 17 Cr. 548 (S.D.N.Y.

Nov. 29, 2021), ECF No. 627-1, ¶ 11.

Accordingly, dismissal of the habeas petition is warranted on the merits as well.

## **CONCLUSION**

For the foregoing reasons, Respondent respectfully requests that this Court deny the

Petition in its entirety, with prejudice, and grant Respondent such other and further relief as this

Court may deem just and proper.

Dated:   Brooklyn, New York
        March 25, 2022

                                      BREON PEACE
                                      United States Attorney
                                      Eastern District of New York
                                      *Attorney for Respondent*
                                        271-A Cadman Plaza East
                                      Brooklyn, NY 11201

By:    _/s/ David A. Cooper_
                                        David A. Cooper
                                        Assistant U.S. Attorney
                                        (718) 254-6228
                                        david.cooper4@usdoj.gov

cc:    **By Certified Mail**
        Joshua Adam Schulte
        Metropolitan Detention Center
        PO Box 329002
        Brooklyn, NY 11232
        Pro se *Plaintiff*