


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 13 2022 ★

BROOKLYN OFFICE

JOSHUA ADAM SCHULTE,

*Plaintiff,*

-v-

WARDEN, METROPOLITAN DETENTION

CENTER (MDC)

*Defendant.*

22 Civ. 0766 (EK)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

Joshua Adam Schulte
Slave #79471054
Metropolitan Detention Center (MDC)
P.O. Box 329002
Brooklyn, NY 11232

# TABLE OF CONTENTS

I.    TABLE OF AUTHORITIES.................................................................................ii

II.   PRELIMINARY STATEMENT ..................................................................1

III.  STATEMENT OF FACTS..........................................................................2

   A.   Criminal Case History and Complete Background..........................2

      1.   Pre-arrest ...................................................................................2

      2.   Arrest and First Indictment ........................................................5

      3.   First Superseding Indictment .....................................................8

      4.   Second Superseding Indictment................................................10

   B.   Administrative remedies at the MCC............................................13

   C.   Previous litigation attempts for relief at MCC..............................14

   D.   BOP's use of antiquated system to deter administrative remedies...........16

   E.   MDC's perjury and fraud upon the criminal court .......................17

IV.   ALL AVAILABLE ADMINISTRATIVE REMEDIES EXHAUSTED.......18

   A.   Exhaustion of administrative remedies at the MDC (20) ...............18

   B.   Additional Exhaustion attempts and additional claim ...................20

      1.   Second Attempt: 21 administrative remedies .............................20

      2.   Third attempt: 21 administrative remedies ................................21

      3.   Fourth attempt: 18 administrative remedies..............................21

   C.   Exhaustion of all available administrative remedies......................22

V.    THE COURT SHOULD GRANT THE HABEAS PETITION....................23

   A.   Applicable standard.......................................................................23

   B.   Unconstitutional conditions of confinement..................................25

      1.   Torture imposed that directly impacts the criminal case ............27

      2.   Other arbitrary punishment imposed that directly impacts the case..........31

      3.   Arbitrary denial of any and all entertainment as a form of punishment.....40

VI.   CONCLUSION ......................................................................................43

i

# I. TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................23

*Bell v. Wolfish,*
   441 U.S. 520 (1979).................................................................25

*Benjamin v. Fraser,*
   264 F.3d 175 (2d Cir. 2001) ....................................................23

*Iqbal v. Hasty,*
   490 F.3d 143 (2d Cir. 2007) ....................................................23

*Joshua Adam Schulte v. Attorney General of the United States, et al.,*
   19 Civ. 3346 (S.D.N.Y. 2019) ..................................................14

*Ross v. Blake,*
   136 S. Ct. 1850 (2016)..............................................................22

*Sandin v. Conner,*
   515 U.S. 472 (1995)..................................................................23


**Statutes**

18 U.S.C. § 1001 ..........................................................................12

18 U.S.C. § 3500...........................................................................6

18 U.S.C. § 401 ............................................................................12

28 U.S.C. § 2241 ...........................................................................1

Classified Information Procedures Act (CIPA)............................12

## Rules

Fed. R. Crim. P. 29 .................................................................................................13

## Regulations

28 C.F.R. § 542.10 ..................................................................................................22

28 C.F.R. § 542.18 .............................................................................................19, 22

## Constitutional Provisions

U.S. Const. amend. I .................................................................................................10

U.S. Const. amend. IV ..............................................................................................33

U.S. Const. amend. IX ..............................................................................................33

U.S. Const. amend. V............................................................................................ passim

U.S. Const. amend. VI ..........................................................................................31, 33

U.S. Const. amend. VIII .......................................................................................... passim

## II. PRELIMINARY STATEMENT

Plaintiff filed a petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 against Respondent Warden of the MDC on January 21, 2022 (docketed February 7, 2022, Dkt. 1). The Respondent filed its Opposition ("Opp.") on March 25, 2022, Dkt 6. Mr. Schulte now files this Reply in support of his Petition.

The MDC modified a general population unit at the MDC, unit K-84, to create a concentration camp designed to torment and torture all SAMs inmates—those the government accuses of crimes against itself, loathes above all else, and desires nothing less than to impose indefinite, infinite punishment.

The government first incorrectly argues that Mr. Schulte did not exhaust administrative remedies. For the purposes of 28 U.S.C. § 2241, Mr. Schulte did exhaust all *available* administrative remedies—that the MDC, and indeed the BOP, maintains an antiquated system designed solely to deter legitimate grievances and refuses to provide the proper forms to Mr. Schulte cannot be used against him.

Next the government incorrectly labels Mr. Schulte a convicted inmate. For the purposes of this petition, Mr. Schulte is a pretrial detainee—he is awaiting re-trial after a partial conviction for contempt of court and making false statements; the criminal district court refused to grant his motion to proceed to sentencing. Regardless, Mr. Schulte has already spent more time incarcerated than required by his guidelines, and indeed more time than the statutory maximum of the convicted counts. Additionally, the SAMs and conditions imposed by the BOP are a direct result of the pending charges, of which he is presumed innocent.

Finally, the torture imposed by the MDC is worse than any sentenced inmate in the Western Hemisphere; they are cruel, barbaric, and outrageously inhumane. This Court should grant the Petition for Writ of Habeas Corpus.

1

## III. STATEMENT OF FACTS

### A. Criminal Case History and Complete Background

The following is the criminal case history and complete background; Mr. Schulte is currently detained awaiting trial in the Southern District of New York, *United States v. Schulte*, S3 17 Cr. 548 (JMF).

#### 1. Pre-arrest

Mr. Schulte worked for the Central Intelligence Agency (CIA) and National Security Agency (NSA) as a software engineer from 2010-2016. He passed every polygraph examination including questions related to major crimes like espionage and possession of child pornography. In November 2016 Mr. Schulte moved to New York City to work for Bloomberg as a Senior Software Engineer.

On March 7, 2017, WikiLeaks released Vault 7, documents and software from Mr. Schulte's former group at the CIA.

On March 13, 2017, FBI Special Agent Jeffrey David Donaldson executed a covert search warrant of Mr. Schulte's New York City apartment. The search warrant was almost entirely fabricated as later revealed by the government's September 28, 2018 *Brady* Letter; without conducting any interviews, Agent Donaldson falsified and fabricated evidence. Furthermore, the falsified and fabricated evidence absolutely failed to provide the minimum requisite nexus to search Mr. Schulte's apartment. And finally, the search warrant was overbroad and insufficiently particular as it identified no specific electronic devices to search nor any specific evidence to seize; it merely sought a general warrant to seize any and all electronic devices to search for any and all evidence of a crime. While searching Mr. Schulte's apartment, the FBI were surprised to find so many electronic devices that they could not execute the covert warrant.

On March 14, 2017, the very next day, the FBI sought a new search warrant. Before executing that warrant on the 15th, Agent Donaldson met and interviewed Mr. Schulte. Mr. Schulte asked for the interview to be recorded, but Agent Donaldson declined. Agent Donaldson then asked Mr. Schulte to relinquish his passport and his cellphone. Mr. Schulte refused, but Agent Donaldson and the FBI illegally seized his cellphone under color of authority pursuant to a "forthwith" grand jury subpoena *duces tecum*.

Agent Donaldson then executed the illegal general warrant, and seized all of Mr. Schulte's electronics; including not only computers, but also cell phones, gaming consoles, mp3 players, and floppy disks—ultimately hundreds of electronic devices constituting the largest digital seizure in the Southern District of New York.

On March 20, 2017, Mr. Schulte wrote an attorney-client privileged email to his newly retained counsel, specifically detailing the interactions between himself and the FBI during the March 15th interview and subsequent search. The unnamed attorney-client privileged attachment to the email was written in narrative format. Pursuant to advice from counsel, Mr. Schulte began proffer sessions with the government to assist in their investigation.

In April 2017, after exhausting their search of items seized from the general warrant in which the FBI later admitted to searching every byte of information on all of the electronic devices for evidence of *any* possible crime—the FBI claimed to find evidence of copyright infringement and possession of child pornography. They also began searching for evidence of tax fraud.

Specifically, the government claimed that a desktop computer, SC01, contained child pornography. The government discovered a virtual machine—a

single file—that contained child pornography. However, as Mr. Schulte maintained a public server and services for at least a hundred unique users, this child pornography virtual machine was never created or used by Mr. Schulte. In fact, there is no child pornography on SC01 outside this virtual machine—no download or access to child pornography on any of the hard drives, in unallocated space on the hard drives, in temporary internet files, or in fact, *anywhere* on the computer. Indeed, of the hundreds of electronic devices recovered, none contained child pornography—distinguishing this case from those where the defendant is guilty. Mr. Schulte will prove at trial through incontrovertible forensic evidence that the virtual machine was created on a computer outside Mr. Schulte's network, was copied to a shared directory on Mr. Schulte's network, was used by a specific user who was NOT Mr. Schulte, and was *never accessed by Mr. Schulte*. Accordingly, the government did not immediately arrest Mr. Schulte since they knew through forensics that he had no knowledge of the child pornography.

However, the FBI soon found themselves in a conundrum. Unable to solve the WikiLeaks crime, the government decided that Mr. Schulte was an easy target due to his recent departure from the CIA on bad terms and the child pornography that they could use as leverage to manipulate him into falsely condemning himself for the espionage crimes. Indeed, FBI Special Agent Jeffrey David Donaldson commented that their strategy should be to "confront [Mr. Schulte] with the CP and hope he admits to the leak" in exchange for dropping the child pornography charges. Agent Donaldson's colleague later stated "[f]rom my take at the agency, I think even if its just politically, we need to go after him with everything." See Evanchec Lync Messages, April – July 2017.

## 2. Arrest and First Indictment

On August 24, 2017, the government executed their strategy, and arrested Mr. Schulte by a gang of armed FBI agents regarding allegations of possessing child pornography. They told Mr. Schulte all the child pornography charges would be dropped if he falsely admitted to the WikiLeaks disclosures, and asked him to waive the indictment timeline requirement to avoid public indictment. Mr. Schulte was declared guilty at his bail hearing and immediately sentenced to indefinite federal prison by a magistrate. Hr'g Tr. 8/24/17, Dkt. 4. Mr. Schulte refused the government's offer to falsely condemn himself in exchange for dropping the child pornography charges, and proceeded to indictment.

On September 6, 2017, a grand jury indicted Mr. Schulte for allegedly possessing, receiving, and transporting child pornography.

On September 13, 2017, District Judge Paul A. Crotty reversed the magistrate's decision, and released Mr. Schulte on the harshest pretrial conditions of 24-hour house incarceration and the ban of all electronic devices and the internet. The government unsuccessfully raised the issue of an alleged Virginia sexual assault from 2015 and potential charges. Hr'g Tr. 9/13/17, Dkt. 12.

On September 28, 2017, Mr. Schulte's roommate submitted a letter to pretrial services requesting permission to use a laptop and the internet in the apartment. Pretrial services consented and concurred that Mr. Schulte's roommate could access the internet and tend to Mr. Schulte's affairs on his behalf.

Between September and December 2017, while out on bail, Mr. Schulte wrote a redress of grievances titled "The Presumption of Innocence" (AKA the "Schulte Articles") about the corrupt and oppressive American "justice" system.

After release, the government immediately began plotting ways to remand Mr. Schulte. They discussed falsely claiming he violated bail by accessing the internet since this could not be disproved. However, they felt they needed a "double-whammy" attack to guarantee victory—so they contacted Loudoun County in Virginia and requested that they file criminal charges against Mr. Schulte. See Classified 18 U.S.C. § 3500 materials.

On October 20, 2017, Loudoun County detective David Orr of the CID Special Victims Unit informed the FBI that he had no crime to prosecute, but he would seek grand jury charges if requested. *Id.*

On December 6, 2017 the government executed their treacherous scheme; despite strict house incarceration, Mr. Schulte was arrested as a "fugitive" for allegedly sexually assaulting his girlfriend in Virginia two years before the current federal prosecution. The next day, the government requested revocation of Mr. Schulte's bail due to this arrest and new allegations that he accessed the internet. See Bail Revocation Request, Dkt. 21.

On December 14, 2017, Mr. Schulte consented to remand, without prejudice, so he could be extradited to Virginia to be arraigned on sexual assault charges the following week. However, immediately following remand, Virginia cancelled the arraignment scheduled for the next week on December 20, dropped its writ, and filed a detainer as the entire goal of these charades was to detain Mr. Schulte indefinitely. To this date Mr. Schulte has never been formally charged and arraigned. Hr'g Tr. 12/14/17, Dkt. 24; Order, Dkt. 22. Mr. Schulte was transferred to the Metropolitan Correctional Center (MCC) in Manhattan.

On January 8, 2018, Mr. Schulte argued for release. Mr. Schulte's counsel presented evidence that all internet connections corresponded to time(s) when Mr.

6

Schulte's roommate was present in the apartment (and ultimately using the laptop) and evidence that pretrial services consented to the roommate's use of the internet (and official September 28th request letter) on Mr. Schulte's behalf. Despite counsel's urging, the court did not consult with pretrial services, and instead, found, *ipse dixit*, that Mr. Schulte "violated the terms of the release conditions by engaging in having his roommate access the computers using very sophisticated methodology," The court also relied on the Virginia arrest to find that there was "clear danger," Hr'g Tr. 1/8/18, Dkt. 29; Order, Dkt. 26. The court failed to identify any specific threats that Mr. Schulte posed to the community nor was there any discussion of how to quell these unspecified threats according to the "least restrictive" measures. It was later discovered that the "very sophisticated methodology" allegedly employed, TOR (AKA the Dark Web), was never used; Special Agent Jeffrey David Donaldson simply fabricated this.

On March 6, 2018, the Second Circuit Court of Appeals affirmed Judge Crotty's revocation of bail without issuing an opinion. To this date, and for the past nearly five years, Mr. Schulte remains incarcerated as a pretrial detainee deemed a "danger to the community" for alleged unlawful speech—possession of child pornography.

Between January and March 2018, while incarcerated, Mr. Schulte was scammed out of hundreds of thousands of dollars, and lost his entire life savings.

On March 15, 2018, unable to pay his legal bills due to pending bankruptcy, Mr. Schulte's counsel, Jacob Kaplan of Brafman & Associates, P.C., withdrew. Mr. Schulte was assigned Sabrina Shroff of the Federal Defenders.

In March of 2018, Mr. Schulte wrote an attorney-client privileged document titled "Malware of the Mind" to summarize the charges against him in an attempt to bring his new attorney up-to-speed. The document was written as a narrative.

On April 20, 2018, Mr. Schulte's family and friends published the first seven unclassified "Schulte Articles" on Facebook under the pseudonym John Galt.

On May 15, 2018, FBI Special Agent Jeffrey David Donaldson subpoenaed Facebook for the "Schulte Articles" and submitted them for classification review.

### 3. First Superseding Indictment

On June 18, 2018, Mr. Schulte was superseded on the espionage and copyright infringement charges. Mr. Schulte was also indicted for allegedly lying to Agent Donaldson in the first March 14th interview—the interview that Agent Donaldson refused to record so he could falsely claim Mr. Schulte lied.

On June 28, 2018, Mr. Schulte submitted a *pro se* bail application that the CIA later claimed contained classified information.

On July 17, 2018, the United States Attorney's Office produced the "Schulte Articles" from the Facebook account in unclassified discovery as production #13 after the classification review determined they were *unclassified*.

In August 28, 2018, Mr. Schulte's former roommate's retained counsel consented to give the FBI the laptop he used while residing with Mr. Schulte when he was out on bail—under the strict condition that the FBI could not review emails to and from legal offices, including Mr. Schulte's former and current attorneys. Notwithstanding this condition, FBI Special Agent Jeffrey David Donaldson seized Mr. Schulte's March 20, 2017 email to his prior counsel, and sent it to the CIA for review, who claimed it contained previously released "classified information."

Due to the classified *pro se* bail application and the newly discovered classified attorney-client privileged email, FBI Special Agent Jeffrey David Donaldson recruited a jailhouse snitch named Carlos Luna Betance (76143-054) to spy upon Mr. Schulte and gather information. This jailhouse snitch used his illegal cellphone to take pictures and videos of other illegal cellphones allegedly used by Mr. Schulte. He eventually took 450 pictures and videos for Donaldson. Agent Donaldson took these documents to the CIA for classification review, who determined them all to be unclassified. See November 1, 2018 production #15.

On September 25, 2018 jailhouse snitch Betance was caught using his illegal cellphone by the MCC, and moved to the Special Housing Unit ("SHU") on the 9th floor of MCC pending disciplinary action.

On September 28, 2018 the government filed a *Brady* Letter explaining that almost every single "fact" Special Agent Jeffrey David Donaldson swore to in his initial March 13, 2017 search warrant was false. The government did not provide where Agent Donaldson supposedly found these "false facts", did not explain when they were found to be false, and did not explain how they believed an entirely fabricated search warrant could possibly be "good faith."

On October 1, 2018, Mr. Schulte was moved to the SHU, following an investigation into the use of contraband cellphones. No cell phones or contraband were ever discovered in Mr. Schulte's cell or in Mr. Schulte's possessions.

On October 2, 2018, FBI Special Agent Jeffrey David Donaldson committed outright perjury, fabricated evidence, falsified evidence, and perpetrated a fraud on the court when he filed an application for a search and seizure warrant to seize the "Schulte Articles" that were produced to Mr. Schulte by the United States Attorney's Office in *unclassified* discovery after Donaldson himself received them

9

from Facebook and knew that they were *unclassified*; Donaldson claimed the articles to be classified. Not knowing that he was authorizing a search warrant to seize legitimate unclassified discovery, Judge Crotty signed the fraudulent warrant that day. See *Motion to Suppress Evidence Seized from the MCC*, Dkt. 455.

During the illegal search, Agent Donaldson overstepped the bounds of the warrant by searching and seizing Mr. Schulte's legal notebooks and discovery located on the 9th floor of MCC despite the warrant's clear limitation of the 2nd and 7th floors and no stipulation to seize and search legal materials. Donaldson disregarded the clear markings for privilege, read the notebooks, opened envelopes marked as legal mail from the Federal Defenders Office, and opened and read folders designated as planned *pro se* motions. Agent Donaldson found "Malware of the Mind," and sent it to the CIA for classification review. The CIA claimed a paragraph contained classified information.

### 4. Second Superseding Indictment

On October 31, 2018, Mr. Schulte was superseded a second time for allegedly transmitting and "attempting" to transmit national defense information (NDI) from MCC. The basis for this new charge was the "attempted transmission" of (1) Malware of the Mind and (2) writings in privileged notebooks; neither of which were shared outside counsel, and (3) an email detailing the illegalities of the government's initial search warrant that briefly mentions Hickock, a term already disclosed by WikiLeaks which was provably unclassified during Mr. Schulte's time at the CIA. See Order dated February 4, 2020, Dkt 300 (Hickock user manual must maintain "Unclassified" markings as existed during Mr. Schulte's time at the CIA). These MCC Counts violate the First Amendment as they allege Mr. Schulte transmitted or "attempted" to transmit information that WikiLeaks already released years before, and which, were already in the public domain. Note that the new

10

charges were not based upon any of the fabricated evidence contained in the MCC Search warrant since the "Schulte Articles" were all unclassified. See pending interlocutory appeal 21-3118.

On November 1, 2018 the attorney general imposed Special Administrative Measures (SAMs) on Mr. Schulte, declaring him guilty of transmitting NDI from prison; he has been incarcerated in solitary confinement within a small concrete and steel box ever since—without any limit. Mr. Schulte's conditions of confinement are worse than conditions imposed upon death row inmates— conditions declared unconstitutional by district courts, courts of appeals, and even the Supreme Court.

The MCC then imposed arbitrary punishment that the SAMs did not authorize: they are locked in concrete and steel boxes the size of parking spaces with obstructed views of outside, the cages are filthy and infested with rodents, cockroaches and mold; there is no heating or air conditioning in the cages, there is no functioning plumbing, the lights burn brightly 24 hours per day, and the inmates are denied outside recreation, normal commissary, normal visitation, access to books and legal material (banned from the library), medical care, and dental care. All attorney-client privilege is also void to SAMs inmates as the prison confiscates, opens, and reads all legal mail; inmates are forbidden from transferring legal material to and from their attorneys. Mr. Schulte is not even offered minimal "amenities" that most prisons offer such as television, radio, or hot water. Instead, he is tortured in his cage, forced into "idleness," as his mind slowly deteriorates and insanity claws at him. There is no greater evil, no worse punishment that man can impose upon man.

On December 10, 2018, the government moved *ex parte* pursuant to Section 4 of the Classified Information Procedures Act, 18 U.S.C. App. 3 ("CIPA") for a protective order so that the government need not produce the digital forensic images of the alleged crime scene to the defense. Although the government alleged that Mr. Schulte "hacked" three CIA computers and servers to steal data from the CIA, gave their own forensic experts unfettered access to these forensic images, and relied heavily on these forensic images in their case-in-chief, the government refused to provide them to the defense for adversarial testing and independent analysis. Motions for access to this critical discovery were all denied (Mr. Schulte filed a writ of mandamus to obtain the discovery three years later; see 21-2558).

The government tried Mr. Schulte for espionage in a 10-count indictment in the Southern District of New York during the month of February 2020. Mr. Schulte moved for a mistrial after the government relied heavily and exclusively on the digital forensic images of the three primary servers it alleged to be the crime scene; Mr. Schulte's expert could not testify as he was unable to conduct his own independent analysis, the government experts could not be cross examined, the government's case could not be subject to adversarial testing, and Mr. Schulte was unable to present any defense at all.

On March 9, 2020, after a façade of a "trial", the majority of the jury voted to acquit, but no unanimous decision was reached therefore resulting in a hung jury and mistrial—except misdemeanor convictions for contempt of court (18 U.S.C. § 401(3)) and making false statements (18 U.S.C. § 1001). Mr. Schulte moved for sentencing and final judgment that was denied. See pending interlocutory appeal 21-2530.

Judge Crotty finally held a *Faretta* hearing on July 14, 2021, and granted Mr. Schulte's request to proceed *pro se* on July 26, 2021.

On October 18, 2021, Mr. Schulte's case was reassigned to district judge Jesse M. Furman.

On October 17-18, 2021, the Bureau of Prisons (BOP) moved Mr. Schulte from the MCC to the MDC in Brooklyn. The MDC created a SAMs control unit to house Mr. Schulte. Since then, the MDC began instituting arbitrary punishment in violation of the Fifth Amendment and cruel and unusual punishment in violation of the Eighth Amendment.

On November 9, 2021, Judge Crotty ruled that the government failed to prove at trial that information pertaining to Hickok was NDI, acquitting Mr. Schulte of the charged MCC conduct. See Fed. R. Crim. P. 29 Order, Dkt. 581 at 25. The government superseded Mr. Schulte and re-charged him with the acquitted conduct. Mr. Schulte moved to dismiss based on violation of the double jeopardy clause, but the district court denied the motion. The issue is pending interlocutory appeal. See 21-3116.

**B.    Administrative remedies at the MCC**

After the MCC imposed unconscionable, abhorrent, and clearly unconstitutional conditions of confinement upon Mr. Schulte in November of 2018, he sought administrative remedy through the Prisoner Litigation Reform Act (PLRA). Mr Schulte carefully tracked the progress of his administrative remedies, and kept all copies of his attempts. See copies of some of these administrative remedies on the docket in the criminal case, *United States v. Schulte*, 17-CR-548 (JMF) (S.D.N.Y.), Dkt. 447, Exhibits 447-1 through 447-16.

13

**C. Previous litigation attempts for relief at MCC**

After all administrative remedies were exhausted, he filed suit in civil court to compel the MCC to stop torturing him and other SAMs inmates. That civil suit was assigned to the presiding judge of his criminal case, Judge Paul A. Crotty. Judge Crotty blocked Mr. Schulte's civil suit without consideration of the merits. "On April 12, 2019, Pro Se Plaintiff Joshua Schulte filed a Complaint for Violation of Civil Rights… Subsequently, Plaintiff filed a joint Petition to End Torture and Inhumane Conditions (as an Addendum to the Petition for Writ of Habeas Corpus)… These petitions 'seek[] an end to torture and inhumane conditions wrought by defendants' and 'damages as part of civil rights litigation… based on clear evidence of torture.'" *Joshua Adam Schulte v. Attorney General of the United States, et al.*, 19 Civ. 3346 (PAC), Dismissal Order, August 14, 2019, Dkt. 11. Judge Crotty ruled that Mr. Schulte's civil rights law suit "shall be administratively closed, with leave to reopen following resolution of the underlying criminal proceedings against Plaintiff." *Id.*

After an unsuccessful appeal of Judge Crotty's unconscionable decision refusing to hear the merits of Mr. Schulte's arguments, #19-2940, Mr. Schulte filed the same motion in the criminal district court as a petition for writ of habeas corpus to modify conditions of confinement on January 19, 2021, Dkt. 447. The government responded on January 27, 2021, Dkt. 450, claiming that criminal defendants cannot seek habeas corpus petitions to modify conditions of confinement in the criminal court, but must file separate civil actions. Judge Crotty agreed and denied the petition on February 9, 2021, Dkt. 453. However, due to the MCC delaying all court correspondence and legal mail by 30-60 days, Mr. Schulte did not receive the government's response until a month after Judge Crotty's ruling.

14

Mr. Schulte therefore filed a Motion for Reconsideration of the habeas petition on March 4, 2021, Dkt. 456, based entirely on the fact that he did not receive the government's response and therefore did not have an opportunity to file a reply. The government did not file a response until September 3, 2021; 5 months, 4 weeks, and 2 days, or 182 total days later. Thus, their opposition was 168 days late. Mr. Schulte moved to preclude the government from filing an opposition multiple times before September 3, 2021, to which the judge never responded.

Judge Crotty did not even read Mr. Schulte's motion or his reply, but ruled on October 6, 2021, Dkt. 526, that Mr. Schulte's motion for reconsideration was time-barred. He did not enforce Local Rule 49.1(b), and allowed the government 6 months to delay the case and file a response. While Judge Crotty did find that the ongoing mail delay excused the untimely filing, he nonetheless did not actually excuse the untimely filing as he did not consider it a reply motion due to Mr. Schulte's failure to receive the government's opposition for over a month, but rather, considered it a reconsideration motion that he denied for failing to reach the high bar required of reconsideration motions.

Mr. Schulte then filed civil cases for each issue, see, e.g. *Schulte v. United States*, 21-4042, 21-4800, 21-5061, 21-5168, 21-5173, 21-5213, 21-5313, 21-5554, 21-5722, 21-5851, 21-5871, 21-6504. Each case was assigned to District Judge Paul A. Crotty (S.D.N.Y.), who deliberately halted progression by refusing to rule on the motion to proceed *in forma pauperis*. After about four months, the MCC was shut down, Mr. Schulte moved to MDC, and all his civil cases for MCC injunctive relief were mooted.

15

**D.** **BOP's use of antiquated system to deter administrative remedies**

While presumed guilty and awaiting trial for the past five years, Mr. Schulte realized that the BOP utilizes an antiquated administrative remedy process solely to obstruct legitimate grievances. While the BOP offers inmates electronic access via TRULINCS to a law library, printer, account transactions, email with the outside world, and even messaging with staff, it forces inmates to fill out BP-9/10/11s using carbon-copy "technology" that was last updated in April of 1982 (the date on the form)—which is literally before Mr. Schulte was born. There is already a system in place for filing informal resolutions electronically—that sends emails to staff and properly records the conversations and content as required by law.

Additionally, the BOP uses its "Sentry" electronic system to handle administrative remedies internally. Literally, the BOP enters BP-9s, 10s, and 11s into an electronic system when they receive the forms. They then use this system to track and respond to the administrative remedies. In essence, the BOP uses technology to assist it in processing and denying administrative remedies, but forces the inmates to use antiquated technology to initially file and mail the forms. Forcing antiquated, passé technology on inmates introduces numerous bureaucratic loopholes and technicalities that the BOP wields to deny legitimate remedies without good faith review of the underlying petitions.

One of the aforementioned civil suits against the Bureau of Prisons seeks an injunction to compel them to integrate their administrative remedy system with both TRULINCS and SENTRY, which would take a high school computer science student about two hours. See *Schulte v. BOP*, 21-CV-5313.

### E.    MDC's perjury and fraud upon the criminal court

In Mr. Schulte's criminal case, the Bureau of Prisons filed a fraudulent declaration under penalty of perjury. On March 8, 2022, Unit Manager Bullock and officer Nedgine Santana met with Mr. Schulte to discuss his inability to print or transfer documents from his laptop. After the discussion, they acknowledged that the BOP did not provide any such utilities, and told him they would alert the government. The next day, the government filed a letter in the criminal court, *United States v. Schulte*, 17 Cr. 548 (JMF, S.D.N.Y.), Dkt. 732, in which they attach a signed declaration by Nedgine Santana; she declared under penalty of perjury the exact opposite from the day before—that she spoke with Mr. Schulte about access to the Public Messaging Service option via TRULINCS, and that Mr. Schulte could write, edit, and print documents for the courts. She also claimed that "Schulte confirmed he understood the options related to him." *Id.* at 2.

Mr. Schulte then wrote to the Court to alert it to Nedgine Santana's perjury and fraud upon the Court. Dkt. 736. Indeed, Mr. Schulte never had access to the Public Messaging Service, and never confirmed to Nedgine Santana that he could even use that service much less that it would be sufficient for his needs. Mr. Schulte notified the Court that the officers probably forgot that the entire unit was subject to audio recording—and he demanded the Court and government review the audio and file charges against Nedgine Santana. The Court ordered the government to respond, Dkt. 738. The government requested an extension of time, Dkt. 740. The government finally replied on March 18, 2022, acknowledging that Mr. Schulte was correct. Dkt. 747. Nedgine Santana and the MDC blatantly and deliberately perpetuated a fraud on the court. This Court should consider any declaration from the MDC with a grain of salt.

## IV. ALL AVAILABLE ADMINISTRATIVE REMEDIES EXHAUSTED

The government incorrectly claims administrative remedies were not exhausted. Opp. at 10. In reality, Mr. Schulte attempted to exhaust administrative remedies no less than four different times over the past 6 months (20 remedies the first, 21 remedies in the second and third, and 18 in the fourth attempt for a total of 80 administrative remedies relevant to this petition). Each time, the MDC only allowed a few administrative remedies to progress to the next stage—ultimately refusing to provide the BP-9, BP-10, and BP-11 forms that are kept securely under lock-and-key. Thus the government's assertions that "[Petitioner] failed to exhaust administrative remedies" because he failed to proceed to the next step, *Id.*, is without merit. Mr. Schulte did not progress to the next step *because the MDC refused to provide the forms*, not because he gave up. Indeed, Mr. Schulte previously proceeded to BP-11s when he was at the MCC, and fully expected the MDC to deny his administrative remedies without consideration of their merits.

### A. Exhaustion of administrative remedies at the MDC (20)

Mr. Schulte was moved from MCC to MDC Sunday night, October 17, 2021. Between the following day, October 18, 2021, to his move to the SAMs Unit on October 26, 2021, Mr. Schulte initiated the administrative remedy process for each and every issue in the instant complaint through "informal" BP-8s (except the sound generator which did not yet exist).

Assistant Warden Plourde, who held a similar position at the MCC, informed Mr. Schulte that he could not file administrative remedies at MDC for the same issues at MCC. He told Mr. Schulte that his administrative remedies were already denied, and the answer at MDC would be the same—no. Mr. Schulte told Plourde that this was not correct, because his previous civil suit was now moot and he could not file a new civil suit against the MDC until he again exhausted

18

administrative remedies. Plourde then proceeded to tear up and trash a majority of Mr. Schulte's BP-8s (Much later Mr. Schulte received copies of the 5 BP-8s that survived AW Plourde's culling, exhibited here as A-1 through A-5, of which the MDC never responded).

On November 9, 2021, Mr. Schulte inquired into the status of his BP-8s, to which Unit Team informed him he did not have any BP-8s undergoing review. Considering this notification of denial, Mr. Schulte requested 20 BP-9s, but the MDC only provided 5; since the MDC refused to provide BP-9s for the remaining 15 issues, all of them must therefore be considered exhausted. Mr. Schulte then filed the 5 BP-9s corresponding to the 5 BP-8s he believed survived Plourde's culling; Mr. Schulte noted on the BP-9s that the institution did not respond to the BP-8, and therefore, Mr. Schulte was proceeding with the BP-9 in accordance with the BOP Federal Regulations. 28 C.F.R. § 542.18. The MDC denied all 5 on November 10, 2021, claiming that Mr. Schulte "did not attempt informal resolution" (It is common practice for the BOP to ignore the time constraints identified in 28 C.F.R. § 542.18). See Ex. B-1 through B-5. The MDC refused to provide BP-10s since the 9s claimed there were no 8s ever filed, thereby exhausting all available administrative remedies.

On November 29, 2021, the MDC "found" 5 of the original BP-8s and agreed to provide Mr. Schulte with corresponding BP-9s. Four of these BP-9s were those Mr. Schulte believed survived Plourde's culling, but the fifth was different (The "blocked out windows" survived, A-5, whereas the starvation did not, B-5). Mr. Schulte then filed the BP-9s with the accompanying BP-8 that was never answered (copies of Ex. A). The MDC did not respond to the BP-9s.

On January 21, 2022, after giving the MDC an additional 30 days to respond, Mr. Schulte requested and received copies of these delinquent BP-9s from unit team, exhibited here as C-1 through C-5.

On January 25, 2022 The MDC agreed to provide him with 5 BP-10s for the delinquent BP-9s, which Mr. Schulte promptly filed.

On February 11, 2022, the BP-10s were all denied as the regional office confused the 5 delinquent BP-9s with the 5—completely different—rejected BP-9s from November 10, 2021 (the content of four were similar, but the dates should have clearly alerted the regional office that they were newly filed). See exhibits D-1 through D-5. The MDC refused to provide BP-11s (D-1 was returned in March).

Accordingly, Mr. Schulte attempted and exhausted all available administrative remedies.

## B.    Additional Exhaustion attempts and additional claim

The MDC later installed sound generators to further torture SAMs inmates, prompting Mr. Schulte to file an additional administrative remedy for this abuse. However, Mr. Schulte went above-and-beyond what was required of him by re-filing all former administrative remedies as well. Mr. Schulte simply had nothing better to do than file administrative remedies, and sought to provide additional documentation in his aforementioned civil suit to compel the BOP to update its administrative remedy system.

### 1.    Second Attempt: 21 administrative remedies

In November 2021, the MDC installed sound generators to further torture SAMs inmates with constant, loud blasts of sound. Mr. Schulte filed no less than 21 BP-8s for all the issues included in the complaint, including the new torture sound generators. The MDC did not respond to a single BP-8.

On January 28, 2021, the MDC provided Mr. Schulte with 5 BP-9s for the 21 delinquent BP-8s; since the MDC refused to provide BP-9s for the remaining 16 issues, all of them must therefore be considered exhausted *a second time*. Mr. Schulte noted on the BP-9s that, once again, the MDC failed to respond to his BP-8. The MDC only responded to 2 on January 21, 2021, once again claiming there was no BP-8. See Ex. E. The MDC refused to provide BP-10s, thereby exhausting all available administrative remedies for a second time.

### 2. Third attempt: 21 administrative remedies

Although Mr. Schulte exhausted administrative remedies, he went above-and-beyond with a *third* attempt. On February 2, 2022, he once again filed 21 BP-8s corresponding to the issues addressed in the complaint. This time Mr. Schulte requested a photocopy or a receipt that he filed these BP-8s, ***but unit team refused.*** Once again, the MDC did not respond to the BP-8s, but this time did not permit Mr. Schulte any BP-9s. Thus, all remedies were exhausted for a third time.

### 3. Fourth attempt: 18 administrative remedies

Although Mr. Schulte exhausted administrative remedies, he went above-and-beyond with a *fourth* attempt. Following the third attempt, Mr. Schulte filed a BP-8 every week requesting a copy of his 2/2/22 BP-8s. The MDC never responded to these BP-8s, but Unit Manager Bullock finally informed Mr. Schulte that the previous BP-8s were "lost," and that he should re-file all of them. Thus, Mr. Schulte re-filed all BP-8s (this time compacting the plumbing issues into a single BP-8 thereby only filing 18 instead of 21) on March 17, 2022. The MDC denied them on March 24, 2022. However, the MDC only provided Mr. Schulte with 10 BP-9s. The MDC has yet to respond to the BP-9s, but Mr. Schulte maintains copies of the remaining BP-8s that cannot progress to the next step since the MDC refuses to provide the BP-9s. See Ex F (also includes other remedies).

## C. Exhaustion of all available administrative remedies

Mr. Schulte exhausted all available administrative remedies. While the BOP federal regulations dictate "informal" BP-8s, prison BP-9s, regional BP-10s, and central office BP-11s (see, e.g. 28 C.F.R. § 542.10), the MDC simply refused to comply with its own system and provide responses in a timely manner as required by 28 C.F.R. § 542.18 or provide the requested forms at all (Mr. Schulte receives an infinite number of BP-8s from outside individuals who can print the form for him, but the BP-9s, 10s, and 11s are special forms utilizing the "carbon copy technology" that cannot be printed and sent to him outside the BOP). Accordingly, all *available* administrative remedies were exhausted. Inmates are exempt from the exhaustion requirement when administrative remedies are "unavailable." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when (1) it "operates as a simple dead end--with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. See Ex. G for copies of additional administrative remedies that the MDC thwarted from progressing by refusing to provide the next remedy form.

## V.  THE COURT SHOULD GRANT THE HABEAS PETITION

### A.  Applicable standard

As an initial matter, Mr. Schulte's status as a pretrial detainee or convicted criminal may be relevant to the petition, as different legal standards apply to each status. See generally *Benjamin v. Fraser*, 264 F.3d 175, 188-191 (2d Cir. 2001) (holding that more stringent "atypical and significant hardship" standard described by the Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995), does not apply to pretrial detainees).

The government considers Mr. Schulte a convicted inmate instead of a pretrial detainee. Mr. Schulte disagrees with this assessment, and notes that neither the Supreme Court nor the Second Circuit has addressed which standard applies to an inmate who has been convicted but not yet sentenced. See *Iqbal v. Hasty*, 490 F.3d 143, 162 n.8 (2d Cir. 2007) ("We do not consider the question of whether convicted, but unsentenced, inmates are pretrial detainees under the Supreme Court's jurisprudence establishing criteria for evaluating constitutional limits on conditions of confinement."), *overruled on other grounds. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

There may not be an absolute answer to this question, but Mr. Schulte's unique circumstances strongly suggest the pretrial detainee status should apply. Mr. Schulte was partially convicted for contempt of court and making false statements, but remains pending re-trial. Mr. Schulte specifically moved for sentencing, but the district court refused; Mr. Schulte has therefore been in the limbo state of "convicted but not yet sentenced" for over two years. See pending interlocutory appeal of the district court's refusal to schedule sentencing, *United States v. Schulte*, 21-2530. Accordingly, since the district court refuses to enter a

final judgment on the case and allow him to appeal his convictions, this Court should consider Mr. Schulte a pretrial detainee with additional protections.

Moreover, Mr. Schulte notes that he cannot be sentenced for more than time served based on his convictions; contempt of court is a misdemeanor capped at 6 months and making false statements is capped at 5 years. Mr. Schulte was arrested and presumed guilty on August 24, 2017. Based on sentencing calculations, Mr. Schulte has already served the maximum time any court could impose—not to mention the sentencing guidelines for a Category I offender dictate 0-6 months.

Next, and perhaps most importantly, the primary cause of this habeas petition, SAMs, were implemented due to the pending bogus charges for "attempting" to disseminate NDI from MCC by writing information publicly released by WikiLeaks in attorney-client privileged notebooks over a year after the material was released on the internet and discussed by every major media outlet. **Thus, Mr. Schulte's conditions related to SAMs are predicated on pending counts to which he is presumed innocent, requiring the Court to rely upon the pretrial standard.**

Additionally, Mr. Schulte is a pretrial detainee awaiting trial. Even if he is partially convicted, his conditions should equal conditions imposed by other pretrial detainees since he needs to prepare for trial. Mr. Schulte is also representing himself in his criminal case, further necessitating pretrial conditions so he can focus on trial without imposition of punishment.

Finally, regardless of Mr. Schulte's status, the government cannot arbitrarily torture inmates simply because it accuses them of crimes against the government. Thus, Mr. Schulte's major complaint involves arbitrary punishment in violation of the Due Process Clause of the Fifth Amendment.

Accordingly the applicable standard is *Bell v. Wolfish*, 441 U.S. 520 (1979); In *Wolfish*, the Supreme Court held that since a pre-trial detainee has not been convicted, the Due Process Clause does not permit prison officials to subject him to "punishment." *Id.* at 537, n. 16. In considering whether prison officials subject a prisoner to punishment:

> *A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of pre-trial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment". Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees.*

*Id.* at 538-39. Conditions of confinement that are imposed arbitrarily without any legitimate governmental objective violate substantive due process guaranteed by the Fifth Amendment.

## B.   Unconstitutional conditions of confinement

The government largely blames the confinement conditions on SAMs. Opp. at 1 ("Petitioner challenges the conditions of his confinement at MDC Brooklyn, which are largely the result of the SAMs placed on him by the Attorney General"); however the SAMs do not authorize these conditions of confinement—the SAMs do not charge the BOP to install *BRIGHT* 24/7 lights in the torture cages and engage in sleep deprivation; the SAMs do not charge the BOP to starve detainees;

25

the SAMs do not charge the BOP to operate a sound generator to blast loud sounds 24/7 until detainees commit suicide; the SAMs do not charge the BOP to blast freezing cold air throughout the winter; the SAMs do not charge the BOP with 24/7 surveillance inside the torture cages; the SAMs do not charge the BOP to reduce inmate phone minutes by 90%; the SAMs do not charge the BOP to deny SAMs inmates access to the regular institution's library without an alternative. These are decisions that the BOP and the MDC made to torment and torture SAMs inmates.

Next the government asserts that the relief sought here was previously rejected by his criminal court. *Id.* ("Petitioner now seeks a second bite at the proverbial apple in the Eastern District of New York"). This is incorrect. Mr. Schulte previously filed two motions related to the relief requested here. The first was a motion to vacate SAMs as facially unconstitutional on June 24, 2021, Dkt. 474. That motion was denied on October 6, 2021, Dkt. 527. Mr. Schulte subsequently filed an interlocutory appeal, and that issue is pending before the Second Circuit. 21-2877. The SAMs issue solely challenged the Attorney General's imposition of SAMs, particularly on pretrial detainees—it did not challenge the conditions of confinement contained herein, as they are not even remotely related to SAMs. Instead, Mr. Schulte challenged those unconstitutional conditions of confinement on November 13, 2021, Dkt 590. The district court denied that motion at the December 20, 2021 pretrial conference, claiming that he did not have jurisdiction to consider the petition since Mr. Schulte was confined in the Eastern District of New York while he presided in the Southern District; he directed Mr. Schulte to file a petition in the Eastern District. See 12/20/21 Tr. 58-59. Accordingly, Mr. Schulte filed the instant petition—which does not challenge his SAMs designation, but the torture imposed by the MDC.

The SAMs imposed upon Mr. Schulte, while undeniably facially unconstitutional (21-2877), are allegedly instituted to protect the national security of the United States and merely direct the BOP to segregate Mr. Schulte from other inmates. So, aside from this SAMs directive, <u>he should be treated like every other general population inmate</u>. Thus, any special conditions of confinement must relate to the SAMs goal—the national security interests of the United States; however, the conditions that the BOP imposes are not reasonably related to this goal or any other legitimate penological interest. Indeed, Mr. Schulte is tortured worse than Guantanamo Bay detainees or any sentenced inmate in the Western Hemisphere; the Court should order the torment ceased immediately, and the relief requested herein which is identical to the treatment of general population inmates at MDC.

1. **Torture imposed that directly impacts the criminal case**

The government barely addresses these barbaric tortures on essentially a single page, Opp. at 14-15; the government merely restates former Unit Manager Reid's declaration provided in Mr. Schulte's criminal case. Mr. Schulte notes that the MDC previously committed perjury and perpetrated a fraud on the court. Reid's declaration is likewise misleading and erroneous—the Court cannot simply rely upon the MDC's self-serving declaration. The torture it imposes upon Mr. Schulte is indefensible.

a) ***Sleep Deprivation***

(1) 24/7 bright lights imposed arbitrarily

The government does not even respond to Mr. Schulte's allegations that the 24/7 torture lights are imposed arbitrarily to SAMs inmates; there are no such lights in general population. The government also does not respond to the fact that MCC Warden Licon-Vitale found the imposition of these torture lights as

27

reprehensible, and removed them at MCC. Accordingly, the imposition of the 24/7 torture lights, violates the Due Process Clause of the Fifth Amendment. Why does the MDC single out and torture Mr. Schulte? Moreover, the government's characterization of the arbitrary light as a "dim, smaller low wattage bulb" is absolutely false. These torture lights would provide sufficient lighting for the entire torture cage.

The imposition of constant, bright torture lights is arbitrary in violation of the Due Process Clause of the Fifth Amendment, cruel and unusual punishment in violation of the Eighth Amendment because they cause sleep deprivation, and not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, this Court should order the MDC to remove the torture lights forthwith.

(2)     Constant banging all night long

The government does not even respond to Mr. Schulte's allegations that the MDC night officers perform extra rounds and bang on the cage windows when they slam the window-door. How can anyone possibly sleep when someone bangs on your door right outside your bed every 15 minutes?

The MCC solved this problem by installing cheap rubber padding and requiring officers perform regular checks equal to general population. The MDC refuses to do these minimal requests.

The Court should order the MDC to set regular nightly round schedules *equal with general population*, and to install rubber padding on the cage's door's window-lid *as existed at MCC* to prevent loud banging throughout the night.

*b)     Starvation*

The MDC does not respond to Mr. Schulte's allegations except to simply claim they are false. Opp. at 15 ("Petitioner also receives three meals a day"). Mr.

28

Schulte specified multiple dates where he did not receive three meals a day—a non-exhaustive subset. The MDC could review their 24/7 recorded video and verify Mr. Schulte's claims (Mr. Schulte intends to file a civil rights law suit pursuant to the FTCA and *Bivens* claims for starving him).

Moreover, the MDC starves Mr. Schulte and all SAMs inmates by providing only 25% of the food it offers to general population. The MDC fills food in a small black tray that holds 25% volume of the large blue trays provided to general population (Mr. Schulte was previously detained in general population at MDC and remember the trays, the MDC made a mistake and served him a blue tray once, and MDC officers confirmed that only SAMs inmates receive the tiny black trays).

The government's starvation of Mr. Schulte is arbitrary in violation of the Due Process Clause of the Fifth Amendment, cruel and unusual punishment in violation of the Eighth Amendment, and not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, this Court should order the MDC to feed Mr. Schulte three times per day like general population and at the same times they feed general population, which is 7AM, 11AM, and 5PM. The Court should also order the MDC to provide the same exact food served general population in the same exact trays and the exact same amount. The Court should also order the MDC to provide two trays, or double portions, as was provided at MCC since general population has the opportunity to obtain seconds. This Court should also order the MDC to record the date and time when they feed for review to ensure compliance.

Finally, even when they do feed, most often they mix up the meals and people still cannot eat—there are several different types of meals depending upon religion, allergies, etc. (regular, no flesh, hallal, kosher, common fare, etc.) MCC marked each meal to differentiate them. MDC does not. They just hand out random

meals to people as they feed. Mr. Schulte filed 22 administrative remedies complaining about receiving the wrong meal and requesting MDC to simply mark the food as they did at MCC to ensure everyone receives the right meal. MDC refuses to do so. Thus, here we are in federal court; Mr. Schulte asks the Court to order the MDC to mark the meals corresponding to the appropriate meal plan to ensure everyone receives the correct food—and can eat.

### c) *Exposure to the extreme cold*

Once again, the MDC simply denies Mr. Schulte's allegations, claiming the temperature is "*targeted* to be set at 76 degrees." Opp. at 15 (emphasis added). Then why does the vent blast cold air 24/7 forcing Mr. Schulte to wear three set of shirts, three sets of pants, sweats, and several blankets while he continues to shiver? The MDC provided heat for maybe a few days the entire winter—the rest of the time was freezing cold. Even now, Mr. Schulte must still wear multiple sets of thermals and sweats just to be comfortable. The average temperature in his torture cage in the winter was around 45 degrees. As Mr. Schulte noted on several administrative remedies, the temperature is just fine in the law library and on the unit (for staff)—it is only freezing in the torture cages.

The government's compulsory exposure of Mr. Schulte to the extreme cold is arbitrary in violation of the Due Process Clause of the Fifth Amendment, cruel and unusual punishment in violation of the Eighth Amendment, and not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, this Court should order the MDC to heat the torture cages and install thermometers that record the temperature electronically, which can be retrieved and reviewed by the Court to ensure compliance.

#### d) *Constant sound played through speakers*

Tellingly, the government does not even attempt to defend its installation of sound generators to blast loud sounds 24/7 to drive SAMs inmates insane. This is beyond barbaric and indefensible.

The government's installation of 24/7 torture sound generators is arbitrary in violation of the Due Process Clause of the Fifth Amendment, cruel and unusual punishment in violation of the Eighth Amendment, and not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, this Court should order the MDC to immediately disable and remove the torture sound generators.

### 2. Other arbitrary punishment imposed that directly impacts the case

Contrary to the government's assertions, Mr. Schulte does not claim these conditions violate the Eighth Amendment. Instead, they violate the Fifth Amendment because they are arbitrarily imposed upon Mr. Schulte and the four other SAMs inmates. Mr. Schulte should be treated no differently from general population inmates—the government cannot arbitrarily punish Mr. Schulte simply because it accuses him (falsely) of crimes against the government itself (for which he is still presumed innocent).

#### a) *MDC permits only one hour of law library and discovery access per day*

The government's restriction of law library and discovery review is arbitrary in violation of the Due Process Clause of the Fifth Amendment, violates Mr. Schulte's Sixth Amendment right to a complete defense, and is not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, this Court should order the

31

MDC to provide access to the electronic law library on Mr. Schulte's laptop as well as power outlets for his discovery drives in his torture cage.

### b) MDC removed light switches from the cells so the lights cannot be toggled

The government's removal of light switches that are normally accessible by general population inmates within their cells is arbitrary in violation of the Due Process Clause of the Fifth Amendment, and is not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, this Court should order the MDC to return the light switches to the SAMs torture cages forthwith.

### c) The MDC replaced comfortable chairs with a short concrete "stool"

This is not merely an "uncomfortable concrete stool," but it is dysfunctional because it is too short to reach the adjacent desk.

Mr. Schulte spends much of his day writing administrative remedies, motions, letters, and preparing for trial. Since he no longer has a desk or chair to sit, he must sit on the hard concrete floor. This is completely absurd—both MCC and general population provide chairs (with backs) to sit on.

The government's removal of cheap, plastic chairs that are normally accessible by general population inmates within their cells is arbitrary in violation of the Due Process Clause of the Fifth Amendment, and is not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, this Court should order the MDC to provide SAMs inmates with the same plastic chair provided to general population.

### d) The MDC installed two 24/7 cameras equipped with night vision

The government's installation of two 24/7 cameras equipped with night vision, which are not installed in general population cells, is arbitrary in violation of the Due Process Clause of the Fifth Amendment, violates Mr. Schulte's Sixth Amendment right to a complete defense, violates Mr. Schulte's Fourth Amendment right to be free from unreasonable searches, violates Mr. Schulte's Ninth Amendment right to privacy, and is not reasonably related to Mr. Schulte's SAMs for NDI. No other pretrial detainees are subjected to this type of monitoring nor has any court ever declared such a thing Constitutional. Accordingly, the Court should order the MDC to remove all cameras and cease and desist all audio and video recording within the SAMs concentration camp immediately.

### e) The MDC imposes commissary restrictions

The MDC bans the following items from Mr. Schulte due to threats to the national security of the United States of America (See Ex. H-1 for the K-84 restricted commissary list and H-2 for the general population commissary list; note that the general population list is an incomplete scan):

#### (1) Stamps

- First Class Global Stamp

#### (2) Food / Condiments / Meals

- Jalapeno Wheels
- Nutella Hazelnut Spread
- Tuna in Thai Chili Sauce
- Jalapeno Squeeze Cheese
- Sazon Seasoning

33

- Chicken Stock Cubes
- Mrs Dash (sale free)
- Baby Rays BBQ sauce
- Garlic Powder
- Curry Powder
- Cinnamon Powder
- Peanut Butter & Jelly
- Soy Sauce
- Breakfast Nutritional Drink
- Parmesan Cheese
- Cheez It Crackers
- Honey Oatscooters

(3) Sundries / Miscellaneous

- AAA Batteries 4/PK **[*NOTE: BY DENYING ACCESS TO BATTERIES, SAMs INMATES CANNOT LISTEN TO A RADIO]**
- Eadbuds
- Radio w/ headphones
- Nike Sneakers
- New Balance Sneakers
- Casio Digital Watch
- Sandisk MP3 Player
- Cover for MP3 Player
- ML100 Typewriter Ribbon
- EM100 Typewriter Ribbon

- Correction Ribbon
- Combination Lock
- Reading Lights
- Address Book
- Photo Album
- Reading Glasses

(4)    Copy Card / Misc Items

- Copy Card [ 50 copies ]
- BIC Ben, Blue 2/PK

(5)    Drinks

- Purple Smash Sugar Free Mix
- Orange Ocean Sugar Free Mix
- Peach Ice Tea Mix
- Green Apple Sugar Free Mix

(6)    Snacks / Candy / Rice / Soups

- Crunch & Munch
- French Vanilla Granola
- Coconut Oats Granola
- Chocolate Covered Pretzels
- Chips Ahoy
- Chocolate Crème Cookies
- Honey Bun
- Sunflower Kernels
- Cajun Hot Snacks
- Peanut Butter Cups

- Hershey's Bar 6/PK
- Tootise Pop Drops
- Combos Cheddar Pretzel
- Macaroni & Cheese
- Mild Pepper Mix Jar
- L/S chicken Soup / Hot Chili Soup
- Shrimp Soup / L/S Texas Beef Soup
- Oriental Style Chicken Soup
- Bone in Chicken Meal
- Rib Steak Meal
- Beef Cholent Meal

(7) Clothing Items

- Sweatshirt
- Sweatpants
- T-Shirt
- Thermal Top
- Boxer Briefs
- Thermal Pant
- Shorts
- White Socks
- Bath Towel / Washcloth Set

(8) Health / Hygiene / Sundry

- Shower Clogs
- Mouthwash
- Toothpick/Floss

36

- Ambi Fade Cream
- Denture Cleaner Powder
- Effergrip
- Next 1 Soap
- Neutrogena Soap
- Roll-On Deodorant
- Hot/Cold Mug
- Tone Cocoa Butter Lotion
- Vaseline Skin Lotion
- Rose Toilet Paper
- Soap Dish
- Shampoo
- Plastic Bowl w/ Lid
- Styling Gel
- Gilletter Razor, 3 PK
- Shaving Cream
- Noxema
- Toenail Clipper
- African Pride
- Fingernail Clipper
- Murray's Pomade
- Hair Brush
- Pink Oil Moisturizer
- Wave Cap
- Pony Tail Bands
- Sudoku Puzzle Book

- Words Find Puzzle Book
- Crossword Puzzle Book
- Wireless Notebook
- Laundry Bag
- Magic Shave
- Toiletry Bag
- Dawn Dish Soap
- Mirror
- Laundry Detergent
- Phase 10 Card Game

### (9) OTC Medications

- Oral Pain Relief Gel
- Sulphur 8 Shampoo
- Tucks Medicated Pads
- Hemorrhoid Cream
- Omeprazole (Acid Reducer)
- Clearsil Cream
- Nasil Spray
- Fiber Cabs
- Greaseless Ben Gay
- Food Powder

### (10) Religious Items

- Rosary Beads
- Arabian Sandalwood Prayer Oil
- Egyptian Musk Prayer Oil

- Star of David w/ Chain
- Hijab
- Rafstafarian Crown
- Native American Headband
- Yarmulke

The government's imposition of commissary restrictions that are normally only imposed due to prison infractions as a form of punishment is arbitrary in violation of the Due Process Clause of the Fifth Amendment, and is not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, this Court should order the MDC to provide SAMs inmates with equal commissary as general population, shopped at the same frequency.

### f) *The MDC arbitrarily imposes solitary confinement*

The MDC could easily create a control group and segregate SAMs inmates from general population; there is absolutely no reason that the SAMs inmates cannot co-exist in their own unit, as the BOP does for other control groups. The government's imposition of indefinite solitary confinement is arbitrary in violation of the Due Process Clause of the Fifth Amendment, cruel and unusual punishment in violation of the Eighth Amendment, and is an extreme reaction to Mr. Schulte's SAMs for NDI. Accordingly, this Court should order the MDC to cease its imposition of solitary confinement for all pretrial SAMs detainees, and order it to operate a segregated full housing unit, where the inmates have full access to the entire unit.

3. **Arbitrary denial of any and all entertainment as a form of punishment**

   a) *The MDC does not provide televisions in the cells; all other sentenced control units in the BOP are given televisions*

All control groups including sentenced SAMs inmates at the ADX have televisions. The only individuals in the entire BOP without access to television are those temporarily punished for violations of prison rules and pretrial SAMs inmates. This is absurd, especially considering the scientific literature highlighting the vast permanent health effects of indefinite solitary confinement. If anyone needs access to a television, it is those detained indefinitely in solitary confinement.

The government's refusal to provide SAMs inmates with televisions in their torture cages for equivalent television viewing as provided to all other general population inmates is arbitrary in violation of the Due Process Clause of the Fifth Amendment, cruel and unusual punishment in violation of the Eighth Amendment since the prison does not provide any relief from indefinite solitary, and is not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, the Court should order the MDC to provide SAMs inmates with televisions in their torture cages.

   b) *The MDC bans all SAMs inmates from its library*

The government's ban of SAMs inmates from accessing the institution's library while simultaneously refusing any alternative is arbitrary in violation of the Due Process Clause of the Fifth Amendment, cruel and unusual punishment in violation of the Eighth Amendment since the prison does not provide any relief from indefinite solitary, and is not reasonably related to Mr. Schulte's SAMs for

NDI. Accordingly, the Court should order the MDC to provide SAMs inmates with access to the institution's library or an equivalent thereof.

### c)  *The MDC arbitrarily restricts social call minutes*

The government's 90% decrease of SAMs social calls is arbitrary in violation of the Due Process Clause of the Fifth Amendment and is not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, the Court should order the MDC to provide SAMs inmates with the same number of social calls as general population.

### d)  *The MDC arbitrarily restricts social visits*

The government's social visit restrictions are arbitrary in violation of the Due Process Clause of the Fifth Amendment and not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, the Court should order the MDC to provide SAMs inmates with equal social visits as general population.

### e)  *The MDC removed the basketball goal from the recreation yard*

The government's removal of the basketball goal and all balls from the SAMs recreation yard is arbitrary in violation of the Due Process Clause of the Fifth Amendment and not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, the Court should order the MDC to return the basketball goal, balls, and ensure the SAMs recreation yard is equal to those provided to general population.

### f)  *The MDC arbitrarily shackles Mr. Schulte for all movement*

The government claims that "the use of restraints to move inmates from place to place has frequently been found to be an acceptable measure for those who

pose security risks." Opp. at 17. However, the cited cases all reference those accused of violence. Mr. Schulte is accused of unlawful speech—he has never harmed anyone. There is simply no reason to shackle Mr. Schulte as if he were Hannibal Lector.

The government's imposition of shackles where none are required for those in general population is arbitrary in violation of the Due Process Clause of the Fifth Amendment and not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, the Court should order the MDC to move Mr. Schulte without shackles or any restraints.

### 4. Petty torments imposed arbitrarily

The government's renovation of K-84 to remove normal appliances and block the windows is arbitrary in violation of the Due Process Clause of the Fifth Amendment and not reasonably related to Mr. Schulte's SAMs for NDI. Accordingly, the Court should order the MDC to revert K-84's appliances and windows back to those typically used throughout general population.

# VI. CONCLUSION

For the foregoing reasons, the Court should grant the petition for writ of habeas corpus, and order the immediate requested relief from arbitrary torture.

Dated: New York, New York

April 5, 2022

RESUBMISSION
5/5/22

Respectfully submitted,

Joshua Adam Schulte
Slave #79471054
Metropolitan Detention Center (MDC)
P.O. Box 329002
Brooklyn, NY 11232

# EXHIBIT A-1

*Detention*

# METROPOLITAN CORRECTIONAL CENTER, NEW YORK
## ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES

### INFORMAL RESOLUTION FORM (BP-8)

NOTE TO INMATE: With the exception of sensitive issues and DHO appeals, you are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13) (old BP-9), you MUST attempt to informally resolve your complaint through your correctional counselor. Additionally, in accordance with P.S. 1330.13, you have the responsibility to present complaints in good faith and in an honest and straightforward manner. Before completing this form, you should make every effort to honestly attempt to informally resolve this matter verbally with staff. Briefly state ONE complaint below and list what efforts you have made to resolve your complaint informally.

Date form issued and initials of Corr. Counselor: __10/27/21  S. Petterson__

INMATE'S COMMENTS:

1. Complaint: __Torture light 24-7 causes sleep deprivation.__
__MDC must immediately halt torture imposed through bright__
__24-7 lights__

2. Efforts made by you to informally resolve: _____

3. Names of staff you contacted/Date you contacted the staff: _____

Date returned to Correctional Counselor: _____

__Schutte, Joshua__        __74471804__        __10/26/21__
Inmate's Name                Register Number        Date

## CORRECTIONAL COUNSELOR'S COMMENTS:

1. Efforts made to informally resolve and staff contacted: _____

Date informally resolved: _____  Counselor Signature: _____

Date BP-229(13) Issued: _____

Unit Manager: _____

# EXHIBIT A-2

METROPOLITAN CORRECTIONAL CENTER, NEW YORK  *Detention*
ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES

INFORMAL RESOLUTION FORM (BP-8)

NOTE TO INMATE: With the exception of sensitive issues and DHO appeals, you are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13) (old BP-9), you MUST attempt to informally resolve your complaint through your correctional counselor. Additionally, in accordance with P.S. 1330.13, you have the responsibility to present complaints in good faith and in an honest and straightforward manner. Before completing this form, you should make every effort to honestly attempt to informally resolve this matter verbally with staff. Briefly state ONE complaint below and list what efforts you have made to resolve your complaint informally.

Date form issued and initials of Corr. Counselor: __10/27/21 S. Patterson__

INMATE'S COMMENTS:

1. Complaint: No television in cell; All BOP control units have televisions as well as general population. Must have access to equal televisions mans

2. Efforts made by you to informally resolve: Spoke with Staff

3. Names of staff you contacted/Date you contacted the staff: Transition Manager Reid 10/18 - 10/25

Date returned to Correctional Counselor: _____

Schulte, Joshua    79471054    10/26
Inmate's Name        Register Number        Date

CORRECTIONAL COUNSELOR'S COMMENTS:

1. Efforts made to informally resolve and staff contacted: _____

Date informally resolved: _____   Counselor Signature: _____

Date BP-229(13) Issued: _____

Unit Manager: _____

# EXHIBIT A-3

*Detention*

METROPOLITAN ~~CORRECTIONAL~~ CENTER, NEW YORK
ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES

INFORMAL RESOLUTION FORM (BP-8)

NOTE TO INMATE: With the exception of sensitive issues and DHO appeals, you are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13) (old BP-9), you MUST attempt to informally resolve your complaint through your correctional counselor. Additionally, in accordance with P.S. 1330.13, you have the responsibility to present complaints in good faith and in an honest and straightforward manner. Before completing this form, you should make every effort to honestly attempt to informally resolve this matter verbally with staff. Briefly state ONE complaint below and list what efforts you have made to resolve your complaint informally.

Date form issued and initials of Corr. Counselor: 10/27/21 S. Patterson

INMATE'S COMMENTS:

1. Complaint: No chair in cell; MDC should provide basic plastic chair like general population

2. Efforts made by you to informally resolve: Spoke with Staff

3. Names of staff you contacted/Date you contacted the staff: Transition Manager Reid 10/25

Date returned to Correctional Counselor: _____

Schulte, Joshua       7947/054       10/26
Inmate's Name          Register Number     Date

CORRECTIONAL COUNSELOR'S COMMENTS:

1. Efforts made to informally resolve and staff contacted: _____

Date informally resolved: _____ Counselor Signature: _____

Date BP-229(13) Issued: _____

Unit Manager: _____

# EXHIBIT A-4

*Detention*

## METROPOLITAN ~~CORRECTIONAL~~ CENTER, NEW YORK
## ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES

### INFORMAL RESOLUTION FORM (BP-8)

NOTE TO INMATE: With the exception of sensitive issues and DHO appeals, you are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13) (old BP-9), you MUST attempt to informally resolve your complaint through your correctional counselor. Additionally, in accordance with P.S. 1330.13, you have the responsibility to present complaints in good faith and in an honest and straightforward manner. Before completing this form, you should make every effort to honestly attempt to informally resolve this matter verbally with staff. Briefly state ONE complaint below and list what efforts you have made to resolve your complaint informally.

Date form issued and initials of Corr. Counselor: **10/27/21 S. Patterson**

INMATE'S COMMENTS:

1. Complaint: No locker for storage, MDC should provide basic locker like general population

2. Efforts made by you to informally resolve: Spoke with staff

3. Names of staff you contacted/Date you contacted the staff:
Transition Manager Reid 10/25

Date returned to Correctional Counselor: _____

Schulte, Joshua       74471054       10/26
Inmate's Name         Register Number      Date

### CORRECTIONAL COUNSELOR'S COMMENTS:

1. Efforts made to informally resolve and staff contacted: _____

Date informally resolved: _____  Counselor Signature: _____

Date BP-229(13) Issued: _____

Unit Manager: _____

# EXHIBIT A-5

Detention

**METROPOLITAN CORRECTIONAL CENTER, NEW YORK**
**ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES**

## INFORMAL RESOLUTION FORM (BP-8)

**NOTE TO INMATE:** With the exception of sensitive issues and DHO appeals, you are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13) (old BP-9), you **MUST** attempt to informally resolve your complaint through your correctional counselor. Additionally, in accordance with P.S. 1330.13, you have the responsibility to present complaints in good faith and in an honest and straightforward manner. Before completing this form, you should make every effort to honestly attempt to informally resolve this matter verbally with staff. Briefly state **ONE** complaint below and list what efforts you have made to resolve your complaint informally.

Date form issued and initials of Corr. Counselor: 10/23/21 S. Patterson

INMATE'S COMMENTS:

1. Complaint: Blocked out windows so cannot see outside. MDC should unblock windows

2. Efforts made by you to informally resolve: Spoke with staff

3. Names of staff you contacted/Date you contacted the staff:
Transition Manager Reid 10/25

Date returned to Correctional Counselor: _____

Schulke, Joshua        74471054        10/26
Inmate's Name         Register Number      Date

CORRECTIONAL COUNSELOR'S COMMENTS:

1. Efforts made to informally resolve and staff contacted: _____

Date informally resolved: _____ Counselor Signature: _____

Date BP-229(13) Issued: _____

Unit Manager: _____

# EXHIBIT B-1

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: NOVEMBER 10, 2021

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BROOKLYN MDC

TO  : JOSHUA ADAM SCHULTE, 79471-054
      BROOKLYN MDC    UNT: K    QTR: K07-801L
      P.O. BOX 329001
      BROOKLYN, NY 11232


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 1100696-F1    ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED  : NOVEMBER 10, 2021
SUBJECT 1      : OTHER OPERATIONS
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION
                 OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE
                 NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

U.S. DEPARTMENT OF JUSTICE

**REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Schutte, Joshua A     74471054    1B4     MDC
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.    UNIT     INSTITUTION

**Part A- INMATE REQUEST**

Disable 24/7 torture lights that cannot be turned off and install rubber padding on the cell window-lid to prevent sleep deprivation. There is no legitimate governmental objective to sleep deprivation. NOTE: THE INSTITUTION DID NOT RESPOND TO MY BP-8 FROM 10/26/21.

11/9/21                   _JA Schutte_
DATE                      SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
NOV 10 2021
BY: BA

DATE                  WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**         CASE NUMBER: 1100696 -F1

**Part C - RECEIPT**                   CASE NUMBER: 1100696 -F1

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

DATE                  RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR           PRINTED ON RECYCLED PAPER           BP-229(13)
                                           APRIL 1982

# EXHIBIT B-2

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: NOVEMBER 10, 2021

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BROOKLYN MDC

TO  : JOSHUA ADAM SCHULTE, 79471-054
      BROOKLYN MDC    UNT: K    QTR: K07-801L
      P.O. BOX 329001
      BROOKLYN, NY 11232


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 1100691-F1      ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED  : NOVEMBER 10, 2021
SUBJECT 1      : OTHER OPERATIONS
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION
                 OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE
                 NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Schulte, Joshua A    79471054    K84    MDC
　　　　LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - INMATE REQUEST**

Televisions in our cells like all other BOP control groups. The BOP cannot provide GP and sentenced inmates access to TV while denying us equal access. There is no legitimate governmental objective to denying us access to a TV. NOTE: THE INSTITUTION DID NOT RESPOND TO MY BP-8 FROM 10/28/21

11/9/21
DATE

_____
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
NOV 10 2021
87...BA

_____　　　　　　_____
DATE　　　　　　　　　　　　　　　　WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**      CASE NUMBER: 1100691-F1

**Part C - RECEIPT**      CASE NUMBER: 1100691-F1

Return to: _____
　　　　　　LAST NAME, FIRST, MIDDLE INITIAL　　　REG. NO.　　　UNIT　　　INSTITUTION

SUBJECT: _____

_____
DATE　　　　　　　　　　　RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR     PRINTED ON RECYCLED PAPER     BP-229(13)
APRIL 1982

# EXHIBIT B-3

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: NOVEMBER 10, 2021

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BROOKLYN MDC

TO  : JOSHUA ADAM SCHULTE, 79471-054
      BROOKLYN MDC    UNT: K    QTR: K07-801L
      P.O. BOX 329001
      BROOKLYN, NY 11232

FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 1100695-F1    ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED   : NOVEMBER 10, 2021
SUBJECT 1       : OTHER OPERATIONS
SUBJECT 2       :
INCIDENT RPT NO :

REJECT REASON 1: YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION
                 OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE
                 NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

U.S. DEPARTMENT OF JUSTICE

**REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Schulte, Joshua A   79471054   K84   MDC
      LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

**Part A- INMATE REQUEST**

Provide plastic chair with a back for working. There is no chair provided to me and the concrete stool is too short to sit on. I cannot work on my case without a chair. There is no legitimate governmental objective to denying me access to a chair. NOTE: THE INSTITUTION DID NOT RESPOND TO MY BP-8 FROM 10/20/21

11/9/21
DATE          SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
NOV 10 2021
BY: BA

_____          _____
DATE                          WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**          CASE NUMBER: 1100095-F1

**Part C - RECEIPT**          CASE NUMBER: 1100095-F1

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

SUBJECT: _____

_____          _____
DATE                          RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR          PRINTED ON RECYCLED PAPER          BP-229(13)
                                                      APRIL 1 I82

# EXHIBIT B-4

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: NOVEMBER 10, 2021


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BROOKLYN MDC

TO  : JOSHUA ADAM SCHULTE, 79471-054
      BROOKLYN MDC    UNT: K    QTR: K07-801L
      P.O. BOX 329001
      BROOKLYN, NY 11232


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 1100690-F1      ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED   : NOVEMBER 10, 2021
SUBJECT 1       : OTHER OPERATIONS
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION
                 OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE
                 NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

# REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Schutte, Joshua A.        7047/054        KB4        MDC
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A- INMATE REQUEST**

Lockers for property storage. I should be provided lockers to store my personal property like GP. There is no legitimate governmental objective to deny me a locker.
NOTE: The INSTITUTION DID NOT RESPOND TO MY BP-8 FROM 10/26/21

11/9/21
DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE        WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**        CASE NUMBER: 1100690 – F1

**Part C - RECEIPT**        CASE NUMBER: 1100690 – F1

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

DATE        RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR        PRINTED ON RECYCLED PAPER        BP-229(13)
APRIL 1981

# EXHIBIT B-5

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: NOVEMBER 10, 2021

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BROOKLYN MDC

TO  : JOSHUA ADAM SCHULTE, 79471-054
      BROOKLYN MDC     UNT: K     QTR: K07-801L
      P.O. BOX 329001
      BROOKLYN  NY 11232

FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 1100694-F1     ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED  : NOVEMBER 10, 2021
SUBJECT 1      : FOOD - (EXCEPT DIETS & RLGS FOOD/MEALS)
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION
                 OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE
                 NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Schulte, Joshua A      71471054      K84      MDC
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - INMATE REQUEST**

Not providing enough food — the MDC must provide us equal food on the same tray, at the same time, as GP. Must also offer us double portions as was offered at MCC since GP is given a chance for seconds. There is no legitimate governmental objective to starving us. NOTE: THE INSTITUTION DID NOT RESPOND TO MY BP-8 FROM 10/26/21

11/9/21
DATE            SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
NOV 10 2021
BY____

_____
DATE                 WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**      CASE NUMBER: 1102094-F1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**      CASE NUMBER: 1102094-F1

Return to: _____
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____
DATE                 RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR      PRINTED ON RECYCLED PAPER      BP-229(13)
APRIL 1982



# EXHIBIT C-1

**REQUEST FOR ADMINISTRATIVE REMEDY**

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

From: Schutte, Joshua A     7471054     KBY     MDC
     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

Part A - INMATE REQUEST

Disable 24/7 torture lights that cannot be turned
and install rubber padding on the cell window-lid to
prevent sleep deprivation. There is no legitimate
governmental objective to sleep deprivation. NOTE:
INSTITUTION DID NOT RESPOND TO MY BP-8 FF:
10/28/21 (See attached)

11/29/21
DATE                                              SIGNATURE OF REQUESTER

Part B - RESPONSE

FUUD COPY
4/21/22
_____ DATE
If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this

ORIGINAL: RETURN TO INMATE

                                          WARDEN OR REGIONAL DIRECTOR

                                          CASE NUMBER: _____

                                          CASE NUMBER: _____

Part C - RECEIPT

Return to: _____     _____     _____     _____
          LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUT

SUBJECT: _____

_____ DATE                              RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR                    PRINTED ON RECYCLED PAPER

# EXHIBIT C-2

U.S. DEPARTMENT OF JUSTICE

**REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Schutte, Joshua A    74471054    K84    MDC
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A- INMATE REQUEST**

Provide televisions in cells; All BOP control units have televisions as well as general population. SAM's inmates Must have access to televisions like GP. There is no legitimate governmental objective to denying us access +

11/21/21
DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

Recv'd copy
1/21/2   *If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*
DATE               WARDEN OR REGIONAL DIRECTOR

CASE NUMBER: _____

ORIGINAL: RETURN TO INMATE

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____
DATE             RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR    PRINTED ON RECYCLED PAPER

# EXHIBIT C-3

U.S. DEPARTMENT OF JUSTICE

**REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Schulte, Joshu A    79471054    K-84    MDC
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - INMATE REQUEST**

Provide plastic chair with a back for working. There is no chair provided to me and the concrete stool is too short to sit on. I cannot work on my case without a chair. There is no legitimate governmental objective to denying me access to a chair. NOTE: THE INSTIT DID NOT RESPOND TO MY BP-8 from 10/26/21 (see attached)

11/29/21
DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECD W/R

1/21/22
DATE

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this resp.*

WARDEN OR REGIONAL DIRECTOR

CASE NUMBER: _____

ORIGINAL: RETURN TO INMATE

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

DATE    RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR    PRINTED ON RECYCLED PAPER

BP-22
APRIL

# EXHIBIT C-4

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Slutter, Joshua A.    79471054    K8V   MDC
     LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - INMATE REQUEST**

Lockers for property storage. I should be provided lockers to store my personal property like G.P. There is no legitimate governmental objective to deny me a ...

NOTE: THE INSTITUTION DID NOT RESPOND TO BP8 FROM 10/26/21 (See attached)

11/29/21
DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

Rivas copy
1/21/7.2.

_____    WARDEN OR REGIONAL DIRECTOR
DATE

If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.

CASE NUMBER: _____

ORIGINAL: RETURN TO INMATE       CASE NUMBER: _____

**Part C - RECEIPT**

Return to: _____
     LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____      _____
DATE      RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR    PRINTED ON RECYCLED PAPER

# EXHIBIT C-5

11/29/22

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From:    Schulte, Joshua A    74471054    K84    MDC
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A- INMATE REQUEST**

Unblock windows so we can see outside. There
legitimate governmental objective to block out wind...

11/29/21                 _[signature]_
   DATE                             SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RUVD COPY

1/21/22

      DATE

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this re...*

ORIGINAL: RETURN TO INMATE

WARDEN OR REGIONAL DIRECTOR

CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____                 RECIPIENT'S SIGNATURE (STAFF MEMBER)
      DATE

FPI·PEPR         PRINTED ON RECYCLED PAPER         BP-...
                                                   APR...

# EXHIBIT D-1

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: MARCH 8, 2022

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTHEAST REGIONAL OFFICE

TO  : JOSHUA ADAM SCHULTE, 79471-054
      BROOKLYN MDC    UNT: K    QTR: K08-801L
      P.O. BOX 329001
      BROOKLYN, NY 11232

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 1100696-R1      REGIONAL APPEAL
DATE RECEIVED   : FEBRUARY 11, 2021
SUBJECT 1       : OTHER OPERATIONS
SUBJECT 2       :
INCIDENT RPT NO :

REJECT REASON 1 : CONCUR WITH RATIONALE OF REGIONAL OFFICE AND/OR INSTITUTION
                  FOR REJECTION. FOLLOW DIRECTIONS PROVIDED ON PRIOR REJECTION
                  NOTICES.

REJECT REASON 2 : YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                  FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                  AT THIS LEVEL.

REJECT REASON 3 : SEE REMARKS.

REMARKS         : IT IS UNCLEAR WHY YOU REFUSE TO FOLLOW THE
                  INSTRUCTION YOU HAVE REPEATEDLY BEEN GIVEN. YOU DID
                  NOT GET A BP9 RESPONSE, BECAUSE IT WAS REJECTED.

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: **Schulte, Joshua A**    **79471054**    **K-84**    **MDC**
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL**

My BP-9 was never answered and a copy is included here. Disable 24/7 torture lights that cannot be turned off and install rubber padding on the cell window-lid to prevent sleep deprivation. There is no legitimate governmental objective to sleep deprivation.

1/25/22
DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____
DATE

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

REGIONAL DIRECTOR

CASE NUMBER: 1100696(R1)

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____
DATE

SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230 13
JUNE 2002

UPN LVN     PRINTED ON RECYCLED PAPER

DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Schutte, Joshua A.    7-715-    28?    MDC
LAST NAME, FIRST, MIDDLE INITIAL    REG NO    UNIT    INSTITUT

## Part A - INMATE REQUEST

Disable 24/7 tactile lights to cover be ~
and install rubber padding on the Sl~ ~ doo~ ~ it
Prevent sleep deprivation. There is no legitimate
Governmental objective to sleep deprivation. NOTE: THE
INSTITUTION DID NOT RESPOND TO IN BP-8 RE
10/28/21 See attach.

11/29/21
DATE                                SIGNATURE OF REQUESTER

## Part B - RESPONSE

RCVD COPY
1/21/22
DATE                                WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

## Part C - RECEIPT                            CASE NUMBER: _____

Return to: _____    _____    _____    _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUT.

SUBJECT: _____

_____                              _____
DATE                                 RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR

# EXHIBIT D-2

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 11, 2022

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTHEAST REGIONAL OFFICE

TO  .: JOSHUA ADAM SCHULTE, 79471-054
       BROOKLYN MDC      UNT: K    QTR:
       P.O. BOX 329001
       BROOKLYN, NY 11232

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 1100691-R1      REGIONAL APPEAL
DATE RECEIVED    : FEBRUARY 9, 2022
SUBJECT 1        : OTHER OPERATIONS
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON .: SEE REMARKS.

REMARKS          : YOU DID NOT RECEIVE A RESPONSE TO YOUR BP9 BECAUSE
                   IT WAS REJECTED ON 11-10-21.

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __Schulte, Joshua A__    __79471054__    __K-34__    __MDC__
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**

My BP-9 was never answered and a copy is included to
provide televisions in cells, All BOP control units have
televisions as well as general population. SAMs inmates K-34
have equal access to televisions like GP. There is no
legitimate governmental objective to denying me access to TV

__1/25/22__
DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

DATE    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 1100009(R1)

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT: _____

DATE    SIGNATURE, RECIPIENT OF REGIONAL APPEAL.

UPN 170    BP-230(13)

OF JUSTICE
Bureau of Prisons

# REQUEST FOR ADMINISTRATIVE REMEDY

Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

From: Schutte, Joshua A    79471054    K84    MDC
     LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

### Part A- INMATE REQUEST

Provide televisions in cells; All BOP control units have televisions as well as general population. SAMs inmates Must have access to televisions like GP. There is no legitimate governmental objective to denying us access —

11/21/21
DATE

SIGNATURE OF REQUESTER

### Part B - RESPONSE

Rcvd copy
1/21/2 DATE

_If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response._

WARDEN OR REGIONAL DIRECTOR

ORIGINAL: RETURN TO INMATE      CASE NUMBER: _____

### Part C - RECEIPT

CASE NUMBER: _____

Return to: _____
     LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____      _____
DATE      RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR    PRINTED ON RECYCLED PAPER

# EXHIBIT D-3

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 11, 2022

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTHEAST REGIONAL OFFICE

TO  : JOSHUA ADAM SCHULTE, 79471-054
      BROOKLYN MDC      UNT: K   QTR:
      P.O. BOX 329001
      BROOKLYN,  NY 11232


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 1100695-R1       REGIONAL APPEAL
DATE RECEIVED   : FEBRUARY 9, 2022
SUBJECT 1       : OTHER OPERATIONS
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: SEE REMARKS.

REMARKS         : YOU DID NOT RECEIVE A RESPONSE TO YOUR BP9 BECAUSE
                  IT WAS REJECTED ON 11-10-21.

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Schulte, Joshua A.    79471054    K-84    MDC
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**

My BP-9 was never answered and a copy is included here. Provide plastic chair with a back for working. There is no chair provided to me and the concrete stool is too short to sit on. I cannot work on my case without a chair. There is no legitimate governmental objective to denying access to a chair.

__1/25/22__
DATE

_____
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____
DATE

_____
REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE     CASE NUMBER: 1100609 R1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
     LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____
DATE

_____
SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN     PRINTED ON RECYCLED PAPER     BP-230(13)
JUNE 2012

**DEPARTMENT OF JUSTICE**                         **REQUEST FOR ADMINISTRATIVE REMEDY**
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Schulte, Joshua A          7947054          K-84          MDC
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A- INMATE REQUEST**

Provide plastic chair with a back for working. There is
no chair provided to me and the concrete stool is too
short to sit on. I cannot work on my case without a
chair. There is no legitimate governmental objective to
denying me access to a chair. NOTE: THE INSTIT..
DID NOT RESPOND TO MY BP-8 from 10/26/21 (see att..

11/29/21                                      _Joshua Schulte_
DATE                                          SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RCVD copy
1/21/22
_____                     _____
DATE                                          WARDEN OR REGIONAL DIRECTOR
*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                     CASE NUMBER: _____

**Part C - RECEIPT**
                                               CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____                     _____
DATE                                          RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR                                                                   BP-22
                                                                          APRIL

# EXHIBIT D-4

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 9, 2022

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTHEAST REGIONAL OFFICE

TO  : JOSHUA ADAM SCHULTE, 79471-054
      BROOKLYN MDC     UNT: K     QTR: K08-801L
      P.O. BOX 329001
      BROOKLYN, NY 11232

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID          : 1100690-R1       REGIONAL APPEAL
DATE RECEIVED      : FEBRUARY 8, 2022
SUBJECT 1          : OTHER OPERATIONS
SUBJECT 2          :
INCIDENT RPT NO    :

REJECT REASON 1    : YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                     FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                     AT THIS LEVEL.

REJECT REASON 2    : SEE REMARKS.

REMARKS            : YOU DID NOT RECEIVE A RESPONSE TO YOUR BP9 BECAUSE
                     IT WAS REJECTED ON 11-10-21.

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: **Schulte, Joshua A**       **74471054**       **K-84**       **MDC**
        LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A - REASON FOR APPEAL**

My BP-9 was never answered and a copy is included here. Lockers for property storage. I should be provided lockers to store my personal property like G.P. There is no legitimate governmental objective to deny me a locker.

_____1/28/22_____                    _____
        DATE                                SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____                    _____
        DATE                                REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE              CASE NUMBER: **1100000R1**

**Part C - RECEIPT**

                                        CASE NUMBER: _____

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.       UNIT       INSTITUTION

SUBJECT: _____

_____                    _____
        DATE                            SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN                    PRINTED ON RECYCLED PAPER              BP-230(13)
                                                                 JUNE 2002

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.

| From: | Slute, Josha A | 74471054 | ~~ADMIT~~ K84 | MDC |
|-------|----------------|----------|---------|-------------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - INMATE REQUEST**

· Lockers for property storage. I should be given lockers to store my personal property like of... no legitimate governmental objective to long my...

NOTE: THE INSTITUTION DID NOT RESPOND BP-8 FROM 11/26/21 (see attached)

| 11/29/21 | |
|----------|-----------------------|
| DATE | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**

EXHIBIT D-5

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 11, 2022

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTHEAST REGIONAL OFFICE

TO  : JOSHUA ADAM SCHULTE, 79471-054
      BROOKLYN MDC     UNT: K     QTR:
      P.O. BOX 329001
      BROOKLYN, NY 11232

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 1110016-R1     REGIONAL APPEAL
DATE RECEIVED  : FEBRUARY 9, 2022
SUBJECT 1      : SAFETY, SANITATION, ENVIRONMENTAL CONDITIONS
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Schulte, Joshua A    79471054    K-84    MDC
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**

My BP-9 was never answered and a copy is included here. Unblock windows so we can see outside. There is no legitimate governmental objective to block out windows.

_____1/25/22_____          _____
      DATE                             SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____          _____
      DATE                             REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 1110016(R)

**Part C - RECEIPT**

                                               CASE NUMBER: _____

Return to: _____
         LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION
SUBJECT: _____

_____          _____
      DATE                             SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN            PRINTED ON RECYCLED PAPER                         BP-230(13)
                                                         JUNE 2002

JUSTICE                                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Schulte, Joshua A      74471054      284      MDC
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A- INMATE REQUEST**

Unblock windows so we can see outside. There
legitimate governmental objective to block it window...

11/29/21
DATE                                                        SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RCVD copy

1/21/22   DATE                                              WARDEN OR REGIONAL DIRECTOR
*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                              CASE NUMBER: _____

**Part C - RECEIPT**                                        CASE NUMBER: _____

Return to: _____
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

    DATE                                           RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR                    PRINTED ON RECYCLED PAPER                      BP-

# EXHIBIT E

1/25/22 80

2/3/22

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JANUARY 31, 2022

FROM: ADMINISTRATIVE REMEDY COORDINATOR
BROOKLYN MDC

TO  : JOSHUA ADAM SCHULTE, 79471-054
BROOKLYN MDC    UNT: K    QTR: K08-801L
P.O. BOX 329001
BROOKLYN, NY 11232


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 1108627-F1      ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED  : JANUARY 31, 2022
SUBJECT 1      : OTHER OPERATIONS
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION
                 OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE
                 NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

REJECT REASON 2: YOU DID NOT SUBMIT YOUR REQUEST THROUGH YOUR COUNSELOR, OR
                 OTHER AUTHORIZED PERSON.

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Schutte, Joshua A    71471054    K-84    MDC
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST**

My BP-8 was never answered nor returned. I now write this BP-9

Solitary Confinement is Cruel and Unusual punishment. The MDC should not subject SAMs inmates to Solitary Confinement, but should create simple control units as it does for other inmates. We should have our own unit, not be subject to cruel and unusual Solitary Confinement.

1/28/22
DATE

_____
SIGNATURE OF REQUESTER

**Part B– RESPONSE**

RECEIVED
JAN 3 1 2022
BY:

_____
DATE

_____
WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 1082027-F1

CASE NUMBER: 1108027-F1

**Part C– RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

REJECTION NOTICE - ADMINISTRATIVE REMEDY

2/3/22

DATE: JANUARY 31, 2022

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BROOKLYN MDC

TO  : JOSHUA ADAM SCHULTE, 79471-054
      BROOKLYN MDC    UNT: K    QTR: K08-801L
      P.O. BOX 329001
      BROOKLYN, NY 11232


FOR THE REASONS LISTED BELOW, THIS ADMINISTRATIVE REMEDY REQUEST
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 1108630-F1    ADMINISTRATIVE REMEDY REQUEST
DATE RECEIVED   : JANUARY 31, 2022
SUBJECT 1       : OTHER OPERATIONS
SUBJECT 2       :
INCIDENT RPT NO :

REJECT REASON 1 : YOU DID NOT ATTEMPT INFORMAL RESOLUTION PRIOR TO SUBMISSION
                  OF ADMINISTRATIVE REMEDY, OR YOU DID NOT PROVIDE THE
                  NECESSARY EVIDENCE OF YOUR ATTEMPT AT INFORMAL RESOLUTION.

REJECT REASON 2 : YOU DID NOT SUBMIT YOUR REQUEST THROUGH YOUR COUNSELOR, OR
                  OTHER AUTHORIZED PERSON.

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Schulte, Joshua A    74471054    K-84    MDC

     LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A- INMATE REQUEST**

My BP-8 was never answered nor returned to Me. I now write this BP-9.

The MDC removed My lightswitch from My Cell. There is no legitimate governmental objective to removing the lightswitch. Please return the lightswitch to my Cell as exists in 6.8

1/28/22

     DATE            SIGNATURE OF REQUESTER

**Part B- RESPONSE**

JAN 3 2022

     DATE            WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE      CASE NUMBER: 108630-F1

           CASE NUMBER: 108630-F1

**Part C- RECEIPT**

Return to: _____

     LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

     DATE            RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN    PRINTED ON RECYCLED PAPER    BP-229 13
APRIL 1982

# EXHIBIT F

# INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schultz Josha          REG. 71471054

UNIT: 2-84

SPECIFIC ISSUE NEEDING
RESOLUTION: BP-8s still not returned

EXPLAIN, IN DETAIL THE ISSUE:

BP-8s filed in february have not been
returned despite daily requests

INMATE SIGNATURE: _____   DATE: 3/16/22

## TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/24/22

ACTION TAKEN: Later you didn't hand
me any BP-8. If so you
would have received a response

COUNSELOR SIGNATURE: _____   DATE: 3/24/22

## TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____


UNIT MANAGER APPROVAL _____ DATE _____

**INMATE REQUEST FOR INFORMAL RESOLUTION**

NAME: Schulte, Joshua          REG. 7147/054

UNIT: K-84

SPECIFIC ISSUE NEEDING
RESOLUTION: Unit Manger Bullock is not doing his job.

EXPLAIN, IN DETAIL THE ISSUE: He never conducts rounds, does not answer BP-8s, and does not setup legal calls.

Bullock is lazy and incompetent as he was at MCC

INMATE SIGNATURE: _____          DATE: 3/23/22

**TO BE COMPLETED BY COUNSELOR**

DATE RECEIVED: 3/24/22

ACTION TAKEN: Unit Manager and his staff conduct rounds daily.

COUNSELOR SIGNATURE: _____          DATE: 3/24/22

**TO BE COMPLETED BY UNIT MANAGER**

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

**INMATE REQUEST FOR INFORMAL RESOLUTION**

NAME: Schulte, Joshua     REG. 71471054

UNIT: K-84

SPECIFIC ISSUE NEEDING
RESOLUTION: VTC microphone dysfunctional

EXPLAIN, IN DETAIL THE ISSUE: The other participant in my VTCs cannot hear me.
Please fix the VTC

INMATE SIGNATURE: _____     DATE: 3/23/22

### TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/24/22

ACTION TAKEN: Your unit The sanis will
be receiving a pair of headphones
for their law library to hear
their VTCs

COUNSELOR SIGNATURE: _____     DATE: 3/24/22

### TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

# INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schultz, Joshua    REG. 70471054

UNIT: K-84

SPECIFIC ISSUE NEEDING
RESOLUTION: MDC keeps serving me the wrong dinner

EXPLAIN, IN DETAIL THE ISSUE:
I am not a No Flesh meal, but because the
trays are unmarked, they keep bringing me No Flesh
dinners

INMATE SIGNATURE: _____    DATE: 3/23/22

## TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/24/22

ACTION TAKEN: I will have F/S
mark the meals for the
saint

COUNSELOR SIGNATURE: _____    DATE: 3/24/22

## TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____


UNIT MANAGER APPROVAL _____ DATE _____

**INMATE REQUEST FOR INFORMAL RESOLUTION**

NAME: Schulte, Joshua REG. 79471054

UNIT: K-84

SPECIFIC ISSUE NEEDING RESOLUTION: Unit Manager Bullock refuses to give me legal calls

EXPLAIN, IN DETAIL THE ISSUE: I have asked Unit Manager Bullock for a legal call for weeks, but he always REFUSES

INMATE SIGNATURE: DATE: 3/23/22

**TO BE COMPLETED BY COUNSELOR**

DATE RECEIVED: 3/24/22

ACTION TAKEN: You will recive your legal call on 3/25/22 by the counselor for 2 min.

COUNSELOR SIGNATURE: DATE: 3/24/22

**TO BE COMPLETED BY UNIT MANAGER**

INFORMAL RESOLUTION RECEIVED __________

UNIT MANAGER SIGNATURE __________ DATE: __________

EXTENSION GRANTED __________ DATE DUE __________

REASON FOR EXTENSION __________

UNIT MANAGER APPROVAL __________ DATE __________

## INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schulte, Joshua     REG. 79471054

UNIT: K-B4

SPECIFIC ISSUE NEEDING
RESOLUTION: Unit Manager Bullock refuses to answer My
BP-8.

EXPLAIN, IN DETAIL THE ISSUE: I have asked Bullock multiple times to answer
My BP-8s from 3/2/22 which I refiled, but he
REFUSES

INMATE SIGNATURE: _____ DATE: 3/23/22

### TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/24/22

ACTION TAKEN: All your BP-8 will be
answered in a timely
manner

COUNSELOR SIGNATURE: _____ DATE: 3/24/22

### TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schulte, Joshua          REG. 79471054

UNIT: K-84

SPECIFIC ISSUE NEEDING
RESOLUTION: Sleep deprivation (4th attempt)

EXPLAIN, IN DETAIL THE ISSUE: Remove 24/7 torture lights that dont exist in G.P.
Officers should make night rounds at same frequency as G.P.
Must install rubber padding on small window flaps to prevent
banging

INMATE SIGNATURE: _____          DATE: 3/17/22

## TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/22/22
ACTION TAKEN: This is a SAMS
unit

COUNSELOR SIGNATURE: _____          DATE: 3/17/22

## TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

# INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schulte, Joshua     REG. 7947105+

UNIT: K-84

SPECIFIC ISSUE NEEDING
RESOLUTION: Remove 24/7 cage cameras (8th Ament)     4th

EXPLAIN, IN DETAIL THE ISSUE: MDC must remove the 24/7 cameras in torture cages
as it does not record OP.

INMATE SIGNATURE: _____     DATE: 3/17/22

## TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/18/22

ACTION TAKEN: Same unit and
housing unit have 24
hour cameras for staff
and inmate safety

COUNSELOR SIGNATURE: _____     DATE: 3/24/22

## TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____
_____

UNIT MANAGER APPROVAL _____ DATE _____

# INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schultz, Joshua    REG. 7147/054

UNIT: K-84

SPECIFIC ISSUE NEEDING
RESOLUTION: MDC Restricted phone minutes (w/ Attorney)

EXPLAIN, IN DETAIL THE ISSUE: MDC Must provide equal phone minutes as it does for GP

INMATE SIGNATURE: _____    DATE: 3/17/22

## TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/24/22

ACTION TAKEN: Scar calls are distributed on a quarterly basis.

COUNSELOR SIGNATURE: _____    DATE: 3/24/22

## TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

# INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schulte, Joshua          REG. 7147108?

UNIT: K-DCF

SPECIFIC ISSUE NEEDING
RESOLUTION: Restricted visitation (4th Attempt)

EXPLAIN, IN DETAIL THE ISSUE:
MDC must provide non-contact, multi-person, non-monitored social visits as it does for GP

INMATE SIGNATURE: _____   DATE: 3/17/22

## TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/24/22

ACTION TAKEN: General Population inmates are only allow to have one adult visitor

COUNSELOR SIGNATURE: _____   DATE: 3/24/22

## TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____   DATE: _____

EXTENSION GRANTED _____   DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____   DATE _____

# INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Shulke, Joshua      REG. 74471054

UNIT: K-B4

SPECIFIC ISSUE NEEDING
RESOLUTION: Damaged basketball goal & balls (4th Attempt)

EXPLAIN, IN DETAIL THE ISSUE: MDC must replace the basketball goal & balls it removed from
rec yard as it supplies both to BA

INMATE SIGNATURE: _____ DATE: 3/17/22

## TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/24/22

ACTION TAKEN: I will address your
concerns with the AW
over programs

COUNSELOR SIGNATURE: _____ DATE: 3/24/22

## TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

## INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schulte, Joshua     REG. 79471054

UNIT: K-B4

SPECIFIC ISSUE NEEDING
RESOLUTION: Arbitrary Shackling (4th Attempt)

EXPLAIN, IN DETAIL THE ISSUE: MDC arbitrarily Shackles me for Movement, but does not
do so for GP— Should not shackle me either

INMATE SIGNATURE: _____     DATE: 3/17/22.

### TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/24/22

ACTION TAKEN: You are a same
inmate,

COUNSELOR SIGNATURE: _____     DATE: 3/24/22

### TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

## INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Shute, Joshua          REG. 74477054

UNIT: K-Bell

SPECIFIC ISSUE NEEDING
RESOLUTION: Solitary Confinement (4th Attempt)

EXPLAIN, IN DETAIL, THE ISSUE: MDC should treat SAMs unit as it does other secure units,
and let us co-mingle freely in the unit. There is no
reason for solitary confinement

INMATE SIGNATURE: _____     DATE: 3/17/22

### TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/22/24

ACTION TAKEN: SAMS unit is not
a GP unit, its a Special
Administrative Measures

COUNSELOR SIGNATURE: _____     DATE: 3/24/22

### TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____
_____

UNIT MANAGER APPROVAL _____ DATE _____

# INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schulter, Joshua    REG. 71470354

UNIT: K-B4

SPECIFIC ISSUE NEEDING
RESOLUTION: Plumbing    (4th Attempt)

EXPLAIN, IN DETAIL THE ISSUE:
NDC replaced normal sinks, toilets, & showers so there are no
guts for temperature control, removed toilet seats.
Should provide same plumbing as G.P.

INMATE SIGNATURE: _____    DATE: 3/17/22

## TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/24/22

ACTION TAKEN: This is a SMU
unit.

COUNSELOR SIGNATURE: _____    DATE: 3/24/22

## TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____    DATE: _____

EXTENSION GRANTED _____    DATE DUE _____

REASON FOR EXTENSION _____
_____

UNIT MANAGER APPROVAL _____    DATE _____

# INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schulte, Joshua     REG. 79471054

UNIT: K2N

SPECIFIC ISSUE NEEDING
RESOLUTION: Blocked outside view (4th Attempt)

EXPLAIN, IN DETAIL THE ISSUE: MDC arbitrarily blocks outside view; Must unblock as it
does for GP

INMATE SIGNATURE: _[signature]_     DATE: 3/17/22

## TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/22/24

ACTION TAKEN: SAM's inmates are
not allowed to view
out doors

COUNSELOR SIGNATURE: _[signature]_     DATE: 3/24/22

## TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

## INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schultz, Joshua     REG. 79471054

UNIT: K-BY

SPECIFIC ISSUE NEEDING
RESOLUTION: removal of lockers (4th Attempt)

EXPLAIN, IN DETAIL THE ISSUE: BOP Must replace lockers for Commissary & Clothes Storage
live G.P.

INMATE SIGNATURE: _____    DATE: 3/17/22

### TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 3/22/22

ACTION TAKEN: What lockers are
you speaking about

COUNSELOR SIGNATURE: _____    DATE: 3/24/22

### TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

# EXHIBIT G

INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schulte, Joshua    REG. 10 79471054

UNIT: 1884

SPECIFIC ISSUE NEEDING
RESOLUTION: NO HEAT

EXPLAIN, IN DETAIL THE ISSUE:
It is freezing cold! NO HEAT!

INMATE SIGNATURE: _____    DATE: 12/14/21

TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 12/14/21

ACTION TAKEN: Email Facilities
The readings for the housing unit show the temperature in
unit are within Bureau of prisons policy standards and
the heating unit is working as designed.
COUNSELOR SIGNATURE: _____    DATE: 12/14/21
                                              RWD 1/21/22

TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

## INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: _Schutte, Joshua_    REG. _79471054_

UNIT: _F84_

SPECIFIC ISSUE NEEDING
RESOLUTION: ~~Unit team refused to take~~ Unit team refused to take ~~LEGAL MAIL~~ LEGAL MAIL

EXPLAIN, IN DETAIL THE ISSUE: _Unit team refused to take LEGAL M_

INMATE SIGNATURE: _____    DATE: _12/15/21_

### TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: _12/22/21_

ACTION TAKEN: _Need Further Information_

COUNSELOR SIGNATURE: _____    DATE: _12/22/21_
                                   _RWD 1/21/22_

### TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

## INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schulte, Joshua    REG. 71471054

UNIT: K84

SPECIFIC ISSUE NEEDING
RESOLUTION: no heat in torture cage

EXPLAIN, IN DETAIL THE ISSUE: July cold air blows from the vents - no heat

INMATE SIGNATURE: _(signature)_    DATE: 12/15/21

### TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 12/22/21

ACTION TAKEN: Email Facilities

COUNSELOR SIGNATURE: _(signature)_ 12/22/21    DATE: 12/22/21

RWD 1/21/22

### TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

## INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schutte, Joshua      REG. 74471054

UNIT: K84

SPECIFIC ISSUE NEEDING
RESOLUTION: STARVING!!! NO FOOD!

EXPLAIN, IN DETAIL THE ISSUE: Did not provide lunch. Now 2
NO FOOD!!!

INMATE SIGNATURE: _____ DATE: 12/19/21

### TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 12/22/21

ACTION TAKEN: Email Food Service

COUNSELOR SIGNATURE: _____ DATE: 12/22/21
RWD 1/21/22

### TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

# INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schutte, Joshua    REG. 79471054

UNIT: K84

SPECIFIC ISSUE NEEDING RESOLUTION: STARVING!!!!

EXPLAIN, IN DETAIL THE ISSUE: NO FOOD!

STILL NO LUNCH!!

INMATE SIGNATURE: [signature]    DATE: 12/19/21    3:00 PM

## TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 12/22/21

ACTION TAKEN: Email Food Service

COUNSELOR SIGNATURE: [signature]    DATE: 12/22/21

RCVD 1/21/22

## TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

## INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schulte, Joshua    REG. 79471054

UNIT: KB4

SPECIFIC ISSUE NEEDING
RESOLUTION: STARVING!!!! NO FOOD!

EXPLAIN, IN DETAIL THE ISSUE: NO LUNCH!! STARVING!  3:
M:

INMATE SIGNATURE: _____    DATE: 12/19/21

### TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 12/02/21

ACTION TAKEN: Email Food Service

COUNSELOR SIGNATURE: _____ 12/22/21    DATE: 12/22/21

RWD 1/21/22

### TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

## INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schulte, Joshua          REG. 79471054

UNIT: K84

SPECIFIC ISSUE NEEDING
RESOLUTION: ___(PROVIDE FOOD!)__ STARVING TO DEATH

EXPLAIN IN DETAIL THE ISSUE: Saturday 11/6 NO BREAKFAST, NO DINNER!!
Tues 11/10 NO LUNCH!!

INMATE SIGNATURE: _____   DATE: 11/10/21

### TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 11/15/2021

ACTION TAKEN: Given to Food Service

COUNSELOR SIGNATURE: _____ 11/18/2021        DATE: 11/18/2021

### TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

NOT FEEDING US!!!!!

## INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schutte, Joshua          REG. 79471054

UNIT: K8Y

SPECIFIC ISSUE NEEDING
RESOLUTION: STARVING!! NO FOOD!! STARVING

EXPLAIN, IN DETAIL THE ISSUE: ~~NO LUNCH!! NO FOOD!! STARVING!!~~ 4:30

INMATE SIGNATURE: _____     DATE: 12/19/21

### TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 12/22/21

ACTION TAKEN: Email Food Service

COUNSELOR SIGNATURE: _____     DATE: 12/22/21
                                       RWO 4/21/22

### TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schultz, Joshua          REG: 79471054

UNIT: 1284                                         Still no stamps

SPECIFIC ISSUE NEEDING
RESOLUTION: Commissary

EXPLAIN, IN DETAIL THE ISSUE:
We have not been shopped or given Commissary sheets
for nearly one month. I still do not have any stamps!

INMATE SIGNATURE: _____          DATE: 12/28/21

TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 12/28/21

ACTION TAKEN: Email Commissary/Trust Fund Supv.

COUNSELOR SIGNATURE: _____          DATE: 12/28/21
                                                            RTWD 1/21/22

TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

## INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schulte, Joshua REG. 7947105Y

UNIT: K84

SPECIFIC ISSUE NEEDING
RESOLUTION: NO HEAT!!

EXPLAIN, IN DETAIL THE ISSUE: Vent blasting cold air all the time! No heat

INMATE SIGNATURE: _____ DATE: 1/2/22

### TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 1/3/2022

ACTION TAKEN: Email Facilities

COUNSELOR SIGNATURE: _____ DATE: 1/3/2022
RWD 1/21/22

### TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

# INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schulte, Joshua    REG. 79471054

UNIT: 234

SPECIFIC ISSUE NEEDING
RESOLUTION: Need stamps, have not been able to buy

EXPLAIN, IN DETAIL THE ISSUE: Cannot buy stamps, but need to mail court documents

INMATE SIGNATURE: _____    DATE: 1/4/22

## TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 1/4/22

ACTION TAKEN: Email to Trust Fund

COUNSELOR SIGNATURE: _____    DATE: 1/4/22

RWD 1/24/22

## TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

# INMATE REQUEST FOR INFORMAL RESOLUTION

NAME: Schutte, Joshua          REG. 74471054

UNIT: R84

SPECIFIC ISSUE NEEDING
RESOLUTION: NO HEAT IN CAGE

EXPLAIN, IN DETAIL THE ISSUE: There is no heat from the vents only cold air.
The torture cage is freezing

INMATE SIGNATURE: _____ DATE: 1/11/22

### TO BE COMPLETED BY COUNSELOR

DATE RECEIVED: 1/13/22
ACTION TAKEN: Email to Facilities

COUNSELOR SIGNATURE: _____ DATE: 1/13/22
                                            RWD 1/21/22

### TO BE COMPLETED BY UNIT MANAGER

INFORMAL RESOLUTION RECEIVED _____

UNIT MANAGER SIGNATURE _____ DATE: _____

EXTENSION GRANTED _____ DATE DUE _____

REASON FOR EXTENSION _____

UNIT MANAGER APPROVAL _____ DATE _____

# EXHIBIT H-1

MDC BROOKLYN
COMMISSARY LIST
K-84 INMATES
SUBSTITUTE ITEMS
YES        NO
LIST ITEMS ON OTHER SIDE

(INMATE NUMBER)

(INMATE NAME)

(INMATE SIGNATURE)

UNIT

CELL #

WORK DETAIL

ALL SALES ARE FINAL. ONCE YOU LEAVE THE DELIVERY AREA, NO CHANGES WILL BE ACCEPTED. THE SPENDING LIMIT IS $160.00 PER SHOP.

PRICES ARE SUBJECT TO CHANGE WITHOUT PRIOR NOTICE.     STAMPS, COPY CARDS AND O.T.C. MEDICATIONS ARE EXEMPT FROM THE $160.00 SPENDING LIMIT

K=KOSHER/ D=DAIRY/ U=ORTHODOX UNION/ P=PAREVE/ H=HALAL  M=HALAL/ C=HALAL/ KS=KOSHER/ G=GLATT/ ♥=HEALTHY CHOICE

| QTY | STAMPS | PRICE | LIMIT | QTY | COPY CARD/MISC ITEMS | PRICE | LIMIT |
|-----|--------|-------|-------|-----|----------------------|-------|-------|
| | FIRST CLASS DOMESTIC STAMP | 0.55 | 20 | | GREETING CARD, BLANK [PK OF 6] | 2.35 | |
| QTY | DRINKS | PRICE | LIMIT | QTY | DRINKS | PRICE | LIMIT |
| ***LIMIT FOR SODAS OR WATER IS 1 6PK PER SHOP.*** | | | | | COLOMBIAN COFFEE [K] | 3.50 | 2 |
| | WATER, 8 PACK [K] ♥ | 4.50 | * | | NONDAIRY CREAMER [D] | 1.35 | 2 |
| | JOLLY RANGER | 110 | 2 | | SWEETMATE SWEETENER [U,P] | 1.80 | 1 |
| | DECAFFEINATED COFFEE [K] | 3.55 | 1 | | LIPTON TEA BAG [U] | 2.60 | 1 |
| | HOT COCOA, SUGAR FREE [D,U] ♥ | 2.85 | 2 | | SNACKS / CANDY / RICE / SOUPS | PRICE | LIMIT |
| | HERBAL TEA, ASSORTED ♥ | 3.55 | 1 | | OATMEAL COOKIES ICED [U,D] | 2.50 | 2 |
| | FOODS / CONDIMENTS / MEALS | PRICE | LIMIT | | GRANOLA BARS, VARIETY ♥ | 3.30 | 2 |
| | SUGAR FREE HONEY | 3.8 | 1 | | CASHEWS [K] ♥ | 4.80 | 2 |
| | MAYONNAISE [K] | 3.80 | 1 | | UNSALTED PEANUTS [K] ♥ | 2.80 | 2 |
| | PEANUT BUTTER [U] | 3.65 | 2 | | DELUXE MIXED NUTS [K] ♥ | 3.55 | 2 |
| | VELVEETA CHEESE BLOCK | 3.70 | 2 | | SNICKER'S BAR, 6/PK [D,U] | 7.60 | 2 |
| | WHITE TUNA POUCH [U,P] ♥ | 3.45 | 2 | | SUGAR FREE CANDY [D,U] | 3.40 | 2 |
| | OATMEAL, ASSORTED [D,U] ♥ | 3.00 | 2 | | FLOUR TORTILLAS [K] | 2.15 | 2 |
| | SUMMER BEEF SAUSAGE LOG | 2.25 | 3 | | MACKERAL FILLETS POUCH [U,P] ♥ | 1.35 | 4 |
| | MOZZARELLA CHEESE [H] | 1.55 | 2 | | EGGPLANT PARMESAN MEAL [U,K,P] | 5.00 | 5 |
| | SALT & PEPPER SHAKERS [U] | 2.95 | 1 | | DARK CHOCOLATE BAR [U,P] | 2.25 | 2 |
| | TURKEY LOG, HONEY PEPPER | 2.25 | 5 | | PROTEIN NUTRITION BAR ♥ | 1.75 | 5 |
| | WHITE CHICKEN POUCH ♥ | 3.85 | 2 | | | | |
| | HOT & SPICY BEEF SAUSAGE LOG [H] | 2.55 | 3 | | HEALTH / HYGIENE / SUNDRY | PRICE | LIMIT |
| | SPAM POUCH | 1.50 | 2 | | COTTON SWAB | 1.10 | 1 |
| | HOT CHILI W/BEANS POUCH | 2.00 | 3 | | COCOA BUTTER STICK | 1.60 | 1 |
| | TURKEY & SWISS STICK | 1.50 | 5 | | PALM BRUSH | 0.50 | 1 |
| | CLUB CRACKERS [K,D] | 6.00 | 2 | | PLAYING CARDS, RED & BLUE | 2.80 | 1 |
| | UNSALTED CRACKERS [U,D] ♥ | 1.95 | 2 | | 9 X 12 ENVELOPE | 0.25 | 5 |
| | COLOSSAL BERRY CRUNCH [U] | 2.80 | 2 | | ENVELOPE, WHITE, BOX OF 50 | 1.75 | 1 |
| | SUNDRIES / MISCELLANEOUS | PRICE | LIMIT | | O.T.C. MEDICATIONS | PRICE | LIMIT |
| | WIND UP RADIO | 61.50 | 1 | | MAX STRENGTH ANTACID | 3.35 | 1 |
| | PHOTO ALBUM | 2.80 | 1 | | BAYER ASPIRIN, 325MG, 24 CT | 4.10 | 1 |
| | HEALTH / HYGIENE / SUNDRY | PRICE | LIMIT | | LOPERAMIDE 2MG, 12 CT | 1.40 | 1 |
| | CLOSE-UP TOOTHPASTE | 2.80 | 1 | | LORATADINE ALLERGY 10MG 30 TAB | 3.15 | 1 |
| | COLGATE W/TARTAR CONTROL | 3.65 | 1 | | PEPTO BISMOL TABLETS, 30 CT | 7.40 | 1 |
| | SENSODYNE TOOTHPASTE | 9.30 | 1 | | LACTASE ENZYME CAPLETS, 32 CT | 6.65 | 1 |
| | TOOTHBRUSH HOLDER | 0.50 | 1 | | VITAMIN C, 500MG, 100 CT | 3.25 | 1 |
| | TOOTHBRUSH | 0.85 | 1 | | MULTIVITAMINS, 100 CT | 2.55 | 1 |
| | DIAL SOAP | 1.30 | 2 | | VITAMIN E, 100 IU, 100 CT | 3.50 | 1 |
| | DOVE SOAP | 2.15 | 2 | | VITAMIN D3, 400IU, 100 CT | 2.95 | 1 |
| | LADIES DEODORANT | 2.45 | 1 | | BLISTEX | 2.60 | 1 |
| | MALE DEODORANT | 3.50 | 1 | | IBUPROFEN, 200mg, 50 CT | 2.60 | 1 |
| | DANDRUFF SHAMPOO | 8.90 | 1 | | ALEVE, 220mg, 24 CT | 6.50 | 1 |
| | H.E 3 IN ONE (HAIR, BODY, SHAMPOO) | 6.20 | 1 | | | | |
| | HAIR CONDITIONER | 5.35 | 1 | | | | |
| | O.T.C. MEDICATIONS | PRICE | LIMIT | | | | |
| | HALLS COUGH DROPS | 2.75 | 1 | | | | |
| | ARTIFICIAL TEARS | 2.25 | 1 | | | | |
| | DOCUSATE, 100MG STOOL SOFTENER | 2.70 | 1 | | | | |
| | AMMONIUM LACTATE 12% LOTION | 6.55 | 1 | | | | |
| | CLORTRIMAZOLE CREAM | 1.60 | 1 | | | | |
| | HYDROCORTISONE CREAM | 1.80 | 1 | | | | |
| | GENERIC LAMASIL 1% | 10.40 | 1 | | | | |
| | DYNAREX A& D OINTMENT, 4 OZ | 3.65 | 1 | | | | |

/S/ /S/ /S/

D. BALKARAN, T.F.S.      L. PLOURDE, AW[O]      FELIPE MARTINEZ, JR., WARDEN
COMMISSARY LIST UPDATED  11/15/2021

# EXHIBIT H-2

## MDC BROOKLYN
## COMMISSARY LIST
## MALE INMATES

| (INMATE NUMBER) | UNIT |
| --- | --- |
| (INMATE NAME) | CELL # |
| (INMATE SIGNATURE) | WORK DETAIL |

ALL SALES ARE FINAL. ONCE YOU LEAVE THE DELIVERY AREA, NO CHANGES WILL BE ACCEPTED. THE SPENDING LIMIT IS $100.00 PER SHOP.
PRICES ARE SUBJECT TO CHANGE WITHOUT PRIOR NOTICE.    STAMPS, COPY CARDS AND O.T.C. MEDICATIONS ARE EXEMPT FROM THE $100.00 SPENDING LIMIT.
K=KOSHER/ D=DAIRY U=ORTHODOX UNION/ P=PAREVE/ H=HALAL  M=HALAL/ C=HALAL/ KS=KOSHER/ G=GLATT/ ♥=HEALTHY CHOICE

| QTY | STAMPS | PRICE | LIMIT | QTY | COPY CARD/MISC ITEMS | PRICE | LIMIT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | FIRST CLASS DOMESTIC STAMP | 0.58 | 40 | | COPY CARD [ 50 COPIES ] | 6.50 | 3 |
| | FIRST CLASS GLOBAL STAMP | 1.30 | 10 | | BIC PEN; BLUE, 2/PK | 1.10 | 1 |
| | | | | | GREETING CARD, BLANK [PK OF 6] | 2.35 | 1 |

| QTY | DRINKS | PRICE | LIMIT | QTY | DRINKS | PRICE | LIMIT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| LIMIT FOR SODAS OR WATER IS 1 6PK PER SHOP | | | | | COLOMBIAN COFFEE [K] | 3.50 | 3 |
| | WATER, 6 PACK [K] ♥ | 4.50 | * | | NONDAIRY CREAMER [D] | 1.35 | 2 |
| | | | | | SWEETMATE SWEETENER [U,P] | 1.80 | 1 |
| | | | | | LIPTON TEA BAG [U] | 2.60 | 2 |
| | JOLLY RANGER | 110 | 2 | | PURPLE SMASH SUGAR FREE MIX, 8CT ♥ | 1.30 | 2 |
| | DECAFFEINATED COFFEE [K] | 3.55 | 3 | | ORANGE OCEAN SUGAR FREE MIX, 8CT ♥ | 1.30 | 2 |
| | HOT COCOA, SUGAR FREE [D,U] ♥ | 2.85 | 3 | | PEACH ICE TEA MIX S.F. MIX, 10CT [U] ♥ | 1.30 | 2 |
| | POWDERED MILK [D,U] ♥ | 5.75 | 2 | | GREEN APPLE SUGAR FREE MIX, 6CT ♥ | 1.30 | 2 |
| | BIGELOW TEA, ASSORTED ♥ | 3.55 | 2 | | PINEAPPLE SUGAR FREE MIX, 6CT ♥ | 1.25 | 2 |

| QTY | FOODS / CONDIMENTS / MEALS | PRICE | LIMIT | QTY | SNACKS / CANDY / RICE / SOUPS | PRICE | LIMIT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | SUGAR FREE HONEY [U] ♥ | 3.80 | 2 | | ICED OATMEAL COOKIES [U,D] | 2.50 | 1 |
| | JALAPENO WHEELS [K] | 3.85 | 1 | | CRUNCH & MUNCH [K] | 1.95 | 2 |
| | MAYONNAISE [U] | 3.80 | 1 | | FRENCH VANILLA GRANOLA [U] ♥ | 4.00 | 2 |
| | PEANUT BUTTER [U] | 3.65 | 2 | | COCONUT OATS GRANOLA | 4.00 | 2 |
| | VELVEETA CHEESE BLOCK | 3.70 | 2 | | CHOCOLATE COVERED PRETZELS | 2.15 | 1 |
| | NUTELLA HAZELNUT SPREAD [U,D] ♥ | 4.90 | 1 | | CHIPS AHOY [D,U] | 5.50 | 2 |
| | TUNA IN THAI CHILI SAUCE [H,U] ♥ | 2.60 | 3 | | GRANOLA BARS, VARIETY ♥ | 3.30 | 2 |
| | WHITE TUNA POUCH [U,P] ♥ | 3.45 | 5 | | CHOCOLATE CREME COOKIES [D,U] | 2.45 | 2 |
| | OATMEAL, ASSORTED [D,U] ♥ | 3.00 | 2 | | HONEY BUN | 0.80 | 4 |
| | JALAPENO SQUEEZE CHEESE | 3.80 | 1 | | CASHEWS [K] ♥ | 4.80 | 2 |
| | SAZON SEASONING | 3.45 | 2 | | SUNFLOWER KERNELS [K] | 3.00 | 2 |
| | CHICKEN STOCK CUBES [K,P] | 2.10 | 1 | | UNSALTED PEANUTS [K] ♥ | 2.80 | 2 |
| | MRS DASH (SALT FREE) [U,P] ♥ | 3.80 | 2 | | CAJUN HOT SNACKS [K,D] ♥ | 3.70 | 2 |
| | BABY RAYS BARBEQUE SAUCE | 7.55 | 1 | | DELUXE MIXED NUTS [K] ♥ | 3.55 | 2 |
| | GARLIC POWDER [U] | 1.45 | 2 | | PEANUT BUTTER CUPS, MINI'S | 2.30 | 2 |
| | SUMMER SAUSAGE LOG | 2.25 | 3 | | HERSHEY'S BAR, 6/PK [D,U] | 7.05 | 2 |
| | CURRY POWDER [U] ♥ | 1.25 | 2 | | SNICKER'S BAR, 6/PK [D,U] | 7.60 | 2 |
| | CINNAMON POWDER [U] ♥ | 1.55 | 2 | | BRACHS SUGAR FREE CANDY [D,U] | 3.40 | 2 |
| | MOZZARELLA CHEESE [H] | 1.55 | 2 | | TOOTSIE POP DROPS | 1.45 | 3 |
| | PEANUT BUTTER & JELLY | 3.6 | 2 | | COMBOS CHEDDAR PRETZEL | 2.85 | 2 |
| | SALT & PEPPER SHAKERS [U] | 2.95 | 1 | | MACARONI & CHEESE [K,H] | 1.20 | 5 |
| | SOY SAUCE [K] | 1.20 | 2 | | MILD PEPPER MIX JAR | 2.30 | 1 |
| | TURKEY LOG, HONEY PEPPER | 2.25 | 3 | | FLOUR TORTILLAS [K] | 2.40 | 2 |
| | SEASONED PORK POUCH | 4.45 | 3 | L/S CHICKEN SOUP ♥ = _____ HOT CHILI SOUP = _____ | | 0.40 | |
| | WHITE CHICKEN POUCH ♥ | 3.85 | 3 | SHRIMP SOUP = _____ L/S TEXAS BEEF SOUP ♥ = _____ | | 0.40 | |
| | HOT & SPICY BEEF SAUSAGE LOG [H] | 2.55 | 3 | ORIENTAL STYLE CHICKEN SOUP [K] ♥ | | 0.85 | |
| | SPAM POUCH | 1.50 | 3 | | MACKEREL FILLETS POUCH [U,P] ♥ | 1.35 | 12 |
| | BREAKFAST NUTRITIONAL DRINK | 9.10 | 1 | | PRE-COOKED RICE, 8 OZ [K] | 1.30 | 5 |
| | HOT CHILI W/BEANS POUCH | 2.00 | 3 | | INSTANT GRITS | 4.15 | 2 |
| | PARMESAN CHEESE | 4.10 | 1 | | STUFFED CHICKEN W/RICE [U,K,G] | 5.75 | |
| | TURKEY & SWISS STICK | 1.50 | 5 | | EGGPLANT PARMESAN MEAL [U,K,P] | 5.00 | |
| | CLUB CRACKERS [K,D] | 6.00 | 1 | | BONE IN CHICKEN MEAL [U,K,G] | 5.45 | |
| | UNSALTED CRACKERS [U,D] ♥ | 1.95 | 1 | | RIB STEAK MEAL [U,K,G] | 9.95 | |
| | CHEEZ IT CRACKERS [K,D] | 3.85 | 1 | | BEEF CHOLENT MEAL [U,K,G] | 6.90 | |
| | COLOSSAL BERRY CRUNCH [U] | 2.80 | | | DARK CHOCOLATE BAR [U,P] | 2.25 | 5 |
| | HONEY OATSCOOTERS [U] ♥ | 3.10 | | | PROTEIN NUTRITION BAR ♥ | 1.75 | 5 |

| QTY | SUNDRIES / MISCELLANEOUS | PRICE | LIMIT | QTY | CLOTHING ITEMS | PRICE | LIMIT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | *AAA* BATTERIES 4/PK | 2.35 | 3 | | SWEATSHIRT SZ ____ | 16.15 | 1 |
| | EARBUDS | 7.80 | 1 | | SWEATPANT SZ ____ | 16.15 | 1 |

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ [illegible stamp] 12 [illegible] 22 ★

BROOKLYN OFFICE

| QTY | HEALTH / HYGIENE / SUNDRY | PRICE | LIMIT | QTY | HEALTH / HYGIENE / SUNDRY | PRICE | LIMIT |
|---|---|---|---|---|---|---|---|
| | SHOWER CLOGS, SIZE 4-15 | 7.15 | 1 | | STYLING GEL | 2.35 | 2 |
| | MOUTHWASH | 1.45 | 1 | | GILLETTE RAZOR, 3 PK | 9.95 | 1 |
| | CLOSE-UP TOOTHPASTE | 2.80 | 2 | | SHAVING CREAM | 1.95 | 2 |
| | COLGATE W/TARTAR CONTROL | 3.65 | 2 | | NOXEMA | 3.20 | 1 |
| | TOOTHPICK/FLOSS | 1.30 | 1 | | COTTON SWAB | 1.10 | 2 |
| | SENSODYNE TOOTHPASTE | 9.30 | 1 | | TOENAIL CLIPPER | 1.15 | 1 |
| | TOOTHBRUSH HOLDER | 0.50 | 2 | | AFRICAN PRIDE | 6.55 | 1 |
| | AMBI FADE CREAM | 7.30 | 1 | | FINGERNAIL CLIPPER | 0.85 | 1 |
| | TOOTHBRUSH | 0.85 | 1 | | MURRAY'S POMADE | 2.45 | 1 |
| | DENTURE CLEANER POWDER | 6.25 | 1 | | COCOA BUTTER STICK | 1.60 | 1 |
| | EFFERGRIP | 5.10 | 1 | | HAIR BRUSH | 1.60 | 1 |
| | DIAL SOAP | 1.30 | 2 | | PINK OIL MOISTURIZER | 5.30 | 2 |
| | H.E 3 IN ONE (HAIR, BODY, SHAMPOO) | 6.20 | 1 | | PALM BRUSH | 0.50 | 1 |
| | NEXT 1 SOAP, SPORT BAR | 1.15 | 1 | | WAVE CAP | 2.60 | 2 |
| | DOVE SOAP | 2.15 | 2 | | PONY TAIL BANDS | 1.35 | 1 |
| | NEUTROGENA SOAP | 3.65 | 2 | | PLAYING CARDS, RED & BLUE | 2.80 | 2 |
| | LADIES DEODORANT | 2.45 | 2 | | SUDOKU PUZZLE BOOK | 1.30 | 1 |
| | ROLL-ON DEODORANT | 1.90 | 2 | | WORD FIND PUZZLE BOOK | 1.45 | 1 |
| | MALE DEODORANT | 3.50 | 2 | | CROSSWORD PUZZLE BOOK | 1.45 | 1 |
| | HOT/COLD MUG | 2.05 | 2 | | WIRELESS NOTEBOOK | 1.80 | 1 |
| | TONE COCOA BUTTER LOTION | 4.00 | 1 | | LAUNDRY BAG | 4.45 | 1 |
| | VASELINE SKIN LOTION | 5.20 | 1 | | MAGIC SHAVE | 5.35 | 1 |
| | ROSE TOILET PAPER | 1.00 | 3 | | TOILETRY BAG | 5.45 | 1 |
| | SOAP DISH | 0.50 | 2 | | DAWN DISH SOAP | 2.05 | 1 |
| | | | | | MIRROR | 2.60 | 1 |
| | DANDRUFF SHAMPOO | 8.90 | 2 | | COLORED PENCILS | 2.65 | 1 |
| | SHAMPOO | 4.15 | 2 | | 9 X 12 ENVELOPE | 0.25 | 10 |
| | HAIR CONDITIONER | 5.35 | 2 | | ENVELOPE, WHITE, BOX OF 50 | 1.75 | 1 |
| | | | | | LAUNDRY DETERGENT | 3.45 | 2 |
| | PLASTIC BOWL W/LID | 6.30 | 1 | | PHASE 10 CARD GAME | 7.95 | 1 |

| QTY | O.T.C. MEDICATIONS | PRICE | LIMIT | QTY | O.T.C. MEDICATIONS | PRICE | LIMIT |
|---|---|---|---|---|---|---|---|
| | ORAL PAIN RELIEF GEL | 1.50 | 1 | | MAX STRENGTH ANTACID | 3.35 | 1 |
| | SULPHUR 8 SHAMPOO | 4.05 | 1 | | OMEPRAZOLE (ACID REDUCER) | 13.65 | 1 |
| | HALLS COUGH DROPS | 2.75 | 2 | | BAYER ASPIRIN, 325MG, 24 CT | 4.10 | 1 |
| | ARTIFICIAL TEARS | 2.55 | 1 | | LOPERAMIDE 2MG, 12 CT | 1.40 | 1 |
| | DOCUSATE, 100MG STOOL SOFTENER | 2.70 | 1 | | LORATADINE ALLERGY 10MG 30 TAB | 3.15 | 1 |
| | AMMONIUM LACTATE 12% LOTION | 6.55 | 1 | | PEPTO BISMOL TABLETS, 30 CT | 7.40 | 1 |
| | | | | | CLEARISIL CREAM | 10.70 | 1 |
| | IBUPROFEN, 200mg, 50 CT | 2.60 | 1 | | NASAL SPRAY | 2.35 | 1 |
| | ALEVE, 220mg, 24 CT | 7.35 | 1 | | LACTASE ENZYME CAPLETS, 32 CT | 6.95 | 1 |
| | TUCKS MEDICATED PADS | 6.50 | 1 | | VITAMIN C, 500MG, 100 CT | 3.25 | 1 |
| | HEMORRHOID CREAM | 4.00 | 1 | | MULTIVITAMINS, 100 CT | 2.55 | 1 |
| | CLORTRIMAZOLE CREAM | 1.60 | 1 | | VITAMIN E, 100 IU, 100 CT | 3.50 | 1 |
| | HYDROCORTISONE CREAM | 1.80 | 1 | | VITAMIN D3, 400IU, 100 CT | 2.95 | 1 |
| | GENERIC LAMASIL 1% | 10.40 | 1 | | FIBER CAPS, 625MG, 90 CT | 5.60 | 1 |
| | DYNAREX A& D OINTMENT, 4 OZ | 3.65 | 2 | | BLISTEX | 2.60 | 1 |
| | COUGH SYRUP, 4OZ | 4.95 | 2 | | GREASELESS BEN GAY | 5.30 | 1 |
| | | | | | FOOT POWDER | 6.25 | 2 |

| QTY | RELIGIOUS ITEMS | | | INMATES MUST BE LISTED IN SENTRY TO PURCHASE THESE ITEMS ! | | | |
|---|---|---|---|---|---|---|---|
| | ROSARY BEADS * | 1.50 | 1 | | PRAYER RUG * | 8.75 | 1 |
| | ARABIAN SANDALWOOD PRAYER OIL | 3.25 | 2 | | KUFI, WHITE [MALE ONLY] * | 2.50 | 3 |
| | EGYPTIAN MUSK PRAYER OIL | 3.25 | 2 | | RASTAFARIAN CROWN * | 8.46 | 3 |
| | STAR OF DAVID W/CHAIN * | 19.99 | 1 | | NATIVE AMERICAN HEADBAND * | 2.69 | 3 |
| | HIJAB [FEMALE INMATE ONLY]* | 9.95 | 3 | | YARMULKE, WHITE * | 2.00 | 3 |

## GENERAL INFORMATION

1. THE COMMISSARY SHOPPING SCHEDULE IS POSTED IN THE TRULINCS BULLETIN BOARD. ITEMS MAY BE LIMITED WITHOUT PRIOR NOTICE. STAMPS, COPY CARDS & OTC MEDS WILL NOT AFFECT THE LIMIT.

2. ALL COMMISSARY CONCERNS SHOULD BE ADDRESSED USING THE BRONXMATE TO COMMISSARY MAILBOX IN TRULINCS.

3. DAMAGED MP3 PLAYERS, WATCHES, RADIOS AND HEADPHONES MAY BE RETURNED TO THE MANUFACTURER PER THE WARRANTY, BUT WILL NOT BE AUTHORIZED FOR RETURN TO THE INSTITUTION.

4. ONE ADDITIONAL DELIVERY ATTEMPT WILL BE MADE FOR THOSE INMATES WHO ARE NOT IN THEIR HOUSING UNIT

Josh Schulte LL 74547054
MDC Brooklyn
P.O. Box 329002
Brooklyn, NY 11232

U.S.M.S

ATTN: 22 (OF 76CRF4)
Pro Se Intake Office
U.S. District Court E.D.N.Y.
225 Cadman Plaza East
Brooklyn, NY 11232



METROPOLITAN LIFE ENTER CENTER
60 29TH ST BROOK      , NY 11232