

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 1, 2023

**By ECF**
The Honorable Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Joshua Adam Schulte v. Warden of MDC*,
             Civ. No. 22-cv-766 (Komitee, J.)

Dear Judge Komitee:

      This Office represents Respondent Warden of the Metropolitan Detention Center, Brooklyn ("MDC Brooklyn") in the above-referenced action in which Petitioner Joshua Adam Schulte, who is currently incarcerated at MDC Brooklyn, has filed a habeas corpus petition ("Petition") pursuant to 28 U.S.C. § 2241. ECF No. 1. Respondent respectfully submits this status report as to MDC Brooklyn's position regarding several of the complaints raised in the Petition which were discussed at the status conference held on August 24, 2023. *See* ECF No. 27; Aug. 28, 2023 Minute Entry.

      **I.**    **Relevant Background**

      By way of background, on February 7, 2022, Petitioner filed the instant action and styled it as a habeas corpus petition pursuant to 28 U.S.C. § 2241. *See* ECF No. 1. Petitioner is an inmate in the custody of MDC Brooklyn. He is subject to Special Administrative Measures ("SAMs") and alleges that his "conditions of confinement violate" constitutional provisions. *See* Petition, at 4. However, construed liberally, the complaints contained in the Petition, which are summarized in greater detail below, appear to raise claims under the Eighth Amendment alone and center in large part on the limitations imposed on him. On February 16, 2022, the Court directed the Government to respond to an Order to Show Cause ("OTSC") as to why a writ of habeas corpus should not issue. *See* Feb. 16, 2022 Minute Entry. The Government responded to the OTSC on March 25, 2022, *see* ECF No. 6, and Petitioner replied in support of his petition on May 2, 2022. *See* ECF No. 10. The Court held an in-person status conference on Thursday, August 24, 2023 at 10:00 a.m.

      During that conference, the Court inquired as to the Government's argument regarding Petitioner's failure to exhaust his administrative remedies and also focused on Petitioner's allegations of sleep deprivation and malnutrition, restricted commissary access, and delayed legal mail. *See generally* Tr. of Hr'g dated Aug. 24, 2023 ("Hr'g Tr."). Respondent addresses each of these topics below.

## II. Petitioner's Failure to Exhaust Administrative Remedies, Categorized by Relevant Topics

The Court asked Respondent to address certain complaints Petitioner has made through the Administrative Remedy Program ("ARP") promulgated by the Federal Bureau of Prisons ("BOP"). Specifically, the Court asked about the present status of complaints regarding conditions of confinement issues – particularly those involving "sleep deprivation" and "inadequate nutrition." *See* Hr'g Tr. 4:19-5:1.

BOP has reviewed Petitioner's Administrative Remedy Generalized Retrieval Report ("Report"), which contains his administrative grievance history as of August 31, 2023. *See* Decl. of John Hayes ("Hayes Decl.") ¶ 9 & Ex. A (Administrative Remedy Generalized Retrieval Report dated Aug. 31, 2023). Based on that review, Petitioner has made two complaints concerning the lighting in his cell and one complaint concerning sounds coming from speakers, which could feasibly fall into the category of sleep deprivation complaints. *See* Hayes Decl. ¶¶ 8, 10. There is also a record of one complaint concerning access to food, which would fall into the inadequate nutrition category. *See* Hayes Decl. ¶¶ 8, 10.

Of the two complaints regarding lighting, one has made it as far as the BP-9 stage of the ARP and the other has made it to the BP-10 stage. *See* Hayes Decl. ¶ 11. The first complaint, filed in January 2022, concerned a light switch that was removed in his cell. It was rejected at the BP-9 stage because Petitioner did not provide evidence that he had attempted to grieve the matter informally first, and also because the request had not been submitted through an authorized person. *See* Hayes Decl. ¶ 12. The second complaint, filed in March 2022, also concerned light switches. This complaint made it to the BP-10 stage but was rejected because it was deemed illegible. *See* Hayes Decl. ¶ 13. Petitioner was given the option to resubmit the BP-10 but there is no record that he did so. *See* Hayes Decl. ¶ 13.

Petitioner's only complaint regarding his access to food never made it past the BP-9 stage. *See* Hayes Decl. ¶ 11. Petitioner alleged in November 2021 that MDC Brooklyn was not providing him with enough food. This complaint was rejected at the BP-9 stage because Petitioner did not provide evidence that he had made an attempt to grieve the matter informally first. *See* Hayes Decl. ¶ 12. There is no record that Petitioner ever resubmitted this particular grievance, nor is there a record of him submitting any other grievances regarding nutrition since November 2021.

BOP also reviewed the Report for any grievances regarding Petitioner's commissary access. The Report reflects seven complaints on this topic. *See* Hayes Decl. ¶ 17. One made it to the BP-9 stage, five made it to the BP-10 stage, and one is still pending at the BP-9 stage with a response due in September 2023. *See* Hayes Decl. ¶ 17. These commissary-related complaints were all filed at various points between January 31, 2022 and August 18, 2023. *See* Hayes Decl. ¶¶ 18-24.

Respondent also notes that all ARP forms, including BP-8s, BP-9s, BP-10s, and BP-11s, are made available to K-84 inmates by SAMs Unit personnel. *See* Decl. of Nathaniel Bullock ("Bullock Decl.") ¶ 26. Once an inmate completes a form, SAMs Unit personnel handle delivery of the form to the appropriate entity in the ARP process. *See* Bullock Decl. ¶ 26. Furthermore, the ARP process is set forth in BOP Program Statement 1330.18. *See* Prog. Stmt. 1330.18, *available*

*at* https://www.bop.gov/policy/progstat/1330_018.pdf. BOP Program Statements are made available to SAMs Unit inmates through the unit law library. *See* Bullock Decl. ¶ 24.

### III. Status Update as to Petitioner's Allegations Regarding Sleep Deprivation

The Court also expressed concern as to whether Petitioner is being "systematically sleep deprived, intentionally or not" as a result of light and noise. *See* Hr'g Tr. 12:7-10. The Court proposed as potential solutions synthetic rubber for the slats on the door, or ear plugs to alleviate any sleep-related complaints. *See* Hr'g Tr. 12:17-13:3.

For background, each cell of K-84 contains a light panel with an LED bulb and a smaller night (or emergency) light. *See* Bullock Decl. ¶ 9; Decl. of John Maffeo ("Maffeo Decl.") ¶ 4. The LED bulb, which is a 55-Watt light, only remains on between the hours of 8:00 a.m. to 9:30 p.m. *See* Bullock Decl. ¶ 9; Maffeo Decl. ¶ 4. The night light contains a 6-Watt bulb that remains on at all times. *See* Bullock Decl. ¶ 9; Maffeo Decl. ¶ 4. This dim light must remain on as a security measure to assist SAMs Unit personnel in their nightly rounds, so that they can ensure that all inmates are accounted for and not in need of immediate attention. Bullock Decl. ¶¶ 9-10.

During these nightly rounds, SAMs Unit personnel must look into the cell through a slot to observe the inmate. Bullock Decl. ¶ 10. Each cell door in K-84 is already equipped with rubber padding on the slot to minimize any noise made. Bullock Decl. ¶ 11. Rubber padding was recently inspected and found to have some wear-and-tear. Bullock Decl. ¶ 11. While the rubber padding was functional, MDC Brooklyn's Facilities Department replaced the rubber padding on Petitioner's cell earlier his morning. Bullock Decl. ¶ 11. MDC Brooklyn is working on replacing the rubber padding for the remaining cells in K-84. Maffeo Decl. ¶ 6. Thus, Petitioner's cell now has brand new rubber padding to further minimize any noise when the slot is opened for observation.

As discussed at the August 24 conference, the speakers that Petitioner referred to generate white noise. *See* Hr'g Tr. 14:5-25. The white noise from the speakers is static generated to prevent inmates in K-84 from communicating with each other, which is a necessary security measure in light of their respective SAMs. *See* Bullock Decl. ¶ 12. BOP is exploring the feasibility of providing inmates in the SAMs Unit with ear plugs should they wish to block out the noise at night. *See* Bullock Decl. ¶ 13.

### IV. Status Update as to Petitioner's Allegations Regarding Inadequate Nutrition

The Court also inquired whether "adequate nutrition [is] being provided, not just in general, but with regularity and certainty[.]" *See* Hr'g Tr. 19:3-5. The K-84 Unit Manager has confirmed that all SAMs Unit inmates, including Petitioner, are fed with regularity and certainty. They are provided with three meals a day with the same portion sizes offered to general population inmates. *See* Bullock Decl. ¶ 14. The menu options available to Petitioner are also identical to those available to other inmates in MDC Brooklyn. *See* Bullock Decl. ¶ 15. Although meal times vary slightly from day to day, breakfast is typically served between 6:30 a.m. and 7:30 a.m., lunch is typically served between 11:30 a.m. and noon, and dinner is typically served between 4:00 p.m. and 6:30 p.m. *See* Bullock Decl. ¶ 16. On days where SAMs inmates are away for a court appearance during meal times, food is stored for them until they return to MDC Brooklyn. *See* Bullock Decl. ¶ 16.

The Unit Manager is also personally aware that Petitioner has in fact been offered additional portions of food on occasion if another inmate declined to eat. *See* Bullock Decl. ¶ 19. While this is not a common occurrence, this does undercut Petitioner's claim that he is not being provided adequate nutrition,[1] as he receives additional portions of food on top of the allotted three meals a day. It is also worth noting that the K-84 Commissary List (which is also discussed below), contains additional snack options to supplement the three meals provided by MDC Brooklyn, including cereal, mixed nuts, chips, granola or nutrition bars, crackers, turkey and cheese snack sticks, and mackerel or tuna pouches. *See* Bullock Decl. ¶ 20.

V.  **Status Update as to Petitioner's Allegations Regarding Lack of Commissary, Along With Other Avenues That Petitioner Has to Pass the Time**

Petitioner raised lack of commissary access as a concern at the August 24 conference. *See* Hr'g Tr. 26:1-4, 27:12-19. He now apparently claims that he has no access to commissary whatsoever. Hr'g Tr. 28:17-24. However, a review of the K-84 Commissary List shows that this is not true. Although the list is restricted compared to the general population commissary list, Petitioner still has access to food and snack items (i.e., those listed in the section above), health and hygiene products, vitamins, over-the-counter medications, and envelopes and stamps. *See* Bullock Decl. Ex. C (K-84 Commissary List).[2] The K-84 Commissary List is periodically updated and is in part modeled after the commissary list for the U.S. Penitentiary, Administrative Maximum Facility in Florence, Colorado ("USP Florence ADMAX"). USP Florence ADMAX houses inmates posing dire security risks, so that facility's commissary list has been found to provide useful guidance for the K-84 Commissary List. *See* Bullock Decl. ¶ 22.

During the colloquy regarding commissary, the Court observed that prolonged isolation from human contact has "extreme consequences" which could perhaps be alleviated in part by a puzzle or a book, and questioned why the Government could not assist with this to help Petitioner pass the time. *See* Hr'g Tr. 34:2-8. The K-84 Unit Manager can confirm that Petitioner has additional avenues available to him, even apart from commissary, that can help pass the time. For example, Petitioner has access to a recreation area with a television and exercise equipment that is designated for SAMs inmates specifically. *See* Bullock Decl. ¶ 24. Moreover, Petitioner has access to reading material even outside of commissary; all SAMs inmates are permitted a seven-book allowance. *See* Bullock Decl. ¶ 27. SAMs inmates can receive books and magazines subject to a Federal Bureau of Investigation ("FBI") clearance process and can trade those for new reading material upon completion. *See* Bullock Decl. ¶ 23.

This week, the K-84 Unit Manager made arrangements with the Psychology Services Department. Personnel from the Psychology Services Department will visit Petitioner and administer puzzles to provide additional mental stimulation. *See* Bullock Decl. ¶ 25.

---

[1] Respondent also notes that there is no record of Petitioner complaining of inadequate nutrition since November 2021, even though he has filed multiple other commissary-related complaints in the interim (one as recently as this month). This too appears to undercut the inadequate nutrition claim.

[2] Petitioner stated at the conference that toothpaste is no longer available on the K-84 Commissary List. Hr'g Tr. 28:22-24 However, Respondent notes that hygienic products such as soap, toothpaste, toothbrushes, and deodorant are available to SAMs Unit inmates free of charge. *See* Bullock Decl. ¶ 25.

### VI. Status Update as to Petitioner's Allegations Regarding Delayed Mail, Which Are a Consequence of the SAMs Imposed by the Southern District of New York

Petitioner also stated that there is a significant lag between when mail is sent to him and when he actually receives that mail. *See* Hr'g Tr. 32:20-24. BOP has confirmed that Petitioner is experiencing delays in receiving mail because Petitioner's incoming mail is subject to an FBI clearance process. *See* Bullock Decl. ¶ 27. This delay also apparently affects mail sent from the U.S. District Court for the Eastern District of New York, as well as from the U.S. Attorney's Office for the Eastern District of New York ("this Office"). Unfortunately, this delay is a direct consequence of the SAMs imposed on Petitioner in light of the security concerns surrounding unauthorized disclosures of classified information. BOP can only implement the SAMs, but does not have the authority to alter them in any way. Moreover, this Office cannot alter the SAMs as they were imposed in connection with Petitioner's ongoing criminal prosecution in the U.S. District Court for the Southern District of New York ("SDNY"). SDNY has twice evaluated the SAMs and has maintained the FBI clearance process currently in place. *Cf.* Order, United States v. Schulte, No. 17 Cr. 548 (S.D.N.Y. Aug. 14, 2019), ECF No. 127 (modifying several provisions after Petitioner challenged the SAMs but excluding the FBI clearance process from modification); Order, United States v. Schulte, No. 17 Cr. 548 (S.D.N.Y. Oct. 6, 2019), ECF No. 527 (upholding SAMs).

\* \* \*

The Court scheduled an in-person evidentiary hearing for September 5, 2023 at 10:30 a.m., but stated that it "[would] contemplate adjourning this hearing upon receiving the government's submission as discussed at the August 24, 2023 conference." *See* Aug. 28, 2023 Minute Entry. Now that Respondent has submitted this status report and the accompanying declarations, Respondent respectfully proposes that the in-person evidentiary hearing be adjourned.

Respondent thanks the Court for its consideration of this matter.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/ *David A. Cooper*
DAVID A. COOPER
Assistant U.S. Attorney
(718) 254-6228
david.cooper4@usdoj.gov

cc: **By Certified Mail**
Joshua Adam Schulte
Metropolitan Detention Center
PO Box 329002
Brooklyn, NY 11232
Pro se *Plaintiff*